# United States Court of Appeals

## FOR THE THIRD CIRCUIT



**WHITEHALL FIDUCIARY LLC, AS TRUSTEE OF WHITEHALL TRUST U/T/A DATED AUGUST 1, 2007, AND SAUCON VALLEY TRUST U/T/A DATED AUGUST 1, 2007,**
*Appellants,*

*v.*

**LEHIGH VALLEY 1 LLC, SUCCESSOR BY ASSIGNMENT TO WINDSTREAM CAPITAL LLC, SUCCESSOR BY ASSIGNMENT TO THE UNITED STATES SECRETARY OF HOUSING AND URBAN DEVELOPMENT, SUCCESSOR BY ASSIGNMENT TO M&T REALTY CAPITAL CORPORATION,**
*Appellee.*

---

*Appeal from the Order of the United States District Court for the Eastern District of Pennsylvania issued May 2, 2025*

## APPELLANTS' OPENING BRIEF

RAYMOND GABRIEL. LAHOUD, ESQUIRE
LAHOUD LAW GROUP, P.C.
600 Hamilton Street
Suite 300
Allentown, PA 18101
P: 484-544-0022

REBECCA PRICE, ESQUIRE
NORRIS MCLAUGHLIN, P.A.
515 Hamilton Street
Suite 515
Allentown, PA 18101
P: 610-391-1800

*Attorneys for Appellants*

# TABLE OF CONTENTS

Page(s)

TABLE OF CONTENTS ……………………………………………..………… i
TABLE OF AUTHORITIES …………………………………………..……… iii
I.   JURISDICTIONAL STATEMENT ...........................................................1
   A.  SUBJECT MATTER JURISDICTION ......................................................1
   B.  APPELLATE JURISDICTION ..................................................................1
II.  STATEMENT OF THE ISSUE...............................................................2
   A.  WAS APPELLEE ENTITLED TO THE EXTRAORDINARY REMEDY OF THE APPOINTMENT OF A RECEIVER WHERE THE *WELLS FARGO BANK, N.A. V. CCC ATLANTIC, LLC*, 905 F.SUPP. 2D 604 (D.N.J. 2012) FACTORS DID NOT SUPPORT APPOINTMENT OF A RECEIVER, THE POTENTIAL HARMS CITED BY THE APPELLEE ARE SPECULATIVE, AND THE DISTRICT COURT DECLINED TO HOLD AN EVIDENTIARY HEARING?...................................................................................2
III.  STATEMENT OF RELATED CASES AND PROCEEDINGS .....................2
IV.  STATEMENT OF THE CASE...................................................................3
   A.  FACTUAL HISTORY ...........................................................................3
   B.  PROCEDURAL HISTORY......................................................................6
   C.  RULINGS PRESENTED FOR REVIEW....................................................7
V.  SUMMARY OF ARGUMENT .................................................................7
VI.  STANDARD OF REVIEW ....................................................................10
VII.  ARGUMENT ......................................................................................12
   A.  THE DISTRICT COURT ERRED IN ITS APPLICATION OF THE RELEVANT FACTORS CONCERNING RECEIVERSHIP ....................12
     *1. Contractual Provision*................................................................14
     *2. Likelihood of Success*................................................................17
     *3. Financial Health/Status* .............................................................18
     *4. Diminution of Value*..................................................................20
     *5. Inadequate Legal Remedy*..........................................................21
     *6. Balance of the Interests*.............................................................23
     *7. Other Factors* ..........................................................................25

    B.    THE DISTRICT COURT SHOULD HAVE ORDERED DISCOVERY
           BEFORE ANALYZING THE RELEVANT FACTORS ............................25
    C.    THE RECEIVER ORDERED BY THE DISTRICT COURT IS FAR
           TOO BROAD .............................................................................................29

VIII.   CONCLUSION.............................................................................................31

CERTIFICATE OF COMPLIANCE

ELECTRONIC DOCUMENT COMPLIANCE

CERTIFICATE OF BAR ADMISSION

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page(s)

## FEDERAL CASES

*A.C.L.U. of New Jersey v. Black Horse Pike Reg'l Bd. of Educ.*,
    84 F.3d 1471 (3d Cir. 1996)................................................................12

*Campbell Soup Co. v. ConAgra, Inc.*,
    977 F.2d 86 (3d Cir. 1992)........................................................... 20, 22

*Chase Manhattan Bank, N. A. v. Turabo Shopping Ctr., Inc.*,
    683 F.2d 25 (1st Cir. 1982) ...............................................................20

*Comerica Bank v. State Petroleum Distributors, Inc.*,
    No. 3:08-CV-678, 2008 WL 2550553 (M.D. Pa. June 2, 2008)..................9, 22

*Ecosave Automation, Inc. v. Delaware Valley Automation, LLC*,
    540 F. Supp. 3d 491 (E.D. Pa. 2021) ...............................................17

*FTE Networks, Inc. v. Szkaradek*,
    No. CV 22-785-WCB, 2023 WL 8650002 (D. Del. Dec. 14, 2023) ..............11

*Hohe v. Casey*,
    868 F.2d 69 (3d Cir. 1989)...............................................................20

*KeyBank Nat'l Ass'n v. Fleetway Leasing Co.*,
    781 F. App'x 119 (3d Cir. 2019) ....................................... 10, 12, 14

*Leone Indus. v. Associated Packaging, Inc.*,
    795 F. Supp. 117 (D.N.J. 1992) .......................................................11

*Manufacturers & Traders Tr. Co*,
    999 F. Supp. 2d 805 (W.D. Pa. 2013).........................................9, 18

*Maxwell v. Enter. Wall Paper Mfg. Co.*,
    131 F.2d 400 (3d Cir. 1942)..............................................................12

*Meyer v. CUNA Mut. Ins. Soc.*,
    648 F.3d 154 (3d Cir. 2011)...............................................................11

*Midwest Bank v. Goldsmith*,
    467 F. Supp. 3d 242 (M.D. Pa. 2020) ...................................... 10, 26

*Mintzer v. Arthur L. Wright & Co.*,
    263 F.2d 823 (3d Cir. 1959)...............................................................9

*SEC v. Black*,
    163 F.3d 188 (3d Cir. 1998).............................................................10

*Tanzer v. Huffines*,
    315 F. Supp. 1140 (D. Del. 1970)....................................................26

*United States v. Berk & Berk*,
    767 F. Supp. 593, 597 (D.N.J.1991) ...........................................7, 28

*Wells Fargo Bank, N.A. v. CCC Atlantic, LLC*,
    905 F. Supp. 2d 604 (D.N.J. 2012) .................................... 2, 10, 11, 10, 16, 20

*Windstream Capital, LLC, Successor by Assignment to the United States Housing and Urban Development, Successor by Assignment to M&T Realty Capital Corp. v. Saucon Trust, U/T/A Dated October 1, 2007, Northampton County Court of Common Pleas*,
    No. C-48-CV-2023-09221 (Nor. Cty. Ct. of Comm. Pl. 2023) ...................................................................................... 5

*Windstream Capital, LLC, Successor by Assignment to the United States Housing and Urban Development, Successor by Assignment to M&T Realty Capital Corp. v. Whitehall Fiduciary, LLC as Trustee of Whitehall Trust U/T/A Dated August 1, 2007*,
    No. 2023-N-1365 (Leh. Cty. Ct. of Comm. Pl. 2023) ...........................5

*Zinke-Smith, Inc. v. Marlowe*,
    323 F. Supp. 1151 (D.V.I. 1971)........................................ 27, 28, 30

## FEDERAL STATUTES

Title 12 U.S.C.
    § 1701 ...................................................................................3

Title 28 U.S.C.
    § 1292(a)(2) ........................................................................1
    § 1332 ..................................................................................1

## FEDERAL RULES

Fed. R. Civ. P.
    Rule 66 ..............................................................................10

# I.    JURISDICTIONAL STATEMENT

## A.    SUBJECT MATTER JURISDICTION

Appellee, Lehigh Valley 1 LLC, ("LV1") filed Complaints in foreclosure against Appellant, Whitehall Fiduciary LLC, as Trustee of Whitehall Trust u/t/a dated August 1, 2007 ("Whitehall") and Saucon Valley Trust u/t/a dated October 7, 2007 ("Saucon") (collectively, the "Appellants") on June 14, 2024.  The basis for jurisdiction in the District Court is pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

## B.    APPELLATE JURISDICTION

On May 2, 2025, the District Court granted LV1's motion to appoint a receiver.  This Honorable Court has jurisdiction over this interlocutory appeal pursuant to 28 U.S.C. § 1292(a)(2), which gives the courts of appeals jurisdiction over appeals from "[i]nterlocutory orders appointing receivers." 28 U.S.C. § 1292(a)(2).  Appellant timely filed its notice of appeal on May 2, 2025, within 30 days of the District Court's order of May 2, 2025.

## II. STATEMENT OF THE ISSUE

**A. WAS APPELLEE ENTITLED TO THE EXTRAORDINARY REMEDY OF THE APPOINTMENT OF A RECEIVER WHERE THE *WELLS FARGO BANK, N.A. V. CCC ATLANTIC, LLC*, 905 F.SUPP.2D 604 (D.N.J. 2012) FACTORS DID NOT SUPPORT APPOINTMENT OF A RECEIVER, THE POTENTIAL HARMS CITED BY THE APPELLEE ARE SPECULATIVE, AND THE DISTRICT COURT DECLINED TO HOLD AN EVIDENTIARY HEARING?**

(Raised by Appellee's Motion to Appoint a Receiver, Appellant's Response Thereto, and at oral argument on the Motion).

## III. STATEMENT OF RELATED CASES AND PROCEEDINGS

There are two related state court cases. *Windstream Capital, LLC, Successor by Assignment to the United States Housing and Urban Development, Successor by Assignment to M&T Realty Capital Corp. v. Whitehall Fiduciary, LLC as Trustee of Whitehall Trust U/T/A Dated August 1, 2007*, Lehigh County Court of Common Pleas No. 2023-N-1365, and *Windstream Capital, LLC, Successor by Assignment to the United States Housing and Urban Development, Successor by Assignment to M&T Realty Capital Corp. v. Saucon Trust, U/T/A Dated October 1, 2007, Northampton County Court of Common Pleas*, No. C-48-CV-2023-09221 (the "State Court Cases"). Plaintiff's predecessor in interest, Windstream Capital, LLC ("Windstream") initiated the State Court Cases by filing Complaints in Confession of Judgment in the State Court Cases and entering judgment against Appellants, said judgment were ultimately stricken by Court Order.

IV.    **STATEMENT OF THE CASE**

A.    **FACTSUAL HISTORY**

Appellants are the owners of property located at 1177 6th Street, Whitehall, Pennsylvania (the "Whitehall Property") and a property located at 1050 Main Street, Hellertown, Pennsylvania (the "Saucon Property"), respectively.  The Whitehall and Saucon Properties currently and historically have operated (through Tenant Operators) as nursing care facilities, each with memory care components.  The Tenant Operators are licensed through the Commonwealth and subject to various regulations for continued operation.  The Tenant Operators have maintained licensure and continued operations during the pendency of the State Court Cases and the pending litigation.

Appellants entered into mortgage loan transactions with M&T Realty Capital Corporation ("M&T") that were insured by the United States Department of Housing and Urban Development ("HUD") pursuant to Section 232 of the National Housing Act ("NHA"), 12 U.S.C. § 1701 et seq.  In connection with the aforesaid loan transactions, Appellants entered into Regulatory Agreements with HUD (the "Regulatory Agreements").  For each Appellant, M&T was the lender, and HUD agreed to insure the loans, and each Appellant was obligated to maintain compliance with federal and state regulations governing nursing home facilities on the respective properties.  Pursuant to the Regulatory Agreements, in the event that either Whitehall

Trust or Saucon Trust was unable to make a scheduled mortgage payment, HUD had discretion to authorize M&T to draw funds from an established reserve account to prevent a default. In fact, HUD exercised this discretion multiple times during the COVID-19 pandemic to preserve loan performance.

Commencing in 2020, as a direct result of the COVID-19 pandemic, the Tenant Operators experienced significant financial hardship due to increased costs of personal protective equipment and restrictions on evicting non-paying residents. This directly impacted both Appellants' cash flows and their ability to service their respective mortgage loans.

Appellants pursued options under the CARES Act and Emergency Declarations issued by then-President Donald J. Trump, which included a forbearance on mortgage payments for federally backed loans. They also requested that HUD continue drawing payments from the reserve accounts, which contained substantial sums previously deposited by the Appellants. Initially, HUD complied, making three payments from each reserve account during the crisis. However, without prior notice and despite the continued insurance of the loans under Section 232, HUD abruptly ceased making payments from the reserve accounts. This marked a material deviation from past practice and precipitated purported defaults under the mortgage loans.

Despite numerous attempts by Appellants to engage HUD in good-faith discussions or negotiate workout agreements, HUD refused. Instead, in July 2023, HUD notified Appellants of HUD's intent to sell the Mortgage Loans at auction, prohibiting Appellants or their affiliates from participating. At the same time, HUD improperly depleted the reserve accounts to reduce the balances due, without applying such funds toward a cure of the alleged defaults.

HUD ultimately sold the Whitehall and Saucon Mortgage Loans to Windstream, closing the sale in September 2023. On October 5, 2023, Windstream notified Whitehall Trust of the assignment and immediately commenced the State Court Cases with the intention of foreclosing on the Whitehall and Saucon Properties.

On May 15, 2024, the loans were further assigned to Appellee for the sole purpose of establishing diversity jurisdiction and commencing foreclosure proceedings in the Eastern District of Pennsylvania.

During this time, the Tenant Operators maintained continuous operations and remained in compliance with federal and state regulations related to the operation of nursing care facilities. At no time have the Appellants or Tenant Operators been notified of any default of their obligations related to the operation of the nursing care facilities. In addition, both Whitehall and Saucon Properties have maintained

continuous insurance coverage and are not subject to any adverse action by any taxing authority due to non-payment of real estate taxes.

Notwithstanding the foregoing, Appellee immediately filed Motions to Appoint a Receiver for both properties, prior to the exchange of any discovery and without any evidence of any threat to the properties. As set forth herein, the District Court's grant of Appellee's Motions to Appoint a Receiver was unsupported, premature and over-reaching and must be overturned.

### B.  PROCEDURAL HISTORY

Appellee's predecessor, Windstream, initially commenced litigation to foreclose on the Whitehall and Saucon Properties shortly after purchasing the loans in 2023. Argument was held on the State Court Cases in 2024, which resulted in Windstream's confessed judgments being stricken. Thereafter, Windstream assigned the loans to the Appellee and Appellee initiated the underlying action in the Eastern District of Pennsylvania on June 14, 2024.[1]

Appellee filed Amended Complaints in response to Appellants' Motions to Dismiss and immediately, before Appellants filed Answers to the Amended Complaint and before any discovery was conducted, Appellee also filed Motions for Appoint Receivers for both the Whitehall and Saucon Properties. Appellants filed

---

[1] Appellee commenced two civil proceedings, one for each Appellant. Those matters were later consolidated and are now proceeding under the same docket.

Motions to Dismiss the Amended Complaints, which were ultimately denied by the District Court. Appellants also opposed the Motions to Appoint a Receiver.

Oral argument on the Motions to Appoint Receivers was held and an Order granting the Motions was entered on May 2, 2025. Notice of Appeal of the Order was filed on the same day.

## C. RULINGS PRESENTED FOR REVIEW

The District Court granted the Appellee's Motions to Appoint a Receiver on May 2, 2025, appointing a receiver for both Appellants, and issued an Opinion in support thereof. *See* Appx. at 5-33.

## V. <u>SUMMARY OF ARGUMENT</u>

Appellee brought a motion to appoint a receiver on July 31, 2024. There is no definite rule of law or list of factors that a court must consider in deciding a motion for a receiver, but the court below relied on the factors set forth in *Wells Fargo Bank, N.A. v. CCC Atl., LLC*, 905 F. Supp. 2d 604 (D.N.J. 2012). Those factors are "the property is inadequate security for the loan; the mortgage contract contains a clause granting the mortgagee the right to a receiver; the continued default of the mortgagor; the probability that foreclosure will be delayed in the future; the unstable financial status of the mortgagor; [and] the misuse of project funds by the mortgagor." *Id.* at 614 (quoting *United States v. Berk & Berk,* 767 F. Supp. 593, 597 (D.N.J.1991) (alteration in original). Where, as in the instant case, a receiver "will

not only collect rents and profits, but will also manage and operate the mortgaged property pending foreclosure," courts consider additional factors. *CCC Atl.*, 905 F. Supp. at 614. The additional factors in these circumstances include

> the danger of waste[;] delays in foreclosure; the defendant's fraudulent conduct; imminent danger that property [will] be lost, concealed, injured, diminished in value, or squandered; the inadequacy of the available legal remedies; the probability that harm to plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; and the plaintiff's probable success in the action and the possibility of irreparable injury to his interests in the property.

*Id.* at 614-15 (internal citations and quotation marks omitted) (alterations in original).

In the instant case, the Appellee's motion was speculative. Rather than show actual injury or ongoing harm, Appellee relied on the fact that Appellant was in default to highlight the *possibility* of the harmful *CCC Atlantic* factors coming to fruition. For example, Appellee's brief states that "Defendant's financial instability risks adversely impacting the staffing and maintenance of the Property, *could* jeopardize the well-being of its residents, and *could* cause the condition of the Lender's collateral to deteriorate and not be properly maintained." Appx. at 67 (emphasis added).

The District Court, for its part, accepted these arguments. Rather than ordering an evidentiary hearing or any discovery, the District Court concluded that

mere default created sufficient risk to the Lender's interests and appointed a receiver. "A borrower's inability to make payments when due reveals its poor financial condition, suggesting a need to preserve the property." Appx. at 29. "There is no question that Lehigh has grounds to be concerned about a possible diminution in the value of its collateral." Appx. at 31. "In this matter, Lehigh has shown that the defaults of Whitehall and Saucon may be decreasing the value of Lehigh's collateral." *Id.* Essentially, by eschewing discovery and considering speculative, rather than concrete harms, the District Court collapsed the entire analysis into a single issue: Appellants' default.

This was in error. Default, on its own, is not enough to justify the appointment of a receiver. *See, e.g.*, *Manufacturers & Traders Tr. Co. v. Minuteman Spill Response, Inc.*, 999 F. Supp. 2d 805 (W.D. Pa. 2013). Instead, because a receivership is "an equitable remedy of rather drastic nature," *Mintzer v. Arthur L. Wright & Co.*, 263 F.2d 823, 824 (3d Cir. 1959), "a district court should appoint a receiver only 'in cases of necessity, and when the plaintiff clearly and satisfactorily shows that an emergency exists and the receiver is needed to protect the property interests of the plaintiff.'" *Manufacturers & Traders Tr. Co*, 999 F. Supp. 2d 805 at 816 (quoting *Comerica Bank v. State Petroleum Distributors, Inc.*, No. 3:08-CV-678, 2008 WL 2550553, at *4 (M.D. Pa. June 2, 2008)). Here, in granting this extraordinary remedy, the District Court acted hastily, did not determine that "an

emergency exists" and did not allow the parties to engage in appropriate discovery. This was improper, and this Court should reverse.

## VI. <u>STANDARD OF REVIEW</u>

This Court "review[s] the District Court's application of law with regard to the equitable receivership de novo, and its decisions relating to procedures it will follow in connection with the receivership proceedings for abuse of discretion." *KeyBank Nat'l Ass'n v. Fleetway Leasing Co.*, 781 F. App'x 119, 121 (3d Cir. 2019) (quoting *SEC v. Black*, 163 F.3d 188, 195 (3d Cir. 1998)). Federal mandates that "the practice in administering an estate by a receiver or a similar court-appointed officer must accord with the historical practice in federal courts or with a local rule." Fed. R. Civ. P. 66. Because federal receivership is a creation of the federal civil rules, in diversity actions, courts must follow federal rather than state law. *Midwest Bank v. Goldsmith*, 467 F. Supp. 3d 242, 248 (M.D. Pa. 2020).

In the Third Circuit there is no precise formula for deciding whether to appoint a receiver, but district courts analyze the following factors: 1) whether the property is adequate security for the loan, 2) whether the mortgage contract allows a receiver to be appointed, 3) whether the mortgagor is in default, 4) whether it is probable that default will be delayed, 5) whether the mortgagor is financially stable, and 6) whether the mortgagor has misused project funds. *Wells Fargo Bank, N.A. v. CCC Atl., LLC*, 905 F. Supp. 2d 604, 614 (D.N.J. 2012). Additionally, where a lender

seeks to appoint a receiver who will "not only collect rents and profits, but will also manage and operate the mortgaged property pending foreclosure," courts consider additional factors. *Id.* These additional factors include 1) whether there is a danger of waste, 2) whether the mortgagor has engaged in fraud, whether there is imminent danger of loss of the property, 3) whether the plaintiff will suffer more harm through lack of a receiver than the defendant or other parties will suffer from the appointment of a receiver, and 4) whether the plaintiff will probably succeed in the underlying action. *Id.*

An evidentiary hearing is not required before the appointment of a receiver if there is sufficient evidence on the record to support the appointment. *Leone Indus. v. Associated Packaging, Inc.*, 795 F. Supp. 117, 120 n.6 (D.N.J. 1992). However, where the parties' "briefing does not permit a confident conclusion as to whether the requirements for appointment of a receiver have been met," a hearing is "necessary to determine whether appointment of a receiver is required." *FTE Networks, Inc. v. Szkaradek*, No. CV 22-785-WCB, 2023 WL 8650002, at *7 (D. Del. Dec. 14, 2023). The decision of whether to hold an evidentiary hearing is in the discretion of the district court. "An abuse of discretion exists where the District Court's decision rests upon a clearly erroneous finding of fact, and errant conclusion of law, or an improper application of law to fact." *Meyer v. CUNA Mut. Ins. Soc.*, 648 F.3d 154, 169 (3d

Cir. 2011) (quoting *A.C.L.U. of New Jersey v. Black Horse Pike Reg'l Bd. of Educ.,* 84 F.3d 1471, 1476 (3d Cir.1996)).

Here, the District Court both misconstrued the law regarding the appointment of a receiver by collapsing all of the factors into a single test: whether the Appellant was in default. The District Court confounded this error by failing to hold an evidentiary hearing, which was appropriate in light of the contradictions between the two parties' descriptions of the Appellant's financial status. This Court should therefore reverse the District Court's order of May 2, 2025, and remand with instructions to dissolve the receivership and, at the very least, conduct an evidentiary hearing.

## VII. <u>ARGUMENT</u>

### A. THE DISTRICT COURT ERRED IN ITS APPLICATION OF THE RELEVANT FACTORS CONCERNING RECEIVERSHIP.

The "appointment of a receiver is an extraordinary, a drastic and … an 'heroic' remedy." *KeyBank Nat'l Ass'n v. Fleetway Leasing Co.*, 781 F. App'x 119, 122 (3d Cir. 2019) (quoting *Maxwell v. Enter. Wall Paper Mfg. Co.*, 131 F.2d 400, 403 (3d Cir. 1942)). In determining whether to appoint a receiver, courts review and weigh numerous factors. Because the appointment of a receiver is an equitable remedy, there is no exhaustive or definitive list of factors for any court to consider. In

determining whether to appoint a receiver, the court below considered the following factors in turn:

      a)    the presence of a contractual provision for receivership;

      b)    the Plaintiff's likelihood of success in a foreclosure action;

      c)    the Defendants' financial health/status;

      d)    potential diminution of value in the subject properties;

      e)    the inadequacy of other legal remedies;

      f)    the balance of interests, and;

      g)    various other factors, including misuse of project funds by the Defendants, inadequacy of security for the loan, and presence of fraudulent activity.

*See generally* Appx. at 22-33.

However, it is clear from the opinion of the District Court that the court only truly considered two factors – the contractual provision and Appellants' default. (The Court, without significant analysis, found that there was no evidence of misuse of project funds, inadequacy of security, or fraudulent activity). After analyzing the contract provision factor, the court below determined that while that factor weighed in favor of receivership, the other factors were still relevant of consideration. For each of the remaining factors which the court analyzed, the overriding consideration was the default, which, by the court's logic raised the *possibility* of the threatened harm. Because the threatened harm of each factor was possible, according to the District Court, that factor weighed in favor of receivership.

## 1. Contractual Provision

The first factor that the District Court examined was the contractual provisions allowing for the appointment of a receiver in the event of a default. As the District Court correctly noted, this factor is worthy of consideration, but it is not dispositive. Appx. at 27. However, the contractual clauses at issue are *significantly* more limited than the expansive receivership that the District Court established.

As the District Court noted, the mortgages attached to the properties have receivership clauses. These clauses state that "the holder of this mortgage, in any action to foreclose, shall be entitled to the appointment of a Receiver of the rents and profits of the mortgaged premises as a matter of right and without notice, with power to collect the rents, issues, and profits of said mortgaged premises." *Id.* (quoting Appx. at 27. Essentially, in the event of default and foreclosure, the holder of the mortgage is entitled to appointment of a receiver who collect the "rents, issues, and profits" of the properties. This receivership clause, however, does not allow the creditor to control the Appellants' businesses, let alone to interfere with the operations of the tenants who are operating health facilities at the property.

By contrast, the District Court appointed a receiver with breathtaking authority. Rather than merely appointing a receiver who could collect the income from the properties, the District Court appointed a receiver with no fewer than 30 individual powers, including but not limited to the power to take possession of the

property, to use the office and equipment at the properties, "to take all actions necessary to preserve, maintain, operate, and manage the Property," to modify or terminate existing agreements including leases between Appellants and their tenants and other third parties, to review mail directed to the Appellants, and to borrow money from LV1 and establish a new secured lien in favor of LV1 on the properties. Appx. at 8-14.

The District Court's error of analysis here is patent. The District Court flatly found that the existence of a contractual provision favored appointment of a receiver but then appointed a receiver with powers expanding far beyond the contractual provision. The District Court would have been correct that this factor favors appointing a receiver *but only if the District Court had appointed a receiver within the contemplated limits of the mortgages*. For the District Court to appoint a receiver with broader powers than contemplated by the mortgages, the District Court should have found that the lack of such broad receivership provisions counseled *against* the appointment of a receiver.

In *Manufacturers & Traders Tr. Co. v. Minuteman Spill Response, Inc.*, 999 F. Supp. 2d 805 (W.D. Pa. 2013), a district court confronted a situation where a creditor and a debtor had a contractual clause allowing appointment of a receiver. However, the creditor, rather than seeking a receiver merely to "manage or collect rents from the mortgaged properties," sought instead an expansive appointment

which would have allowed the receiver to "*take possession and control of Defendants and their assets and operations.*" *Id.* at 826-27 (emphasis in original). As the court explained, "[b]ecause [the creditor] seeks a receiver to control the entire business operation … the Court finds that the mortgage documents are inapposite to this case." *Id.* at 827.

Similarly, here, the District Court should not have found that the mortgage document is controlling where the party seeking the receiver sought a receiver with powers far beyond the mortgage the receivership provisions in the mortgage. As other courts in this circuit have noted, in the absence of an applicable contractual provision, the party seeking receivership must rely only on equitable considerations. "The importance of these contractual provisions cannot be underestimated because they set apart this commercial foreclosure case from the traditional scenario in which a receiver is sought at equity and no such contractual provisions exist." *Wells Fargo Bank, N.A. v. CCC Atl., LLC*, 905 F. Supp. 2d 604, 615 (D.N.J. 2012). The District Court's application of an extremely limited contractual provision to the broad receivership which was ultimately applied was error. The court should have considered this factor to weigh not only against appointment of a receiver, but heavily against.

2.    Likelihood of Success

Another important factor for a court to consider in deciding whether to appoint a receiver is whether the party seeking the appointment has a likelihood of success on the merits of their foreclosure claim.  However, to conduct this analysis, a court must not only consider the relevant legal principles but also weigh the available defenses.  "In determining whether success is likely, the Court must look to the legal principles controlling the claim *and the potential defenses available to the opposing party*."  *Ecosave Automation, Inc. v. Delaware Valley Automation, LLC*, 540 F. Supp. 3d 491, 499–500 (E.D. Pa. 2021) (emphasis added).

Here, however, the District Court's analysis began and ended with the fact that the Appellants were behind on their mortgage payments.  "The continuing failure of both Whitehall and Saucon to make monthly mortgage payments shows that Lehigh is likely to succeed on its mortgage foreclosure claims." Appx. at 28. According to the District Court, this prima facie showing that the Appellee could make their affirmative case was dispositive of this factor.  The District Court did not engage in any analysis of the defenses raised by Appellants.

But the Appellants have raised defenses, in both the case below and in the related state-court cases which cast grave doubt on the Appellees ultimate success. Among other defenses raised by the Appellant were that the security interests which allow repossession were properly assigned to the Appellee.  The Appellant also

challenged federal subject matter jurisdiction, and the standing of the Appellees. Although the District Court properly recognized that it would have been premature to make an actual merits ruling on the case, the court simply did not consider whether any of the Appellants' defenses could prevail on any defenses.

These defenses were raised in the Appellants' Answer to the Amended Complaint as well as at oral argument on the motion. At oral argument, counsel for Appellants repeatedly asserted that those defenses would be meritorious and thus counseled against the appointment of a receiver. Appx. at 39, 42-46.

But the District Court did not consider any of Appellants' defenses. Beyond being an error, this is prejudicial to the Appellants. Had the District Court done so, Appellants could attempt to argue about why the District Court's analysis was in error. But here, there is simply no analysis on this key issue. Without considering the defenses raised by the Appellants, the District Court should have weighed this factor as neutral at most.

### 3.    Financial Health/Status

Here, once again, the District Court's analysis was one-dimensional. According to the District Court, Appellants were in default, and therefore in poor financial health, and thus in need of a receiver. For this factor, the District Court did consider other evidence, but misconstrued evidence which tends to favor the Appellants as favoring the Appellees. That is, evidence that Appellants had recently

freed themselves from tax and municipal liens was taken as evidence not of improving financial health but of a deteriorating condition.

The District Court applied the following syllogism: the Appellants were in default, financial statements from 2021 indicated the Appellants' poor financial health, and the Appellants had recently been under tax and municipal liens, therefore the Appellants are in poor financial health now. Even beyond the fact that the District Court never considered that Appellants, as so many business suffered from economic troubles during COVID and is now improving, it is clear that the final premise was misapplied. Removing the liens demonstrates an *improving* financial outlook, and this should have given the court pause. The District Court noted that the Appellants sought discovery to bring to the court's attention more recent financial statements but concluded that that would not be necessary because the Appellants were in default. "Defendants continued failure to make monthly payments on the Mortgages is further evidence of their financial positions." Appx. at 30. In sum, once again, rather than fully analyzing this factor, the District Court considered only that Appellants were in default, and found this factor weighed in favor of appointing a receiver. Without discovery or some kind of evidentiary hearing which could bolster this conclusion, this factor should have been neutral.

4. <u>Diminution of Value</u>

Here, the District Court flatly stated that "[t]here is no question that [LV1] has grounds to be concerned about a possible diminution of the value of its collateral." Appx. at 31. First, this fundamentally misstates the standard, which is not that grounds merely exist that give rise to concerns about "possible" diminution of value. Rather, the standard requires "***imminent danger*** that property [will] be lost, concealed, injured, diminished in value, or squandered." *CCC Atl.*, 905 F. Supp. 2d at 614 (first emphasis added; second alteration in original) (quoting *Chase Manhattan Bank, N. A. v. Turabo Shopping Ctr., Inc.*, 683 F.2d 25, 26–27 (1st Cir. 1982)). Although there is little case law explaining what "imminent danger" means in the specific context of receivership, case law regarding imminent danger in the broader equitable context makes clear that "grounds for concern" about "possible" danger does not constitute "imminent danger." "[A] showing of irreparable harm is insufficient if the harm will occur only in the indefinite future. Rather, the moving party must make a 'clear showing of *immediate* irreparable harm.'" *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992) (emphasis in original) (quoting *Hohe v. Casey,* 868 F.2d 69, 72 (3d Cir. 1989)).

It is clear from the District Court's opinion that the court was not focused on actual, imminent and particularized harm, but rather was focused on potential, speculative harm. However, and second, even had the District Court focused on real

harm rather than grounds for potential concern, the court still did not properly analyze the question. This is because the only evidence that the court considered was the lack of evidence concerning "the status of any leases that the entities have entered, how much rent is being collected, if the taxes are paid and up to date, if there are unpaid bills, if the Properties are insured or if there are liens entered against the Properties." Appx. at 31. But this turns the standard on its head: rather than requiring the party seeking a receiver to produce evidence that a receiver is needed, the District Court inferred from the default that all other factors, including the imminent danger factor, and required Appellants to provide evidence that a receiver was not needed. That the court did not weigh and analyze the available evidence manifests the backwardness of the analysis. This was in error.

5.    Inadequate Legal Remedy

The District Court's analysis of this factor mirrors the court's analysis of the diminution of value question. The court stated that "[LV1] has shown that the defaults of Whitehall and Saucon may be decreasing the value of Lehigh's collateral." Appx. at 31. This is, as above, the same speculation that the District Court used to conclude that there was "imminent" harm of diminution of value. And once again, the court relies heavily on the lack of evidence which might show that a receiver is unnecessary. After stating that Appellants failed to provide evidence of

payment of taxes and insurance, the court stated that this represents a "risk that the value of the collateral will decrease." *Id.*

This logic is faulty because it is simply a replay of the foregoing diminution factor. According to this logic, if a debtor is in default, there is obvious potential for diminution, which, extended to the next logical step, lessens the creditor's potential remedy in foreclosure. Once again, the only truly necessary factor is the debtor's default. This gives short shrift to the crux if this factor, which is not to determine whether the debtor is in default, but to determine whether foreclosure (or some other action for damages) could make the creditor whole, and thus obviate the need for equitable relief.

Here, the legal remedy is clear: foreclosure. That is the remedy to which the purported security interests at issue here entitle the creditor, LV1. And, as the security interests would be fully satisfied with foreclosure, it is an adequate legal remedy. The only circumstance in which a receiver would be justified is where "the plaintiff clearly and satisfactorily shows that an emergency exists and the receiver is needed to protect the property interests of the plaintiff." *Comerica Bank v. State Petroleum Distributors, Inc.*, No. 3:08-CV-678, 2008 WL 2550553, at *4 (M.D. Pa. June 2, 2008). Again, the burden is on the party seeking the receiver, not the party opposing it. And here, the District Court simply never analyzed whether Appellants' actions were causing the value of LV1's collateral to decrease in value.

It was enough to the District Court that Appellants might have done so. "Foreclosure will not serve to prevent the damage that *may be done* to the Properties while the case is running its course through the legal system." Appx. At 31. It is particularly noteworthy that the District Court concluded that there were no adequate legal remedies, while at the same time acknowledging that "*there is no evidence of ... inadequacy of security for the loan*." Appx. At 32. (emphasis added). The District Court made no attempt to explain this discrepancy.

As Appellants have attempted to emphasize to this Court, a receivership is a drastic and extreme remedy, and the party seeking a receivership bears the burden to prove the emergency condition that necessitates it. The court below reversed this burden and reduced "emergency" to mean not damage that is currently happening to the properties, but damage that "may be done" to the properties. This does not mean the high standard for appointment of a receiver, and this Court should reverse.

6.    Balance of the Interests

In analyzing this factor, the District Court gave short shrift to the harm caused by a receivership. The court determined that a receivership would benefit both parties, because "[a] receiver would assure that the Properties will have bills paid on time and be properly insured, and that the physical structures located on the Properties will be maintained." Appx. At 31. Once again, although Appellants are concededly in default of their mortgage obligation, there is simply no evidence on

the record below that bills are not being paid on time, that the properties are not insured, and that the physical structures on the properties are not being maintained. The District Court's logic here is the Same as above: having shown default, the creditor is relieved of obligation to show any other actual harms. The court essentially assumed, on the basis of default, that Appellants are not maintaining the property.

In fact, the District Court ignored the obvious indicia that insurance and bills are being paid, and that required maintenance is being undertaken. As the District Court understood, the properties at issue are the sites of assisted living facilities. *See* Appx. At 48. These facilities are heavily regulated at the federal, state, and local levels. The District Court focused on the alleged possibility that required maintenance was unpaid, while ignoring the reality that these properties are subject to regular inspection by federal and state regulators and local health inspectors. Even if Appellants (and their tenants) so desired, it would be impossible for them to fail to maintain and insure these facilities or they would be swiftly shut down.

Beyond that, the District Court's analysis did not include compensation of the receiver. The court's order entitles the receiver to $975 per hour with no monthly cap on compensation. Appx. At 18. The District Court conceded that receivership would interfere with Appellants' ability to operate the properties and ultimately concluded this factor was neutral. However, proper consideration that a receiver was

not necessary to ensure payment of tax and insurance bills, but does necessitate payment of tens of thousands of dollars per month to the receiver would have led to a different outcome. This factor clearly weighs *against* receivership.

7.      Other Factors

Finally, the District Court considered additional factors and found that "I find there is no evidence of misuse of project funds by the mortgagor, inadequacy of security for the loan, nor fraudulent conduct on behalf of Defendants." Appx. At 32. Although the District Court did not specifically so state, presumably these factors weighed against appointment of a receiver. As noted above, if the District Court believed that the security for the loan was adequate, the court should, at the very minimum, have determined that there was an adequate legal remedy.

**B.      THE DISTRICT COURT SHOULD HAVE ORDERED DISCOVERY BEFORE ANALYZING THE RELEVANT FACTORS**

As shown above, the District Court collapsed the analysis of nearly every relevant factor into a single question: whether Appellants were in default of their mortgage. Satisfied that Appellants were in default, the court accepted this as prima facie evidence that the other factors were met. According to this logic, default, of itself, automatically implies that a creditor is likely to succeed in a foreclosure action, that the debtor is otherwise in poor financial condition, that the subject property will

be diminished in value, that the creditor has no other legal remedy available, and that the debtor is not paying taxes, insurance, or maintaining the property.

In addition to improperly combining most of the factors into a single question, the District Court overlooked that there was no need to make any inferences or presumptions. Rather, the District Court could have ordered discovery or at least an evidentiary hearing. This would have given LV1 the opportunity to prove the relevant factors, as well as given the Appellants the opportunity to rebut them. Faced with all relevant evidence, the District Court could have analyzed each factor on its own and produced a ruling which addressed each factor fulsomely.

Discovery or an evidentiary hearing is not necessary where "where the facts support the appointment of a receiver." *United States v. Berk & Berk*, 767 F. Supp. 593, 597 (D.N.J. 1991). However, where genuine questions of fact exist, a court should defer a decision until discovery is completed. *Tanzer v. Huffines*, 315 F. Supp. 1140, 1143 (D. Del. 1970). This is particularly relevant where the party seeking the appointment of a receiver cannot determine the total present value of the mortgaged estate. *Midwest Bank v. Goldsmith*, 467 F. Supp. 3d 242, 250 (M.D. Pa. 2020). Without this type of evidence on the record, a court cannot determine whether the creditor will suffer irreparable injury or whether the secured asset is sufficient to satisfy the debt. *Id.*

And courts in this Circuit have routinely deferred the decision of whether to appoint a receiver until after discovery or an evidentiary hearing. In *Zinke-Smith, Inc. v. Marlowe*, 323 F. Supp. 1151, 1151 (D.V.I. 1971), creditors of a corporation that was undergoing apparent financial distress sought appointment of a receiver. At the time of the motion for receiver, the district court acknowledged that "some evidence … suggests mismanagement of the defendant corporation by the principal individual defendant, and … on the evidence thus far adduced the corporation is apparently in financial difficulty." *Id.* However, the court also recognized the extreme nature of judicial receivership, and delayed appointment of a receiver until after an evidentiary hearing. "The determination as to the claimed mismanagement or fraud which would justify appointment of a receiver must await a further evidentiary hearing. At that time, a more thorough exploration of the corporation's financial condition can be conducted." *Id.* at 1151–52.

By contrast, in the case below, the District Court refused to conduct an evidentiary hearing or allow discovery. Rather, the court explained that "[u]pon reviewing the above factors and applying them to the facts of this matter, I find that no evidentiary hearing is necessary, and the balance of factors weighs in favor of appointing a receiver." Appx. At 26. Notwithstanding this, the court stated repeatedly that there was insufficient record evidence to thoroughly analyze those factors. In examining Appellants financial status, the court reasoned that the *lack* of

recent financial status indicated poor financial health. *Id.* at 29-30. As to the diminution of value factor, the court stated that Appellee, the party seeking the receiver, "has no information as to the status of any leases that the entities have entered, how much rent is being collected, if the taxes are paid and up to date, if there are unpaid bills, if the Properties are insured or if there are liens entered against the Properties." *Id.* at 31. And the court assumed without explanation that a receiver was necessary to "assure that the Properties will have bills paid on time and be properly insured, and that the physical structures located on the Properties will be maintained." *Id.* at 32.

A receivership is an extraordinary remedy, reserved for those cases where some kind of financial emergency threatens the secured collateral of a creditor, and imminent action is necessary to preserve those assets. Here, the court below did not require any discovery, or even an evidentiary hearing, to determine whether those exigencies existed. Instead, relying only on the speculative allegations of LV1 and the fact that Appellants are in default, appointed a receiver. This, regrettably, was an abuse of discretion. At the very least, this Court should reverse and remand with instructions for the District Court to allow discovery and hold an evidentiary hearing before appointing a receiver.

## C.  THE RECEIVERSHIP ORDERED BY THE DISTRICT COURT IS FAR TOO BROAD IN SCOPE.

As explained in depth in VII.A.2 *supra*, the contractual clauses in this case which allow for appointment of a receiver bear almost no resemblance to the receiver that the District Court ultimately appointed.  The relevant mortgage clauses contemplate a receiver who has the power to collect rents, profits, and interest.  The receiver appointed by the court below, by contrast, has nearly unbridled authority, including to control the business operations of Appellants' tenants, who are not even party to this case.

Indeed, in an order dated June 9, 2025, denying Appellants' Motion to Stay appointment of the receiver pending appeal, the District Court went so far as to assert the receiver's authority over the tenants which operate the businesses at the subject properties.  "[T]he Receivership Order clearly establishes the powers of the Receiver and contains no ambiguity. … [T]he Receiver does in fact have some authority over the tenant operators, as the Receivership order clearly provides the Receiver with the authority to 'retain a reputable management company' to operate the Properties." Appx. At 53.  Given, as explained above, the contractual receiver provisions allow for a receiver to collect rents, profits, and income, it is startling that the District Court has asserted and even clarified that the receiver has authority to operate the businesses of tenants who are not party to this action.

Once again, in justification for this, the District Court explains that *potential*, rather than actual and ongoing, harms are present:

> These Properties house healthcare facilities that provide medical and memory care services to elderly patients. Defendants have failed to make mortgage payments in over four years, and **the Properties allegedly have deficient insurance and unpaid taxes**. The Properties require responsible property management for the sake of these senior citizens, and Defendants' inability to do so **could result in harm** to this vulnerable population, including possible displacement from their residences. Accordingly, the appointment of a receiver is necessary to preserve the status quo and protect the residents of these healthcare facilities, which is clearly in the public interest.

*Id.* (emphasis added). The District Court assumes, without requiring evidence, that there *could be* some kind of emergency situation which might lead to possible displacement of the elderly population. Based on these hypotheticals, the District Court has not only appointed a receiver but has purported to exercise authority over entities that are not party to this case.

Even if this Court does not agree that it was inappropriate to appoint a receiver, the Court should still reverse and remand with instructions for the District Court to enter a less expansive receivership. The contractual provisions at issue do not contemplate giving a receiver the authority to operate the tenant businesses, and Article III does not contemplate the District Court exercising jurisdiction over absent parties.

## VIII. <u>CONCLUSION</u>

For the reasons set forth herein, this Honorable Court must grant review of

Petitioner's Petition for Review.

Respectfully Submitted,

**LAHOUD LAW GROUP, P.C.**

Date: July 30, 2025

/s/ Raymond G. Lahoud
Raymond G. Lahoud, Esquire
600 Hamilton Street, Suite 300
Allentown, PA 18101
P:     (484) 544-0022
E:     rgl@raylahoud.com

**NORRIS McLAUGHLIN, P.A.**

Date: July 30, 2025

/s/ Raymond G. Lahoud
Rebecca Price, Esquire
515 Hamilton Street, Suite 515
Allentown, PA 18101
P:     (610) 391-1800
E:     rjprice@norris-law.com

## CERTIFICATE OF COMPLIANCE
### Certificate of Compliance with Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

1.   This document complies with the page and word limit requirements of Fed. R. App. P. 27(d) because, excluding the parts of the document exempted by Fed. R. App. P. 27(d)(2), this Opening Brief is 31 pages long and contains 6,923 number of words.

2.   The document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) as prescribed in Fed. R. App. P. 27(d) because this Opening Brief has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 350 in Size 14 Times New Roman Font.

Respectfully Submitted,

**LAHOUD LAW GROUP, P.C.**

Date: July 30, 2025

/s/ Raymond G. Lahoud
_____
Raymond G. Lahoud, Esquire
600 Hamilton Street, Suite 300
Allentown, PA 18101
P:     (484) 544-0022
E:     rgl@raylahoud.com

## ELECTRONIC DOCUMENT COMPLIANCE

Pursuant to Third Circuit Local Appellate Rule 13.1(c), I hereby certify that the text of the electronic brief is identical to the text in the paper copies.

The brief was scanned using Endpoint Security version 12.0.2058.0, and no viruses were detected.

Respectfully Submitted,

**LAHOUD LAW GROUP, P.C.**

Date: July 30, 2025

/s/ Raymond G. Lahoud
_____
Raymond G. Lahoud, Esquire
600 Hamilton Street, Suite 300
Allentown, PA 18101
P:    (484) 544-0022
E:    rgl@raylahoud.com

## <u>CERTIFICATES OF BAR ADMISSION</u>

Pursuant to Third Circuit Local Appellate Rule 28.3(d), we certify that we are members of the bar of the United States Court of Appeals for the Third Circuit.

Respectfully Submitted,

**LAHOUD LAW GROUP, P.C.**

Date: July 30, 2025      /s/ Raymond G. Lahoud
Raymond G. Lahoud, Esquire
600 Hamilton Street, Suite 300
Allentown, PA 18101
P:     (484) 544-0022
E:     rgl@raylahoud.com

**NORRIS McLAUGHLIN, P.A.**

Date: July 30, 2025      /s/ Raymond G. Lahoud
Rebecca Price, Esquire
515 Hamilton Street, Suite 515
Allentown, PA 18101
P:     (610) 391-1800
E:     rjprice@norris-law.com

## CERTIFICATE OF SERVICE

I, Raymond G. Lahoud, Esquire, hereby certify that on July 28, 2025, I served a true and correct copy of Appellants' Opening Brief with the Clerk of the Court for the United States Court of Appeals for the Third Circuit through the Court's CM/ECF system.

I further certify that Counsel for Respondent is a registered CM/ECF user, and that service will be accomplished on the date set forth herein via the Court's CM/ECF system.

Respectfully Submitted,

**LAHOUD LAW GROUP, P.C.**

Date: July 30, 2025

/s/ Raymond G. Lahoud
Raymond G. Lahoud, Esquire
600 Hamilton Street, Suite 300
Allentown, PA 18101
P:  (484) 544-0022
E:  rgl@raylahoud.com