# United States Court of Appeals

## FOR THE THIRD CIRCUIT



**WHITEHALL FIDUCIARY LLC, AS TRUSTEE OF WHITEHALL TRUST U/T/A DATED AUGUST 1, 2007, AND SAUCON VALLEY TRUST U/T/A DATED AUGUST 1, 2007,**
*Appellants,*

*v.*

**LEHIGH VALLEY 1 LLC, SUCCESSOR BY ASSIGNMENT TO WINDSTREAM CAPITAL LLC, SUCCESSOR BY ASSIGNMENT TO THE UNITED STATES SECRETARY OF HOUSING AND URBAN DEVELOPMENT, SUCCESSOR BY ASSIGNMENT TO M&T REALTY CAPITAL CORPORATION,**
*Appellee.*

_____

*Appeal from the Order of the United States District Court for the Eastern District of Pennsylvania issued May 2, 2025, Dkt. Nos. 24-cv-02627 and 24-cv-02709*

## APPELLANTS' APPENDIX – VOLUME I OF I

RAYMOND GABRIEL. LAHOUD, ESQUIRE
LAHOUD LAW GROUP, P.C.
600 Hamilton Street
Suite 300
Allentown, PA 18101
P:     484-544-0022

REBECCA PRICE, ESQUIRE
NORRIS MCLAUGHLIN, P.A.
515 Hamilton Street
Suite 515
Allentown, PA 18101
P:     610-391-1800

*Attorneys for Appellants*

# TABLE OF APPENDIX

TABLE OF APPENDIX .......................................................................... i

NOTICE OF APPEAL ..........................................................................1

ORDER ON APPEAL ..........................................................................4

OPINION UNDER REVIEW..................................................................20

EXCERT OF TRANSCRIPTS (FEB 25, 2025 HEARING ................................. 30

DISTRICT COURT ORDER ISSUED JUNE 9, 2025 ......................................... 46

APPELLEE'S MOTION TO APPOINT RECEIVER ........................................... 50

CERTIFICATE OF SERVICE

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LEHIGH VALLEY 1 LLC, successor by assignment to WINDSTREAM CAPITAL, LLC, successor by assignment to the UNITED STATES SECRETARY OF HOUSING AND URBAN DEVELOPMENT, successor by assignment to M&T REALTY CAPITAL CORPORATION, | ) ) ) ) ) ) ) ) | **NO. 24 CIV. 2627 (CH)**<br><br>**NOTICE OF APPEAL IN A CIVIL CASE** |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| WHITEHALL FIDUCIARY LLC, AS TRUSTEE OF WHITEHALL TRUST U/T/A DATED AUGUST 1, 2007, | ) ) ) ) | |
| Defendant. | ) ) | |
| LEHIGH VALLEY 1 LLC, successor by assignment to WINDSTREAM CAPITAL, LLC, successor by assignment to the UNITED STATES SECRETARY OF HOUSING AND URBAN DEVELOPMENT, successor by assignment to M&T REALTY CAPITAL CORPORATION, | ) ) ) ) ) ) ) ) | **NO. 24 CIV. 2709 (CH)**<br><br>**NOTICE OF APPEAL IN A CIVIL CASE** |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| SAUCON TRUST, U/T/A DATED OCTOBER 1, 2007, | ) ) ) | |
| Defendant. | ) ) | |

Notice is hereby given that Defendants, Whitehall Fiduciary LLC, as Trustee of Whitehall Trust U/T/A Dated August 1, 2007 (No. 24 Civ. 2627) and Saucon Trust U/T/A Dated October 1, 2007 (No. 24 Civ. 2709), hereby appeal to the United States Court of Appeals

00001

for the Third Circuit, pursuant to Title 28, Section 1292 of the United States Code, from the Orders dated and entered on May 2, 2025 (ECF No. 65 (24-2627) and ECF No. 58 (24-2709)), and Memorandums dated and entered on May 2, 2025 (ECF No. 64 (24-2627) and ECF No. 57 (24-2709)), granting the Motions of Plaintiff, Lehigh Valley 1 LLC, successor by assignment to Windstream Capital, LLC, successor by assignment to the United States Secretary of Housing and Urban Development, successor by assignment to M&T Realty Capital Corporation, for Appointments of a Receiver (ECF No. 8 (24-2627) and ECF No. 17 (24-2709)).

Respectfully Submitted:

**LAHOUD LAW GROUP, P.C.**

Date: 05/02/2025

/s/ Raymond G. Lahoud
Raymond G. Lahoud, Esquire
PA ID No. 335380
600 Hamilton Street
Suite 330
Allentown, PA 18101
P:    (484) 544-0022
F:    (484) 750-2540
E:    rgl@raylahoud.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I, Raymond G. Lahoud, Esquire, hereby certify that a true and correct copy of the Notices of Appeal in a Civil Case was, on the date set forth below, served _via_ ECF, upon counsel for Defendant, Lehigh Valley 1 LLC, Successor by Assignment to Windstream Capital LLC, Successor by Assignment to the United States Secretary of Housing and Urban Development, Successor by Assignment to M&T Realty Capital Corporation.

Respectfully Submitted:

**LAHOUD LAW GROUP, P.C.**

Date: 05/02/2025

/s/ Raymond G. Lahoud
Raymond G. Lahoud, Esquire
PA ID No. 335380
600 Hamilton Street
Suite 330
Allentown, PA 18101
P:      (484) 544-0022
F:      (484) 750-2540
E:      rgl@raylahoud.com

_Attorneys for Defendants_

00003

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LEHIGH VALLEY 1 LLC, successor by** | : | |
| **assignment to WINDSTREAM CAPITAL** | : | |
| **LLC, successor by assignment to the** | : | **CIVIL ACTION** |
| **UNITED STATES SECRETARY OF** | : | |
| **HOUSING AND URBAN DEVELOPMENT,** | : | |
| **successor by assignment to M&T REALTY** | : | |
| **CAPITAL CORPORATION** | : | **NO.  24-2627** |
| | : | |
| **v.** | : | |
| | : | |
| **WHITEHALL FIDUCIARY LLC, as** | : | |
| **TRUSTEE OF WHITEHALL TRUST U/T/A** | : | |
| **DATED AUGUST 1, 2027** | : | |

| | | |
|---|---|---|
| **LEHIGH VALLEY 1, LLC, successor by** | : | |
| **assignment to WINDSTREAM CAPITAL** | : | |
| **LLC, successor by assignment to the** | : | **CIVIL ACTION** |
| **UNITED STATES SECRETARY OF** | : | |
| **HOUSING AND URBAN DEVELOPMENT,** | : | |
| **successor by assignment to M&T REALTY** | : | **NO. 24-2709** |
| **CAPITAL CORPORATION** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **SAUCON TRUST, U/T/A DATED** | : | |
| **OCTOBER 1, 2007** | : | |

<u>**ORDER**</u>

    **AND NOW**, this 2nd day of May 2025, upon consideration of Plaintiff's Motion for

Appointment of a Receiver (Docket No. 8 (24-2627) and Docket No. 17 (24-2709)), Defendants'

opposition thereto, as well as all replies and sur-replies, and after oral argument being held, it is

hereby **ORDERED** that Plaintiff's Motions are **GRANTED**. It is further **ORDERED** as follows:

    **I.**    **APPOINTMENT OF THE RECEIVER**

    1.    Duane Morris LLP through Erin Duffy, Esq. is appointed as Receiver with

the usual powers and  directions for the benefit of the Plaintiff of all the rents and profits now due

and unpaid or to become due during the pendency of this mortgage foreclosure action, effective

immediately for all real and personal, tangible and intangible property (including, without limitation, all structures, leases, fixtures and moveable personal property, in addition to all of the property set forth in paragraph 6(a) hereof) owned by Whitehall Fiduciary LLC, as Trustee of Whitehall Trust U/T/A Dated August 1, 2007 ("Whitehall") at 1177 6th Street, Whitehall, PA and Saucon Trust U/T/A Dated October 1, 2007 ("Saucon") at 1050 Main Street, Unit # 1, Hellertown, PA (collectively the "Properties"); with respect to income of any kind; and with respect to any and all other property and property interests pledged or assigned to Plaintiff under the Loan Documents, as defined in the Complaints.

## II.    TERM OF THE RECEIVER

2.    The Receiver shall serve as the receiver for the Properties for a period which shall commence on the date of this Order and shall continue, notwithstanding the entry of judgment in favor of Lehigh Valley 1 LLC (by consent or otherwise), subject to the terms of paragraph 3 below, until the earliest to occur of: (i) the termination of such appointment by a subsequent Order of Court; (ii) Lehigh Valley 1 LLC's (or its nominee's, designee's or assignee's) acquisition of title to the Leasehold Estate through the delivery to Lehigh Valley 1 LLC (or its nominee, designee or assignee) of a sheriff's assignment or by assignment in lieu of foreclosure; or (iii) full payment of all sums due and owing under the "Loan Documents" (as defined in Plaintiff's Complaints).

3.    Notwithstanding the terms of paragraph 2, at Lehigh Valley 1 LLC's request, and upon Court approval, following the occurrence of the events described in part (iii) of paragraph 2, the Receiver shall continue the receivership for such reasonable period as may be necessary to wind up the receivership.

4.    The receivership may be terminated at any time by Lehigh Valley 1 LLC filing with the Court and serving upon the Receiver, Whitehall, and Saucon a Notice of Request to Terminate Appointment of the Receiver (a "Termination Request").

5.    Within 30 days after the termination of the receivership, the Receiver shall file with the Court and serve upon Lehigh Valley 1 LLC, Whitehall and Saucon its final report and accounting for the receivership, and the Receiver or Lehigh Valley 1 LLC may request that the Court enter an Order approving such final report and accounting and discharging the Receiver from its duties under this Order.

### III.    POWERS AND DUTIES OF THE RECEIVER

6.    The Receiver shall have all necessary powers to manage the rents and profits of the Property, including the following powers:

(a)    To enter and take immediate possession of the Property, and to demand, collect and receive the rents, income, revenues, proceeds and profits derived from tenants at the Property, their sublessees or any occupants in possession, including maintenance fees, management fees, special assessments and/or other charges relating to the Property, which are now due and unpaid or which may become due hereafter (collectively, the "Rents"), and all personal property owned or utilized by Lehigh Valley 1 LLC that relates to the management or operation of the Property, including all books, records, bank accounts, reserve accounts, cash on hand, keys, and combinations for locks or other access information in the possession of or reasonably available to Whitehall, Saucon or their property managers (collectively, the "Receivership Properties");

(b)    To access and use office equipment at the Properties used by Whitehall, Saucon or their property managers, including computer equipment, software programs and passwords;

(c)    To take all actions necessary to preserve, maintain, operate, and manage the Property. The Receiver must obtain Lehigh Valley 1 LLC's prior written consent before any such expenditures are made;

(d)    To employ counsel and, with the consent of Lehigh Valley 1 LLC, accountants or other professionals, contractors and support personnel and other persons necessary

3

in order to carry out its duties as the Receiver and to preserve, maintain and operate the Property, and to compensate such persons at competitive rates, without further Order of this Court, at their respective hourly rates, plus reimbursement of all reasonable and necessary out-of- pocket expenses;

(e)     To commence, prosecute, continue or defend actions at law or in equity (in its own name or in the names of Whitehall or Saucon) that the Receiver deems necessary to protect or preserve the Property, to recover possession of the Property, to collect the rents, or to evict or eject any tenants or occupants in accordance with applicable state laws;

(f)     To continue in effect, modify or terminate (if and to the extent terminable without penalty or premium unless such termination penalty or premium shall be paid by the Receiver) agreements, contracts, understandings or commitments entered into by Whitehall or Saucon with respect to the Properties, to the extent permitted by applicable law, and to make additional agreements and contracts reasonably necessary for the operation and preservation of the Properties;

(g)     To retain a reputable management company (including, but not limited to, an affiliate of the Receiver), maintenance personnel, broker, leasing agent and/or marketing agent to operate and manage the Properties, and to market the Properties for rent, without further order of this Court, but with the consent of Lehigh Valley 1 LLC, and at competitive rates plus reimbursement of its reasonable and necessary out-of-pocket expenses;

(h)     To pay all past-due and current insurance premiums, taxes, assessments, sewer and utility charges levied against the Properties, and (with the consent of Lehigh Valley 1 LLC) to purchase merchandise, construction and other materials, supplies and services as the Receiver deems necessary and advisable to assist the Receiver in performing its duties and to pay the ordinary and usual rates and prices;

(i)     To open and utilize any new bank accounts as the Receiver deems necessary

**4**

or desirable in connection, and the Receiver is authorized, empowered and directed to use Whitehall's and/or Saucon's tax identification number in connection with the revenue and expenses with respect to the Properties;

(j)     To make, enter into, enforce, terminate, modify or accept a surrender of any of the Leases (as defined in the Mortgage); to obtain and evict occupants (subject to applicable laws and regulations); to bring or defend any suits in connection with the Leases or Rents in its own name or in the name of Whitehall or Saucon; to compromise any Rents or other payments, income or proceeds that may become due; and to sue for or otherwise collect and receive all Rents, including those past due and unpaid. Rents and Leases shall be turned over to Receiver and the Defendant shall be enjoined and restrained from collecting the Rents and Leases of the Properties or interfering with Receiver's ability to collect said Rents and Leases. Tenants, **occupants, and licensees** of the Properties are enjoined from paying any rent or lease payment to the Defendant, its agents, servants or attorneys, and if they do so, they may be held liable to Receiver and Plaintiff for these sums;

(k)     To present for payment any checks, money orders or other forms of payment made payable to Whitehall, Saucon, their property managers, or any other agent, assignee or nominee of Whitehall or Saucon, which constitute Rents, endorse and collect the proceeds, to be used and maintained as elsewhere provided;

(l)     To keep the Properties insured (whether by the existing insurance coverages or new coverages), each of which insurance policy shall name the Receiver and Lehigh Valley 1 LLC as additional insureds, if permitted by the insurer, and shall comply, at a minimum, with the terms of the Loan Documents;

(m)     As Receiver, to use for any such purpose any funds of Whitehall or Saucon, including the Rents;

(n)    To notify all local, state and federal government agencies, all vendors and suppliers, and any and all others who provide goods and services to the Properties of its appointment as the Receiver;

(o)    Receiver is authorized to apply income from the Properties, subject to the lien rights of Lehigh Valley 1 LLC, as follows and in the following order to the extent funds are available: first, to pay Receiver's approved fees and expenses which include the Receiver's attorneys' fees related to the receivership; second, to pay all operating expenses with respect to the Properties (other than the obligations owed to Plaintiff under the Loan Documents); third, to pay all capital obligations with respect to the Properties; fourth, to fund reasonable reserves for anticipated operating expenses and capital obligations with respect to the Properties; and lastly, to pay the obligations owed to Plaintiff under the Loan Documents;

(p)    To take any and all steps necessary to receive, collect and review all mail or other parcels relating to the Properties addressed to Whitehall, Saucon and/or their property managers, including, but not limited to, mail or other parcels addressed to any post office boxes held in the name of Whitehall, Saucon, their property managers, or any other agent, assignee or nominee of Whitehall or Saucon, and to instruct the U.S. Postmaster and any other mail or parcel carrier or service to re-route, hold, and/or release said mail or other parcels to the Receiver; provided that any mail and other parcels addressed to Whitehall or Saucon that do not relate to the Properties and reviewed by the Receiver in the performance of its duties will be forwarded to Whitehall, Saucon or their property managers by the Receiver after its review;

(q)    With prior written consent and authorization from Lehigh Valley 1 LLC to delegate or assign any and all rights and powers of the Receiver set forth herein, in the reasonable discretion of the Receiver;

(r)    To apply to this Court for further direction and for such further powers as may be necessary to enable the Receiver to fulfill its duties;

Appendix 11

00009

(s)    To keep a true and accurate account of any and all receipts and expenditures for the Properties;

(t)    Receiver shall, within 30 days of qualification and appointment, provide Lehigh Valley 1 LLC, Whitehall and Saucon with an inventory of all property of which Receiver has taken possession. If Receiver subsequently comes into possession of additional property, Receiver will provide Lehigh Valley 1 LLC, Whitehall and Saucon with a supplemental inventory;

(u)    In addition to any financial, operating, and other reports and information required to be delivered pursuant to the Loan Documents, Receiver shall provide the following documents for the immediate preceding calendar month, which documents are believed by the Receiver as being true, correct, and complete as of the reporting date;

(i) a balance sheet, statement of income and expenses, statement of cash flows for the Properties and on a consolidated basis for all Properties;

(ii) a detailed rent roll for the Properties showing the occupancy of the respective Properties, name of each tenant, occupant, or customer and, for each tenant, occupant, or customer, the space occupied, the lease or occupancy commencement and expiration dates, the rent or fee payable, the rent or fee paid to date and the security deposit being held for such tenant, if any, and a leasing or rental activity report for the Properties each in detail reasonably satisfactory to Petitioner;

(iii) an aged payables report and an aged receivables report for the Properties;

(iv) a capital expenditure report for the Properties;

(v) all bank statements with monthly reconciliations; and

(vi) each of the above will be provided to Plaintiff on a monthly basis.

00010

(v)     To pay all ordinary and reasonable costs associated with the Properties arising on or after the date of the Complaint, that were not invoiced by the vendor or provider prior to the date of this Order;

(w)     To open any new customer accounts necessary to effectively manage the Properties and/or to require Whitehall and/or Saucon to identify the Receiver as an authorized account user for any existing accounts;

(x)     To pay any pre-receivership obligations of Whitehall and Saucon authorized by Lehigh Valley 1 LLC;

(y)     To execute a W-9 as an attorney-in-fact for Whitehall and Saucon;

(z)     To notify tenants and other persons now or hereafter in possession of all or any portion of the Properties to pay all Rents directly to the Receiver;

(aa)    To exercise commercially reasonable discretion in determining whether to refund security deposit to a tenant, in whole or in part, in accordance with the applicable leases or agreements, and to pay any such funds from security deposits turned over from Whitehall, Saucon or (for tenancies arising after the date of this Order) security deposits paid by or on behalf of a tenant first, and then from cash flow generated from Rents, issues, profits, and income from the Properties.

(bb)    Receiver and Lehigh Valley 1 LLC are authorized to enter transactions by which Lehigh Valley 1 LLC may lend monies to Receiver (on a nonrecourse basis as to Receiver) to enable Receiver to perform its duties, which shall be secured by a first and prior lien and security interest on the Properties and on all other collateral of Lehigh Valley 1 LLC, in favor of Lehigh Valley 1 LLC as security for such on the same terms and conditions set forth in the Mortgage, subject, however, to the terms of paragraph (cc) below.

(cc)    Whitehall and Saucon shall hold in trust for Receiver (and not sell, transfer, assign, lend, pledge, hypothecate, return, reject, revoke or in any other way actually or

**8**

constructively dispose of, without Court approval or the written consent of Plaintiff), any certificate, deposit, fund, account, trademark, benefit, liquor or food license or permit, or other right or interest owned by it and used in connection with the Properties, and shall assign (to the extent assignable) any of the same to Receiver upon Receiver's written request.

(dd) Notwithstanding anything contained in this Order, (1) any obligation or liability incurred by the Receiver during the receivership shall not be a personal obligation or liability of Whitehall or Saucon, but shall be collectible only out of the Properties, and the Receiver shall include the foregoing in each agreement, purchase order and other contract it enters into pursuant hereto, and (2) neither Whitehall, Saucon nor any of their affiliates shall be liable for any action or inaction of the Receiver. Receiver covenants not to sue or bring any claim, demand action or suit against Whitehall or Saucon directly or indirectly that is inconsistent with the foregoing and the nonrecourse nature of the obligations of Whitehall and Saucon pursuant to the terms and provisions of the Loan Agreement and other similar provisions contained in the Loan Documents.

7. Neither the Receiver nor any person or entity employed by the Receiver (collectively, the "Receiver Parties") shall be liable to Whitehall, Saucon or to any third party for any act or omission which he, she, it or they have undertaken in good faith; provided, however, nothing contained herein shall release or limit the liability of the Receiver Parties arising from the gross negligence or willful misconduct of the Receiver Parties. The Receiver shall be entitled to all defenses and immunities provided under applicable law, including under *Barton v. Barbour*, 104 U.S. 126 (1881) and its progeny, for acts or omissions within the scope of the Receiver's appointment.

8. Except as provided in this Order, the Receiver shall not be responsible for the payment of any services commissioned or incurred, or goods purchased, prior to the date of this Order, including utility invoices (including electricity, gas, water, sewer, garbage, phone/internet,

00012

etc.), payroll and property vendors, all of which shall remain the responsibility of Whitehall or Saucon.

9.      No utility may terminate service to the Properties because of non-payment of pre-receivership obligations without prior order of this Court, nor may the continuation of any utility be conditioned upon the Receiver's payment of any pre-receivership consumption, charges or fees.

10.     No insurance company may cancel its existing current-paid policy without prior order of this Court.

## IV.    TURNOVER BY WHITEHALL AND SAUCON

11.     Whitehall, Saucon and all persons acting under their direction are ordered to immediately deliver to Receiver possession of the Properties and each of the following, to the extent owned by Whitehall or Saucon, in the possession or control of Whitehall or Saucon, and relating to the Properties without any right of offset or recoupment:

(a) Property-related information and other property management database files,

(b) All cash collateral for the indebtedness owed by Whitehall or Saucon to Plaintiff (whether consisting of cash on hand, cash in any and all bank accounts or other accounts, all rights to security deposits, if any, including but not limited to amounts that Whitehall or Saucon may have deposited with utility companies, and all other cash and cash equivalents);

(c) All keys to the Properties;

(d) All security deposits, rent, prepaid rent and other sums relating to the use, enjoyment, possession, improvement or occupancy of all or any part of the Properties, in each case, to the extent received by Whitehall or Saucon and any accounts in which any of the foregoing are deposited;

(e) A current list of the occupants of the Properties;

(f) Any and all current Properties accounts receivable and accounts payable reports;

(g) Any and all contracts in effect with respect to the Properties, and any material related correspondence;

(h) Any and all payroll records and other materials reasonably requested by Receiver and related to persons employed by Whitehall, Saucon or their property managers at the Properties;

(i) Certificates evidencing the insurance policies covering the Properties;

(j) Records showing any insured losses to the Properties in the past five years;

(k) Any and all bank statements relating to any accounts maintained by Whitehall or Saucon with respect to the Properties;

(l) The tax identification numbers of Whitehall and Saucon;

(m) Any and all other records pertaining to the management of the Properties to the extent such records are maintained; and

(n) All licenses, certificates, surveys, reports, communications and correspondence from the Commonwealth of Pennsylvania related to the Properties or operations of the Properties for the past twenty-four (24) months.

12.    From and after the date Whitehall and Saucon deliver possession of the Properties to Receiver, Whitehall and Saucon shall continue to perform ·or cause to be performed at the sole cost and expense of Whitehall and Saucon all actions necessary for Whitehall and Saucon to keep their organizational status in good standing with their state of organization and the state where the Properties are located, if different, including, without limitation, the timely filing of all required annual reports, tax returns and other similar state and local filings and paying any required fees and charges.

13.    Whitehall, Saucon and all persons acting under their direction are ordered to cooperate and use their best efforts to ensure a smooth transition of the management and operation of the Properties to the Receiver, including, but not limited to, requests for information or

00014

documents that pertain to the maintenance, operation or leasing of the Properties or any efforts to collect any sums due;

14.    Within three (3) days from the date of this Order, provide the Receiver with the name, title, address, telephone number and email address of a designated representative of Whitehall and Saucon with whom the Receiver shall communicate about the obligations expressed in this Order, and promptly notify the Receiver of any changes.

## V.    NON-INTERFERENCE BY WHITEHALL AND SAUCON

15.    Whitehall, Saucon and their officers, directors, general partners, limited partners, agents, property managers, architects, contractors, subcontractors and employees, and all other persons with actual or constructive knowledge of this Order and their agents and employees, are enjoined from:

(a) Interfering with the Receiver, directly or indirectly, in the management and operation of the Properties or in the collection of Rents;

(b) Extending, dispersing, transferring, assigning, selling, conveying, devising, pledging, mortgaging, creating a security interest in or disposing of the whole or any part of the Properties (including the Rents) without the prior written consent of the Receiver;

(c) Doing any act which will, or will tend to, impair, defeat, divert, prevent or prejudice the preservation of the Properties (including the Rents and licenses or certificates) or the interest of Lehigh Valley 1 LLC in the Properties or the Rents;

(d) Undertaking any efforts to cancel, terminate or modify the coverage provided by any existing insurance policies relating to the Properties before their respective expiration dates; or

(e) Transferring, selling, assigning, revoking, returning, terminating or canceling, or taking or failing to take any action that would compromise, without the consent of the Receiver, any contract, permit, approval, license, privilege, or right necessary for the operation

Appendix 17

00015

of business at or use and occupancy of the Properties.

16.    In the event Whitehall or Saucon fail to comply with the terms of this Order, the Receiver may seek assistance from the U.S. Marshal to enforce the same.

## VI.    RECEIVER'S COMPENSATION

17.    The Receiver shall be compensated at its standard hourly rates. The Receiver's fee will be $975 per hour and said monthly fee shall be deducted directly from the rents, income and revenue received by Receiver.

18.    In addition to the Receiver's fees, the Receiver shall be reimbursed for its reasonable costs, including legal fees, travel expenses, and other business expenses associated with the Receivership. The Receiver may pay itself from Rents, the Receivership Properties, and from the sale of the Properties, if any.

19.    The Receiver shall file monthly reports with the Court disclosing its compensation and reimbursement.

## VII.    BANKRUPTCY OF WHITEHALL AND/OR SAUCON

20.    If Whitehall and/or Saucon files a bankruptcy case during the receivership, Lehigh Valley 1 LLC shall give notice of the bankruptcy case to the Court and the Receiver. If the Receiver receives notice that the bankruptcy has been filed and that part of the bankruptcy estate includes the Properties (or any part of them) that are the subject of this Order, the Receiver shall have the following duties:

(a) The Receiver shall give prompt notice of the bankruptcy case to Lehigh Valley 1 LLC.

(b) The Receiver shall immediately contact Lehigh Valley 1 LLC and determine whether Lehigh Valley 1 LLC intends to move in the bankruptcy court for an order for: (i) relief from the automatic stay; and (ii) relief from the Receiver's obligation to turn over the Properties (11 U.S.C. § 543). If Lehigh Valley 1 LLC disclaims in writing any intention to make such a

motion or fails to file such motion within ten court days following its receipt of notice of the bankruptcy filing, the Receiver shall immediately turn over the Properties (or applicable portion thereof) to the appropriate entity (either to the trustee in bankruptcy if one has been appointed or, if not, to the debtor in possession) and otherwise comply with 11 U.S.C. § 543.

If Lehigh Valley 1 LLC intends to seek relief immediately from both the automatic stay and the Receiver's obligation to turn over the Properties, the Receiver may remain in possession and preserve the Properties pending the ruling on those motions unless otherwise ordered by the Bankruptcy Court. (11 U.S.C. § 543(a).) The Receiver's authority to preserve the Properties shall be limited as follows: (i) the Receiver may continue to collect Rents and other income; (ii) the Receiver may make only those disbursements necessary to preserve and protect the Properties; (iii) the Receiver shall not execute any new leases or other long-term contracts without the approval of this Court and the Bankruptcy Court; and (iv) the Receiver shall do nothing that would effect a material change in the circumstances of the Properties.

## VIII.  MISCELLANEOUS

21.    Without limiting any of the general or specific powers granted herein, Receiver is vested with all the powers, rights, and duties provided to receivers under applicable law, and may act in the name of Whitehall and/or Saucon without the approval or consent of the members, managers, directors, officers, partners, or other persons that would be legally required in the absence of the Receiver's appointment to approve or consent to such action.

22.    The Receiver shall notify all known creditors of Whitehall or Saucon of the entry of this Order by sending a copy of the Order to the creditor at its last known mailing address.

23.    Entry of this Order shall operate as a stay applicable to all persons and entities of:

(a) Any act, including without limitation the commencement or continuation of a judicial, administrative, or other action or proceeding including the issuance of process to obtain possession of Receivership Properties or to interfere with or exercise control over Receivership

00017

to comply with federal and state law or directives regarding the operations of the Properties or to comply with state statutory and regulatory requirements.

**BY THE COURT:**

*s/ Catherine Henry*
_____
**CATHERINE HENRY, J.**

00018

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LEHIGH VALLEY 1 LLC, successor by** | : | |
| **assignment to WINDSTREAM CAPITAL** | : | |
| **LLC, successor by assignment to the** | : | **CIVIL ACTION** |
| **UNITED STATES SECRETARY OF** | : | |
| **HOUSING AND URBAN DEVELOPMENT,** | : | |
| **successor by assignment to M&T REALTY** | : | |
| **CAPITAL CORPORATION** | : | **NO. 24-2627** |
| | : | |
| **v.** | : | |
| | : | |
| **WHITEHALL FIDUCIARY LLC, as** | : | |
| **TRUSTEE OF WHITEHALL TRUST U/T/A** | : | |
| **DATED AUGUST 1, 2027** | : | |

| | | |
|---|---|---|
| **LEHIGH VALLEY 1, LLC, successor by** | : | |
| **assignment to WINDSTREAM CAPITAL** | : | |
| **LLC, successor by assignment to the** | : | **CIVIL ACTION** |
| **UNITED STATES SECRETARY OF** | : | |
| **HOUSING AND URBAN DEVELOPMENT,** | : | |
| **successor by assignment to M&T REALTY** | : | **NO. 24-2709** |
| **CAPITAL CORPORATION** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **SAUCON TRUST, U/T/A DATED** | : | |
| **OCTOBER 1, 2007** | : | |

### <u>MEMORANDUM OPINION</u>

**Henry, J.** *s/CH*                                                      **May 2, 2025**

The instant matter involves two mortgage foreclosure actions brought by Plaintiff, Lehigh

Valley 1 LLC ("Lehigh"), against Defendant, Whitehall Fiduciary LLC ("Whitehall"), and

Defendant, Saucon Trust ("Saucon"). Both mortgages are virtually identical aside from the

amounts of the loans, and the action against Whitehall and the action against Saucon are virtually

identical mortgage foreclosure actions. Therefore, these matters were consolidated. In both cases,

Lehigh filed identical motions in which it sought appointment of a receiver to manage the

Properties, both of which house residential senior living facilities encumbered by the mortgages. Lehigh contends a receiver is necessary because both mortgages are in default and have been for over 4 years, the financial health of both Whitehall and Saucon is dire, and there is a concern about diminution in value of the Properties. Both Whitehall and Saucon, represented by the same law firm, have opposed the motions, arguing that Plaintiff has not met the burden for appointment of a receiver.

## I.    **BACKGROUND**

On January 26, 2012, M&T Realty Capital Corporation ("M&T") provided a loan to Defendant Whitehall in the amount of $15,788,700 secured by a mortgage on real property located at 1177 6th Street, Whitehall PA. (Docket No. 7, Am. Compl., ¶ 15, (24-2627)). On December 1, 2012, M&T provided a loan to Defendant Saucon in the amount of $19,462,800 secured by a mortgage on real property located at 1050 Main Street, Unit #1, Hellertown, PA. (Docket No. 9, Am. Compl., ¶ 11 (24-2790)). Both the Whitehall property and the Hellertown property house senior living facilities and both loans are secured by a mortgage and a note.

Both notes and mortgages were assigned by M&T to the United States Secretary of Housing and Urban Development ("HUD") effective November 16, 2022. HUD assigned both notes and mortgages to Windstream Capital on September 20, 2023, and Windstream Capital assigned both notes and mortgages to Lehigh on May 15, 2024. (Am. Compls., Exs. D-I.)

There is no real dispute that Whitehall and Saucon are in default, as both entities have failed to make their required monthly debt payments since at least February of 2021. Due to Defendants' defaults, both Loans were accelerated, and demand was made for the immediate

payment of all amounts due and owing in full on October 5, 2023. (Docket No. 31, Am. Compl., Ex. J (24-2627)). [1]

Lehigh alleges that Whitehall and Saucon are in poor financial condition, have failed to pay taxes on the Properties, have failed to provide Lehigh with evidence of insurance on the Properties, and have failed to provide Lehigh with a current financial report. (Docket Nos. 8 (24-2627) and 12 (24-2709). In response, neither Whitehall nor Saucon argue that they are not in default. Rather, they argue that the parties must do discovery before a receiver can be appointed, that Lehigh has an adequate security interest in the Properties, that there is no allegation of Whitehall or Saucon engaging in fraudulent conduct, that Lehigh's evidence of Defendants' weak financial positions is old and outdated, and that Lehigh has not shown any danger of the Properties being diminished in value. (Docket Nos. 10 (24-2627) and 19 (24-2790)).

## II.    <u>ANALYSIS</u>

It is true that receivership is an extraordinary equitable remedy that is not routinely granted. *Morgan Stanley Smith Barney LLC v. Johnson*, 952 F.3d 978, 980 (8th Cir. 2020); see also *Maxwell v. Enterprise Wall Paper Mfg. Co.*, 131 F.2d 400, 403 (3d Cir. 1942). However, a district court is given "broad discretion" in the decision to appoint a receiver. *Wilmington Tr. N.A. v. Pavilion Apts. PENN LLC*, No. 22-3985, 2023 WL 187568, at *3 (E.D. Pa. Jan. 13, 2023). There is "no exhaustive or dispositive list of factors" to be used by a court in determining whether to appoint a receiver. *Deutsche Bank Tr. Co. Americas v. Greenfield of Perkiomen Valley, LLC*, No. 23-1439, 2024 WL 38040, at *2 (E.D. Pa. Jan. 3, 2024), citing *Wells Fargo*

---

[1] Both Lehigh's Complaint and Amended Complaint in Case no. 24-2709 against Saucon are identical to the Complaint and Amended Complaint in case no. 24-2627 against Whitehall. However, in 24-2709, Lehigh's Complaint and Amended Complaint reference a demand letter being sent to Saucon and state that a copy of the letter is attached to the pleadings as Exhibit J. However, there is no Exhibit J attached to the Complaint or Amended Complaint in 24-2709. Although the document is missing, it can be assumed that it is identical to Exhibit J attached to the Amended Complaint in 24-2627, as every other document in these two cases is identical. However, for the purposes of the instant motion, whether an October 5, 2023, demand letter was sent to Saucon or not is immaterial.

*Bank, N.A. v. CCC Atl., LLC*, 905 F.Supp.2d 604, 614 (D.N.J. 2012). District courts in this Circuit commonly use the factors set forth in *Wells Fargo Bank v. CCC Atlantic*, but no one factor is dispositive, nor is the list of factors exhaustive. *CCC Atlantic*, 905 F.Supp.2d at 614. In the mortgage foreclosure context, the Court will consider whether "the property is inadequate security for the loan; the mortgage contract contains a clause granting the mortgagee the right to a receiver; the continued default of the mortgagor; and the misuse of project funds by the mortgagor." *CCC Atl.*, 905 F.Supp.2d at 614. (quotation omitted) (cleaned up). In addition, when the receiver will manage the property as well as collect rent, the Court will assess "the danger of waste; ... the defendant's fraudulent conduct; imminent danger that property will be lost, concealed, injured, diminished in value, or squandered; the inadequacy of available legal remedies; the probability that harm to plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; and the plaintiff's probable success in the action and the possibility of irreparable injury to his interests in the property." *Id.* at 614–15 (quotation omitted); see also *Deutsche Bank Trust Co. v. Greenfield*, 2004 WL 38040, at *2. In addition, "[n]o hearing is necessary where the facts support the appointment of a receiver." *MSCI 2006-IQ11 Logan Blvd. Ltd. Partnership v. Greater Lewistown Shopping Plaza, L.P.*, No. 16-2090, 2017 WL 485958, *1 (M.D. Pa. Feb. 6, 2017), citing *United States v. Berk & Berk*, 767 F.Supp. 593, 597 (D.N.J. 1991). Upon reviewing the above factors and applying them to the facts of this matter, I find that no evidentiary hearing is necessary, and the balance of factors weighs in favor of appointing a receiver.

### A.    Contractual Provision

First and foremost, the strongest factor weighing in favor of appointing a receiver is the fact that the Mortgages for both Properties contemplate such a remedy. Specifically, they state:

"[T]he holder of this mortgage, in any action to foreclose, shall be entitled to the appointment of a Receiver of the rents and profits of the mortgaged premises as a matter of right and without notice, with power to collect the rents, issues, and profits of said mortgaged premises." (Docket No. 7, Ex. B, p. 6 (24-2627); Docket No. 9, Ex. B, p. 20 (24-2709)). It continues: "The Mortgagor for itself and any subsequent owner hereby waives any and all defenses to the application for a Receiver and hereby specifically consents to such appointment …" *Id.*

Provisions granting a right to the appointment of a receiver weigh heavily in favor of appointing one, though they do not eliminate the Court's discretion. *Wilmington Tr., N.A. as Tr. of $29,615,000 Philadelphia Auth. for Indus. Dev. Senior Hous. Revenue Bonds v. Pavilion Apartments PENN LLC*, No. 22-3985, 2023 WL 187568, at *3 (E.D. Pa. Jan. 13, 2023); see also *Wilmington Tr., N.A., as Tr. for the Benefit of the Registered Holders of Wells Fargo Commercial Mortgage Trust 2019-C50, Commercial Mortgage Pass-Through Certificates, Series 2019-C50 v. M.P. Mgmt. LLC*, No. 21-5498, 2021 WL 4786117, at *7 (D.N.J. Oct. 14, 2021) (provisions which merely permit mortgagee to apply for appointment are "relevant but not dispositive," whereas a "full, self-executing consent to appointment of a receiver for any and all purposes upon default" is given "considerable weight"). "The importance of these contractual provisions" in the Court's decision to appoint a receiver "cannot be underestimated because they set apart this commercial foreclosure case from the traditional scenario in which a receiver is sought at equity and no such contractual provisions exist." *CCC Atl.*, 905 F. Supp.2d at 615. "[W]here the parties have agreed *ex ante* that, in the event of a default, the lender has the right to all rent payments and to the appointment of a receiver.... appointment of a receiver is not such a drastic remedy." *Id*. at 616.

00023

There is no dispute that neither Whitehall nor Saucon have made a mortgage payment in years; accordingly, both Defendants are in default. These defaults triggered Lehigh's right to move for appointment of a receiver as set forth in the Mortgages. Both Defendants oppose the appointment of a receiver, despite agreeing to one in the event of default in their respective Mortgages. In the instant matter, "[i]t is evident . . . that by the plain language of the mortgage contract[s], the parties have agreed to a receivership of the subject property." *MSCI 2006-IQ11 Logan Boulevard Ltd. P'ship v. Greater Lewistown Shopping Plaza, L.P.*, No. 16-2090, 2017 WL 485958, at *4 (M.D. Pa. Feb. 6, 2017). The "terms of a mortgage agreement are binding on the parties," *Metropolitan Life Ins. Co. v. Liberty Center Venture*, 650 A.2d 887, 891 (Pa. Super. Ct. 1994), and the parties in the instant matter are no different. Based upon the clear language of the Mortgages, as well as Defendants' unquestionable defaults, I conclude that this factor weighs very strongly in favor of appointment of a receiver. However, this factor is not dispositive, and I must analyze the remaining factors in determining whether to appoint a receiver.[2]

## B.    Likelihood of Success

The continuing failure of both Whitehall and Saucon to make monthly mortgage payments shows that Lehigh is likely to succeed on its mortgage foreclosure claims. In Pennsylvania, "[i]n an action regarding a note secured by a mortgage, the lender 'presents a prima facie case by showing the execution and delivery of the note and its nonpayment.'" *Wilmington Trust v. Pavilion Apartments PENN LLC*, 2023 WL 187568, *6, citing *Wells Fargo Bank, N.A. v. Chun Chin Yung*, 317 F. Supp.3d 879, 885 (E.D. Pa. 2018) (citations omitted). The Notes as to both Whitehall and Saucon were attached to the respective complaints, and neither

---

[2] Unsurprisingly, Defendants very much try to downplay the importance of the contractual provisions that they consented to that permit the appointment of a receiver. However, they do admit, as they must, that contractual consent to the appointment of a receiver is a factor that I may consider. (Docket No. 10-1, p. 4 (24-2627), Docket No. 19-3, pp. 4-5 (24-2709)).

Appendix 28

00024

Defendant has suggested that their required mortgage payments were made in a timely fashion. Lehigh alleges that Whitehall and Saucon have not made a monthly mortgage payment since February of 2021. Because of Defendants' defaults, Lehigh accelerated both Loans and demanded the immediate payment of all amounts due in full; Defendants continued to refuse to make a single monthly payment. Because of Defendants' long-term, ongoing failures to pay the monthly amounts due on the Loans, secured by the Mortgages, Lehigh is likely to succeed in its mortgage foreclosure action.

Defendants argue that this factor does not support appointment of a receiver, because Lehigh has not yet obtained a judgment in the foreclosure action. This argument is unpersuasive, because the factor examines Lehigh's **likelihood** of success on the merits, not whether it **has** succeeded on the merits. Accordingly, I find that this factor weighs in favor of appointing a receiver.

### C.    Defendants' Financial Health/Status

As discussed above, Defendants have failed to make payments when due for over four years. A borrower's inability to make payments when due reveals its poor financial condition, suggesting a need to preserve the property. *Deutsche Bank Tr. Co. Americas v. Greenfield of Perkiomen Valley, LLC,* 2024 WL 38040, at *3; *Federal Nat'l Mortgage Ass'n v. Maple Creek Gardens*, *LLC*, 09-14703, 2010 WL 374033, *3 (E.D. Mich. Jan. 25, 2010); see e.g., *CCC Atlantic*, 905 F. Supp. 2d at 616.

Further, Lehigh produced 2021 audited financial statements for both Whitehall and Saucon. Both statements note that "At (sic) December 31, 2021, the Trust was in default with its mortgage note. In addition, [the operating entities for Defendants] continue to report operating losses. These conditions raise substantial doubt about the Trust's ability to continue as a going

00025

concern within one year after the issuance date of the financial statements…" Whitehall and Saucon 2021 Audited Financial Statements, p. 8.[3]

Lehigh further notes that both Properties, until recently, were subject to significant tax and municipal liens which created the risk that the Properties could be lost at tax sale. Also, neither Whitehall nor Saucon have provided financial reporting to Lehigh in numerous years, despite said disclosure being required by the Loan Documents. These updated financial statements would allow Lehigh to determine the condition of its collateral; without them, Lehigh has no way to determine the financial status of Defendants and the safety of its collateral.

Further, neither Whitehall nor Saucon make any argument regarding what either entity will do to resolve their defaults, nor do they offer any proof of their financial stability. Further, neither entity makes any representation that they will begin making payments any time soon.

Defendants argue that their financial positions cannot be considered until discovery is completed into these matters. However, that argument ignores the reality that evidence of Defendants' financial positions from 2021 is available in the form of the audited financial statements that show significant losses. Further, Defendants continued failure to make monthly payments on the Mortgages is further evidence of their financial positions. If Defendants were concerned about discovery into their current financial status, they could have produced an updated financial statement in response to Lehigh's demand in July of 2024. But they did not. Accordingly, this factor demonstrates both entities' poor financial health and weighs in favor of appointing a receiver.

---

[3] Due to their confidential nature, Lehigh emailed Defendants' 2021 financial statements directly to the Court for my review. Lehigh also emailed a redacted insurance policy received from Whitehall, a Statement of Multi-Family Mortgage Account sent by HUD to Whitehall, a Certificate of Compliance of Whitehall demonstrating how many occupants the property may have, and the Payment History for Whitehall received from HUD. I have reviewed all these documents prior to authoring this opinion.

### D.    Diminution of Value

There is no question that Lehigh has grounds to be concerned about a possible diminution in the value of its collateral. Despite Lehigh's request prior to filing the instant suits, (Docket No. 8, Ex. J (24-2627) and Docket No. 12, Ex. J (24-2709)), Whitehall and Saucon continue to refuse to provide updated financial statements to Lehigh. Accordingly, Lehigh has no information as to the status of any leases that the entities have entered, how much rent is being collected, if the taxes are paid and up to date, if there are unpaid bills, if the Properties are insured or if there are liens entered against the Properties. Any one of these issues could potentially diminish the value of the Properties, thereby diminishing the value of Lehigh's collateral. Therefore, this factor also weighs in favor of appointing a receiver.

### E.    Inadequate Legal Remedy

As stated by Judge Savage in *Deutsche Bank Trust Co. v. Greenfield*, where there is no danger of the property being devalued and legal remedies are adequate, there is no need for the appointment of a receiver. 2024 WL 38040, *5, citing *Mintzer v. Arthur L. Wright & Co.*, 263 F.2d 823, 826 (3d Cir. 1959). However, when normal remedies are frustrated, appointment of a receiver may be more appropriate. *Id.* In this matter, Lehigh has shown that the defaults of Whitehall and Saucon may be decreasing the value of Lehigh's collateral. Further, neither Whitehall nor Saucon will provide Lehigh with recent financial statements or any proof that the taxes on the Properties have been paid or that the Properties are properly insured. There is a high risk that the value of the collateral will decrease. Foreclosure will not serve to prevent the damage that may be done to the Properties while the case is running its course through the legal system. Accordingly, the legal remedy of foreclosure is inadequate, and this factor weighs in favor of appointing a receiver.

00027

### F.    Balance of the Interests

In situations where appointing a receiver could cause more harm than good, the balance of the interests should be found to weigh against the appointment of a receiver. In the instant matter, Lehigh argues that a receiver is necessary to manage the Properties. A receiver would assure that the Properties will have bills paid on time and be properly insured, and that the physical structures located on the Properties will be maintained. Clearly, that is a benefit to both Lehigh and Defendants. However, Defendants both argue that appointing a receiver would do more harm than good because it "unquestionably interferes" with their right to control their property. (Docket No. 10, pp. 15-16 (24-2627) and Docket No. 19-3, p. 15 (24-2709), citing *Mintzer*, 263 F.2d at 825.) Although the benefits of appointing a receiver are obviously great, Defendants are correct that such an appointment would impair their ability to control the Properties. Accordingly, I find that this factor is neutral, as the potential harm is approximately equal to the possible benefits.

### G.    Other Factors

There are other factors that courts may consider, none of which are relevant to the instant matter. As stated previously, the list of factors that courts can consider is not exhaustive, nor is it dispositive. Using my discretion, as I am permitted to do in this matter, I find there is no evidence of misuse of project funds by the mortgagor, inadequacy of security for the loan, nor fraudulent conduct on behalf of Defendants.

### H.    Identity of Receiver

Lehigh requests the appointment of Ryan Stumphauzer of Stumphauzer Kolaya Nadler & Sloman, PLLC as the receiver in this matter. Although I find that the appointment of a receiver is indeed necessary, I would prefer to appoint a more local individual as the receiver, as Mr.

Stumphauzer is located in Florida. Accordingly, I appoint Duane Morris LLP through Erin Duffy, Esq. as the Receiver for both Whitehall and Saucon, and she will proceed pursuant to the terms set forth in the attached Order.

III.  **<u>CONCLUSION</u>**

For all the reasons set forth above, I find that the appointment of a receiver in these matters is warranted. An appropriate order follows.

00029

## TRANSCRIPT PURCHASE ORDER
### for Third Circuit Court of Appeals

| | | |
|---|---|---|
| **District Court** Eastern District of Pennsylvania | **Court of Appeals Docket No.** | 25-1899 |
| | **District Court Docket No.** | 24-2709 |

Short Case Title  Lehigh Valley 1, LLC v. Whitehall Fiduciary LLC, et al.

Date Notice of Appeal Filed by Clerk of District Court  05/14/2025

**Part I.**  (To be completed by party responsible for ordering transcript)

A.  <u>Check one</u> of the following and serve ALL COPIES:       NOTE:  A SEPARATE FORM IS TO BE TYPED FOR EACH COURT REPORTER IN THIS CASE.

**TRANSCRIPT:**

_____  None          _____  Unnecessary for appeal purposes.  02/18/2025 Oral Arguments

__X__  Already on file in the District Court Clerk's office.

_____  This is to order a transcript of the proceedings heard on the date listed below from  N. Spicer  (Court Reporter)
(Specify on lines below exact date of proceedings to be transcribed). If requesting only partial transcript of the proceedings, specify exactly what portion or what witness testimony is desired.

_____

_____

If proceeding to be transcribed was a trial, also check any appropriate box below for special requests; otherwise, this material will NOT be included in the trial transcripts.

_____  Voir dire                    _____  Open Statement of Plaintiff          _____  Opening Statement of Defendant
_____  Closing Argument of Plaintiff     _____  Closing Argument of Defendant
_____  Jury Instructions              _____  Sentencing Hearings

FAILURE TO SPECIFY IN ADEQUATE DETAIL THOSE PROCEEDINGS TO BE TRANSCRIBED OR FAILURE TO MAKE PROMPT SATISFACTORY FINANCIAL ARRANGEMENTS FOR TRANSCRIPT ARE GROUNDS FOR DISMISSAL OF THE APPEAL OR IMPOSITION OF SANCTIONS

B.  This is to certify that satisfactory financial arrangements have been completed with the court reporter for payment of the cost of the transcript. The method of payment will be:

_____  CJA Form submitted to District Court Judge          _____  Motion for Transcript has been submitted to District Court
_____  CJA Form submitted to Court of Appeals             _____  Private Funds

| | | |
|---|---|---|
| Signature  /S Raymond G. Lahoud | Date | June 9, 2025 |
| Print Name  Raymond G. Lahoud, Esquire | Counsel for | Appellants |
| Address  600 Hamilton St., Ste. 300, Allentown, PA 18101 | Telephone | (484) 544-0022 |

**Part II.**  COURT REPORTER ACKNOWLEDGEMENT (To be completed by the Court Reporter and forwarded to the Court of Appeals on the same day transcript order is received.)

| Date transcript order received | Estimated completion date; if not within 30 days of date financial arrangements made, motion for extension to be made to Court of Appeals | Estimated number of pages |
|---|---|---|
| | | |

_____  Arrangements for payment were made on  _____

_____  Arrangements for payment have not been made pursuant to FRAP 10(b)

| Date | Name of Court Report | Telephone |
|---|---|---|

**Part III.**  NOTIFICATION THAT TRANSCRIPT HAS BEEN FILED IN THE DISTRICT COURT (To be completed by court reporter on date of filing transcript in District. Court  Notification must be forwarded to the Court of Appeals on the same date.)

Actual Number of Pages  _____          Actual Number of Volumes  _____

| Date | Signature of Court Reporter |
|---|---|

00030

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
                                *
Lehigh Valley 1 LLC             * Docket # 24-cv-2709
                                *
        Plaintiff,              *
                                * United States Courthouse
        vs.                     * Courtroom 16A
                                * Philadelphia, PA
Saucon Trust, U/T/A             * February 18, 2025
Dated October 1, 2007           *
        Defendant.              *
* * * * * * * * * * * * * * * * * * * * * * * * * * * *
```

TRANSCRIPT OF ORAL ARGUMENTS HEARING
BEFORE THE HONORABLE MARY KAY COSTELLO
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

For The Plaintiff:          Philip D. Berger, Esquire
                            Berger Law Group PC
                            919 Conestoga Road Building 3
                            Suite #114
                            Rosemont, PA 19010

For The Defendant:          Rebecca Price, Esquire
                            Benjamin P. Sheppard, Esquire
                            Norris McLaughlin, PA
                            515 W. Hamilton St. Suite 502
                            Allentown, PA 18101

                            Raymond G. Lahoud, Esquire
                            Lahoud Law Group, P.A. Tower 6
                            600 Hamilton Street
                            Allentown, PA  18101

Audio Operator:             N. Spicer

Transcribing Firm:          Principle Court Reporting
                            Services, Inc., 544 Grove Ave.,
                            Suite 1, Johnstown, PA  15902
                            Telephone: 814-269-4666

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

1  only from Hud to Windstream, but also then from Windstream to
2  Lehigh Valley 1 and just for the purpose of today's argument i
3  will call it LV1.
4          THE COURT: Okay.
5          ATTORNEY PRICE: Not intentionally I just kept doing
6  it on Thursday so I am letting you know that's what I mean. I -
7  - I do want to point out that in the response to the motion to
8  dismiss on the argument of standing LV1 has only objected to
9  whether or not my client is permitted to argue standing. They
10 haven't actually responded to the underlying issues that we've
11 raised with respect to the improprieties in the assignments. So
12 i want to talk first about the assignment from Windstream, who
13 it was the original purchaser of the note and mortgage from Hud
14 to LV1 who is the current holder of the note and mortgage and
15 the plaintiff in this proceeding. Now in order for a party to
16 be authorized to purchase a loan from Hud they have to enter
17 into a certain sort of an agreement with Hud that that sets
18 forth the rules and the qualifications, the obligations of any
19 purchaser of the loan. One of the rules in that document
20 provides that in the event that a purchaser of a Hud loan
21 subsequently assigns it to another entity that that assignment
22 has to contain explicitly written language with respect to an
23 assignment of obligations and liabilities over to Hud. The
24 assignment that went from Windstream to LV1 does not contain
25 that language. The Hud rules also provide that if it does not

1  contain that language the assignment is void, and so our

2  argument to the court is that LV1 does not have the authority

3  to be before Your Honor or to be in this proceeding to enforce

4  loan documents because the assignment that granted it the loan

5  -- the -- the loan documents is not valid. It is void under

6  Hud's own rules, and the documents were attached to the

7  pleadings, Your Honor has them. It clearly does not contain

8  language and I do quote the language in the motion to dismiss

9  paragraph two, and so absent authority to enforce the documents

10 we can't be here. The case has to be dismissed and the

11 plaintiff will tell you that they're -- you know the only way

12 in which borrower under loan documents has standing to object

13 to standing or to object to an assignment is if there's a risk

14 of double payment, but that's just not true. Courts have held

15 that a borrower has standing when there is a risk of serious

16 injury, double payment certainly is one of those potential

17 injuries, but in this case we're objecting we're -- we're

18 suggesting that there's additional injury. We risk losing our

19 property to an entity that doesn't even have the ability to

20 enforce these documents, and there is at least one case which I

21 have cited that says that a borrower can always object when

22 regarding the validity of an assignment, and if an assignment

23 is avoid, which obviously goes to a party's ability to enforce

24 those documents, that is certainly something that the borrower

25 can raise before the Court, and so we believe and we have

1 properly plead, and I don't believe that the plaintiff has even

2 responded to this argument that the that assignment is void,

3 and because that assignment is void they can't be here today as

4 the plaintiff. So then that goes down to the assignment from

5 Hud to Windstream, and again Your Honor, we'll get into this

6 with the motion for the receiver, but there are substantial

7 defenses that my client has raised in the other case, and will

8 raise in this case with respect to the way that Hud treated

9 this -- these loan documents and the way that Hud treated

10 specifically my client. We believe that Hud manufactured a

11 default during the covid pandemic crisis, and unjustifiably

12 denied my client to access to certain government regulations

13 that were intended to protect it from this type of default. We

14 do not believe that this was went properly to the sale. We do

15 not believe that Windstream that Hud properly vetted Windstream

16 as a qualified bidder, for instance Windstream was obligated at

17 the time of bidding to prove that it either was a qualified

18 loan servicer or had retained a loan servicer, neither of which

19 it did, and we -- I'm so sorry I lost my place, but there was

20 there give me one second.

21          THE COURT: Sure take your time.

22          ATTORNEY PRICE: I'm sorry and Windstream also had to

23 provide a plan, a relocation plan because I'm not sure if the

24 Court is aware, but the properties are currently operating as

25 nursing facilities for elderly patients in the Lehigh Valley

1  including a component for memory care facility, and so because

2  of the sensitive nature of the business that's operated there,

3  the qualified bidder was obligated to have a relocation plan in

4  place in the event of foreclosure. This was, one this isn't a

5  foreclosure proceeding obviously, but this was always intended

6  as a sort of loan to own scenario for the -- the plaintiff. The

7  plaintiff purchases with the intention of moving quickly to

8  obtain possession of the properties. They could sell it and get

9  a return on their investment, in fact, they bought this loan in

10  September of '23, and they had filed confessions of judgment

11  within six weeks of receiving them, additionally -- you know we

12  have not received as we sit here today any type of valid

13  documentation from either Hud or the plaintiff that outlines

14  the amounts that are due, that outlines how certain payments

15  were -- I am sorry certain funds that were in Hud's possession

16  were applied to the loan balance. My client has been given

17  absolutely no information regarding this, and so there are

18  valid objections that are pending that that the Court should

19  consider when -- when deciding whether to proceed on this, and

20  then that's -- that's with respect to the standing issue. The

21  secondary issue is under the Colorado River doctrine, which is

22  basically it gives the Court it's not -- it's not an

23  obligation. The Court's not mandated, but it gives the Court

24  the option of pushing this back to the State Court where it

25  rightfully belongs -- you know first there's a strong federal

1  policy that State Court foreclosure matters should be heard in

2  State Court. This is a -- this is a local matter this is a

3  local business, and it should be heard and -- and it's in

4  Northampton County. It should be heard in Northampton County

5  which the plaintiff knows because that's where the plaintiff

6  started this action. They filed it in Northampton County and

7  it's only because they received an adverse decision on their

8  first go that they decided okay we don't want to be here so

9  we're going to create this -- this assignment scenario so we

10 can create diversity jurisdiction so that we can move over to

11 Federal Court where hopefully we'll get a friendlier -- a

12 friendlier judiciary, but I mean that that is classic forum

13 shopping that's exactly what this Court should be not allowing

14 a plaintiff to do. This is a local State Court foreclosure

15 action that should be heard in State Court. Now, I know that

16 there's going to be some argument about the fact that

17 confessions of judgment are fundamentally different from

18 mortgage foreclosure because confessions of judgment are -- you

19 know based upon a default on a note, whereas mortgage

20 foreclosure is enforcing rights under a mortgage, but the

21 default is the same; right. It's no matter what the mortgage is

22 tied to the note and you can't file a foreclosure action

23 without alleging that there's been a default under the note,

24 and the default that was alleged in the confession of judgment

25 action is identical to the default that's been alleged in this

1  proceeding, and that it was already raised in Court. Now the

2  Court in Northampton County didn't get to the underlying

3  meritorious defenses just as this Court hasn't gotten to those

4  because it found that there were irregularities in the loan

5  documents themselves that that would not allow the -- the

6  extraordinary remedy of -- you know essentially an immediate

7  entry of judgment without some consideration of -- you know my

8  clients due process rights, but that court did exercise

9  jurisdiction over the loan documents and it exercised

10 jurisdiction over the default that's been alleged here, and so

11 again the judgment was stricken, but the plaintiff chose that

12 jurisdiction first. The plaintiff went there first and the

13 instruments that were being used in that proceeding are

14 identical to the instruments -- instruments that are being used

15 in this proceeding -- you know this one of the other issues to

16 consider under Colorado River is inconvenient forum, and a

17 forum selection clause. I should note that the loan documents

18 do not contain a forum selection clause so it doesn't say that

19 it has to be in any particular Court, which weighs in favor of

20 abstention, and in terms of inconvenient forum I mean here we

21 are I -- I got a lovely drive down the Schuylkill this morning

22 -- you know to come to Philadelphia to argue this motion when

23 really -- you know I'm -- I'm a local Lehigh Valley attorney. I

24 represent local Lehigh Valley businesses and this is a local

25 Lehigh Valley business. I mean there's no reason why this the

1   paying the same debt twice. This debtor hasn't even paid the

2   same debt once, and the debtor is not escrowing taxes. The

3   debtor is not escrowing payments for the -- for the mortgage

4   payments, they're just not making payments. Debtor has no

5   standing in -- in the and I cite two cases. The debtor has no

6   standing to challenge a mortgage assignment when the debtor is

7   neither a party or a third party beneficiary of that

8   assignment, and in this case the debtor is not. The mortgagee

9   holds the original note being -- being Lehigh Valley 1. The

10  mortgagee is entitled to enforce it and it's immaterial under

11  the Patosni (phonetic) case that we cite, it states that it's

12  immaterial -- immaterial to any claimed defect by the debtor

13  about an assignment of mortgage or an assignment of loan

14  documents. The Court specifically found that that debtor cannot

15  make any kind of claim of any kind of defect which is what this

16  -- what this debtor is trying to do because it's not because --

17  because it totally lacks standing. For those reasons the

18  defendant's motion to dismiss should be denied.

19          THE COURT: Thank you.

20          ATTORNEY PRICE: May I briefly respond, Your Honor?

21          THE COURT: Yes.

22          ATTORNEY PRICE: Your Honor, first I just want to

23  address the argument that my client doesn't risk injury. My

24  client owns the building there is a business operating from the

25  building, and my client risks losing the building, risks losing

1   the building without having had any of its defenses heard at

2   this stage of litigation, which -- which as I explained to the

3   Court will go to the default itself, and whether that default

4   was a valid default or manufactured by wrongful conduct of a

5   third party that will be brought into this case if and when we

6   get to that stage. So to argue that there's no risk of injury

7   that that's absolutely disingenuous. My client stands to suffer

8   the most here, whereas, the plaintiff would maybe suffer some

9   type of monetary damages while the case was pending while my

10   client was provided the due process rights that they're

11   constitutionally protected or -- or given to them, but the risk

12   here is that the property goes away that the building goes away

13   and that people, humans in my community get displaced because

14   the plaintiff doesn't want the Court to hear our defenses. The

15   plaintiff doesn't want the Court to waste its time having to

16   actually prove that there is a legitimate default here, and so

17   there -- there is risk of injury and there is case law, which I

18   have cited to in my pleadings, that says that when there is a

19   legitimate risk of substantial injury that my client has

20   standing to object to the assignment, and I want to talk about

21   that too because again lots of argument on whether my clients

22   allowed to object to an assignment, not one response to my

23   claim that the assignment from Windstream to LV1 violated Hud's

24   loan agreement sale policies, which required that assignment to

25   contain explicit written language that the assignment does not

```
1   contain. If LV1 does not have a proper assignment, it does not
2   properly own the loan documents and it has no standing to
3   enforce those loan documents before this Court. I think this is
4   a very serious issue. This issue was not properly raised with
5   Judge Schmehl by myself, which is my fault in the other case,
6   but it's before Your Honor and I think that if you look at the
7   plain language of the -- the rules that had to be followed that
8   specifically say that this language has to be explicitly
9   written in the assignment or the assignment is void, and then
10  you compare it to the assignment that's been attached to the
11  documents the language is not there, the assignment is void,
12  and LV1 does not have sanding to pursue this litigation -- you
13  know, and then finally Your Honor, I just -- I just want to
14  clarify something because -- you know I know there's this issue
15  of I called it a nursing care facility. It's -- it's a 201 bed
16  facility, 50 of which is designated for secure memory care,
17  which is a significant medical provision of medical services to
18  vulnerable members of our community, and then finally -- you
19  know again there's all this talk about we're going to keep --
20  we're going to keep this -- this business going. I mean it's
21  clear that they -- they are looking to completely bypass my
22  clients' due process rights, deny my client the ability to
23  assert is defenses. They've already stepped in and they're
24  taking over this business, but again we're talking about a
25  group of investors from all over the country who bought this
```

1  loan, and then went to great pains to explain to this Court
2  just how little contact it has with the state of Pennsylvania
3  and with this district, no contacts whatsoever, but they're
4  going to now come in and run a nursing facility in northeast
5  Pennsylvania. I don't buy it. They're looking to get in there
6  right away so that they can take over operations, shut it down
7  and sell it so they can get a return on their investment, and
8  they're looking to do it before my client has any opportunity
9  to assert -- to assert its defenses and to pursue its claims
10  against the third party. So we'll get into that obviously with
11  the receiver motion, but I'm asking this court to dismiss this
12  based upon the lack of standing. Thank you.
13          ATTORNEY BERGER: Your Honor, just really quickly just
14  --.
15          THE COURT: Of course.
16          ATTORNEY BERGER: Real quick review. Defendant's
17  counsel again claims that her risk is the risk of losing the
18  building. There'd be no risk of losing the building if the
19  mortgage was paid and the taxes were paid, that's not a -- that
20  is not under the Patosni issue about standing that's not a risk
21  that would grant them standing to make that argument. The
22  argument -- defense does not have standing to make that
23  standing argument to start with. The again we have this entity
24  this plaintiff was put together in such a way so that they can
25  operate it. We have the ability if we get to that point, and --

1          THE COURT: Collect correct -- collect the rents.

2          ATTORNEY BERGER: Profits and --.

3          THE COURT: I agree that that's what it says, but

4    you're talking about something much broader, you're talking

5    about bringing somebody in to run the assistant living facility

6    which is run by a tenant.

7          ATTOTNEY BERGER: There it's being run by a -- it's

8    being run by -- it's being -- not the tenant Your Honor so

9    again we're kind of mixing and matching.

10         THE COURT: Yeah.

11         ATTORNEY BERGER: The tenant are the people that are

12   in the -- that are the patients that are in the facility. They

13   are the tenants. This is an operating company it's not a --

14   it's not -- it's not a -- it's a separate -- it's a separate

15   company which we believe has is part and parcel of the other

16   part, but I'll take defendant's counsel representation, but the

17   tenant is not -- is a separate -- is not a separate -- the

18   tenant is not the -- the operating company. The tenant is the

19   one that's in the facility and the patients that are in the

20   facility and the rent that would be received by the receiver

21   from the tenants that are in that facility.

22         THE COURT: Is this the Sun Valley Manner Incorporated

23   is there a lease between that that entity and the -- the

24   mortgager here?

25         ATTORNEY PRICE: Yes, Your Honor, so what you have

1 described is exactly the scenario this is a building that is

2 owned by the trust and they have a tenant. It's not an

3 operating company it's not running the business of the real

4 property owner. It is a totally separate entity that is a

5 tenant. It could be a school it could be in this case a nursing

6 facility. I mean it could be any number of businesses. They are

7 independent tenant subject to a lease that that are operating

8 this business.

9        THE COURT: Right so that's I -- so I'm troubled with

10 the idea of you putting somebody in to run the assisted living

11 facility, which is a tenant of the mortgager versus say

12 whatever rents that the mortgager receives -- you know you

13 understand what I'm saying like it's one thing -- I think that

14 are -- are you reaching too far and -- and casting the net a

15 little too wide here because to -- to be able to receive the --

16 the profits and the rents that's from the -- the mortgager;

17 right? Which would be theoretically would be whatever they're

18 getting paid from this Saucon Valley Manner Incorporated?

19        ATTORNEY BERGER: So the way that this typically works

20 and again the way that Judge Savage found that it worked is

21 that the -- all the rents would go to the mortgage company -- I

22 am sorry would go to the owner. The owner would then be paying

23 the -- the operating company. If that's going -- you know and

24 that's why he put the receiver in to handle all that from the -

25 - from there because he found that the owner was improperly

1  diverting rents to the operating company instead of paying the
2  mortgage.
3          THE COURT: But we don't have that here. We -- we
4  don't know that that's happening.
5          ATTORNEY BERGER: Well, we know that the -- we know
6  that the monies are -- we know that the -- the owner like these
7  Judge Savage's thing is not paying -- is not paying the
8  mortgage that's exactly the same scenario that was found in
9  that case, and that that -- and that the judge found that by
10 turning over all the rents to this operating company this that
11 it was a -- it was a mismanagement of the entity and that a
12 receiver needed to come in.
13         THE COURT: But we -- I'm saying as a factual matter
14 you haven't established that. You -- I think you've established
15 that there have been no payments up to this point right for --
16 for a period -- a long period of time. So I mean I'm not
17 disputing that at all. I hear what you're saying on that. I
18 don't know -- we don't really know why that is.
19         ATTORNEY BERGER: So Your Honor I can make this easy.
20         THE COURT: Sure, I like that.
21         ATTORNEY BERGER: Okay I -- so -- you know just kind
22 of thinking through where Your Honor is going with this,
23 appoint the receiver to collect the rents from the patients
24 that's what -- you know and that -- and that way the receiver
25 can see what's happening there, and again the receiver can then

1  quickly as possible to get a decision. I thank you both, both
2  sides you provided excellent advocacy, help me to understand
3  and see what the issues were. You're both very well prepared
4  and I appreciate that very much, and we'll get the orders out
5  on the other two issues the motions that we discussed today,
6  but this one I need to think about a little bit. All right.
7          ATTORNEY PRICE: Thank you, Your Honor.
8          ATTORNEY BERGER: Thank you, Your Honor.
9          THE COURT: All right.
10         THE CLERK: All rise.
11         THE COURT: Thank you.
12
13     (Court adjourned)
14
15                    C E R T I F I C A T E
16
17     "I, Dale Curtis Rose, certify that the foregoing is a
18  correct transcript from the official electronic sound recording
19  of the proceedings in the above-entitled matter."
20
21
22  _____          2-26-25
23          Signature                          Date

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **LEHIGH VALLEY 1, LLC, successor by** : | |
| **assignment to WINDSTREAM CAPITAL** : | |
| **LLC, successor by assignment to the** : | **CIVIL ACTION** |
| **UNITED STATES SECRETARY OF** : | |
| **HOUSING AND URBAN DEVELOPMENT,** : | |
| **successor by assignment to M&T REALTY** : | |
| **CAPITAL CORPORATION** : | **NO. 24-2627** |
| : | |
| **v.** : | |
| : | |
| **WHITEHALL FIDUCIARY LLC, as** : | |
| **TRUSTEE OF WHITEHALL TRUST U/T/A** : | |
| **DATED AUGUST 1, 2027** : | |

| | |
|---|---|
| **LEHIGH VALLEY 1, LLC, successor by** : | |
| **assignment to WINDSTREAM CAPITAL** : | |
| **LLC, successor by assignment to the** : | **CIVIL ACTION** |
| **UNITED STATES SECRETARY OF** : | |
| **HOUSING AND URBAN DEVELOPMENT,** : | |
| **successor by assignment to M&T REALTY** : | **NO. 24-2709** |
| **CAPITAL CORPORATION** : | |
| : | |
| **v.** : | |
| : | |
| **SAUCON TRUST, U/T/A DATED** : | |
| **OCTOBER 1, 2007** : | |

## ORDER

**AND NOW**, this 9th day of June 2025, upon consideration of Defendants' Motions to Stay

Appointment of Receiver Pending Resolution of Appeals (Docket No. 68 in case number 24-2627

and Docket No. 61 in case number 24-2709) and Plaintiff's oppositions thereto, it is hereby

**ORDERED** that Defendants' Motions are **DENIED**.[1]

---

[1] On May 2, 2025, I entered an Order appointing a receiver to manage the two Properties at issue in these
consolidated mortgage foreclosure matters. On that same day, Defendants filed an appeal of that Order. A
receivership appointment is not automatically stayed pending appeal (see Fed. R. Civ. P. 62(c)), and thereafter, on
May 27, 2025, Defendants filed a motion in which they seek to stay the appointment of the receiver pending
resolution of their appeals.

In examining whether to grant a stay, Courts in the Third Circuit have identified the following four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 658 (3d Cir. 1991).

In support of the first factor and their claim that they have a strong likelihood of success on the merits, Defendants set forth only one argument. They assert that because the appointment of a receiver "is an example of judicial discretion where courts can weigh factors differently," (Docket No. 68, p. 12) it is "entirely plausible that the Third Circuit could adopt a different framework, apply a broader or narrower set of considerations, or arrive at a different conclusion even under the same set of facts." (*Id.*, p. 13.) They claim to have shown a "reasonable likelihood of success on the merits because the applicable legal standard invites differing conclusions among reasonable minds." (*Id.*) However, it is important to note that the Third Circuit "review[s] the decision to appoint a receiver for abuse of discretion." *KeyBank Nat'l Ass'n v. Fleetway Leasing Co.*, 781 F. App'x 119, 121 (3d Cir. 2019), citing *Maxwell v. Enter. Wall Paper Mfg. Co.*, 131 F.2d 400, 403 (3d Cir. 1942). A court abuses its discretion if its "decision rests upon a clearly erroneous finding of fact, an errant conclusion of law[,] or an improper application of law to fact." *EEOC v. City of Long Branch*, 866 F.3d 93, 97-98 (3d Cir. 2017) (citation omitted).

In reviewing Defendants' argument regarding their likelihood of success on the merits, it is telling that they do not identify any erroneous factual finding that I made in my opinion appointing a receiver, nor do they identify any error of law that was made. In addition, they offer no evidence to support any improper application of law to fact. Defendants' motion presents nothing that would lead to the conclusion that the Third Circuit will find that I abused my discretion by appointing a receiver in this matter. Accordingly, I find that Defendants cannot show a likelihood of success on the merits.

As to irreparable harm, Defendants claim that absent a stay, there will be "encroachment into the operations of tenant businesses." (Docket No. 68, p. 13.) In support of this argument, Defendants claim the receivership order is ambiguous and confusing for their "Tenant Operators," as the order does not contain an express limitation preventing the Receiver from interfering with the businesses of tenants. (*Id.*, p. 14.) I find this contention to be unpersuasive for several reasons. First, the Receivership Order clearly establishes the powers of the Receiver and contains no ambiguity. Second, the Receiver does in fact have some authority over the tenant operators, as the Receivership order clearly provides the Receiver with the authority to "retain a reputable management company" to operate the Properties. (Docket No. 58, Para III(6)(g)). Third, even if the order did result in some confusion, Defendants have not provided any evidence of actual harm. In addition, to the extent Defendants are arguing that their loss of control over the Properties is irreparable harm, I find that argument to also be unpersuasive. Defendants themselves have for years been in the best position to prevent this alleged harm by paying their mortgages, which they have continuously failed to do. Their own failure to meet their contractual obligations cannot serve as proof of their harm.

Next, I must examine whether a stay would substantially harm Plaintiff. As I discussed in detail in the opinion granting the receivership, Defendants' actions have caused a risk of damage to the Properties and therefore, a risk of damage to Plaintiff's collateral. The Receiver was appointed in large part due to this very risk of substantial harm to Plaintiff. Obviously, a stay of this matter during which the Receiver is prevented from performing its necessary duties could potentially cause significant harm to Plaintiff.

Lastly, I find that the public interests favor denying a stay in this matter. These Properties house healthcare facilities that provide medical and memory care services to elderly patients. Defendants have failed to make mortgage payments in over four years, and the Properties allegedly have deficient insurance and unpaid taxes. The Properties require responsible property management for the sake of these senior citizens, and Defendants' inability to do so could result in harm to this vulnerable population, including possible displacement from their residences. Accordingly, the appointment of a receiver is necessary to preserve the status quo and protect the residents of these healthcare facilities, which is clearly in the public interest.

BY THE COURT:

/s/ Catherine Henry

**CATHERINE HENRY, J.**

---

As all four of the factors necessary for Defendants to obtain a stay pending appeal are resolved in favor of Plaintiff, Defendants' Motions to Stay will be denied. Defendants must permit the Receiver to fulfill its duties as set forth in the May 2, 2025, Order while Defendants' appeal proceeds.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LEHIGH VALLEY 1 LLC, successor by assignment to WINDSTREAM CAPITAL LLC, successor by assignment to the UNITED STATES SECRETARY OF HOUSING AND URBAN DEVELOPMENT, successor by assignment to M&T REALTY CAPITAL CORPORATION** | CIVIL ACTION |
| Plaintiff, | NO.  5:24-cv-02627-JLS |
| v. | |
| **WHITEHALL FIDUCIARY LLC, AS TRUSTEE OF WHITEHALL TRUST U/T/A DATED AUGUST 1, 2007** | |
| Defendant. | |

## PLAINTIFF'S MOTION FOR APPOINTMENT OF RECEIVER OF THE RENTS AND PROFITS OF MORTGAGED PREMISES

Pursuant to Rule 66 of the Federal Rules of Civil Procedure, Plaintiff Lehigh Valley 1 LLC, successor by assignment to Windstream Capital LLC, successor by assignment to the United States Secretary of Housing and Urban Development, successor by assignment to M&T Realty Capital Corporation's ("LV1 LLC"), by its undersigned counsel, respectfully moves for the appointment of a receiver of the rents and profits of the mortgage premises in this commercial mortgage foreclosure action for the reasons set forth in Plaintiff's supporting memorandum of law.

Respectfully submitted,

BERGER LAW GROUP, P.C.

By: _____

PHILLIP D. BERGER, ESQUIRE
919 Conestoga Road, Building 3, Suite 114
Bryn Mawr, PA 19010
(610) 668-0774
Berger@BergerLawPC.com
Counsel for Plaintiff

Dated: 7/31/24

00049

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **LEHIGH VALLEY 1 LLC, successor by assignment to WINDSTREAM CAPITAL LLC, successor by assignment to the UNITED STATES SECRETARY OF HOUSING AND URBAN DEVELOPMENT, successor by assignment to M&T REALTY CAPITAL CORPORATION** | CIVIL ACTION |
| Plaintiff, | NO.  5:24-cv-02627-JLS |
| v. | |
| **WHITEHALL FIDUCIARY LLC, AS TRUSTEE OF WHITEHALL TRUST U/T/A DATED AUGUST 1, 2007** | |
| Defendant. | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION FOR APPOINTMENT OF A RECEIVER**

Plaintiff Lehigh Valley 1 LLC, successor by assignment to Windstream Capital LLC, successor by assignment to the United States Secretary of Housing and Urban Development, successor by assignment to M&T Realty Capital Corporation ("LV1 LLC"), respectfully submits this Memorandum of Law in support of its Motion for Appointment of a Receiver ("Motion") in this commercial mortgage foreclosure action.

## I.    INTRODUCTION

This is an action to foreclose a commercial mortgage executed by Defendant Whitehall Fiduciary LLC, as Trustee of Whitehall Trust U/T/A Dated August 1, 2007 ("Whitehall", "Defendant" or "Borrower") to secure repayment of a loan in the principal amount of $15,788,700.00.   The collateral comprises the property located at 1177 6th Street, Whitehall, PA 18052 (the "Property").   Plaintiff LV1 LLC holds the Mortgage on the Property, is suing to foreclose the mortgage, and herein seeks the appointment of an independent property receiver to

00050

preserve and protect Plaintiff's collateral. The appointment of a receiver is required due to Defendant's defaults on its obligations and specifically authorized pursuant to the express receivership provisions set forth in the mortgage. The appointment of a receiver is necessary to protect Plaintiff's collateral from potential loss due to tax and municipal liens, to ensure that the Property has proper fire and liability insurance and that Plaintiff is a named insured, to pay the monthly amounts due on the Note and Mortgage, to remedy Defendant's failure to provide financial reporting, to stem operating losses, and to prevent the comingling of revenue with properties not subject to Plaintiff's lien.

## II.    RELEVANT BACKGROUND

### a.  The Loan Transaction

On or about January 26, 2012, M&T Realty Capital Corporation ("M&T") provided a loan in the principal sum of $15,788,700.00 (the "Loan") to Defendant Whitehall in accordance with the terms and conditions of that certain mortgage note dated January 26, 2012 (the "Note"). A true and correct copy of the original Note is attached hereto and made a part hereof as Exhibit "A". The Note was secured by, *inter alia,* a mortgage in the principal sum of $15,788,700.00 dated January 26, 2012 (the "Mortgage") on the real property located at 1177 6th Street, Whitehall, PA 18052 (the "Property"). A true and correct copy of the Mortgage is attached hereto and made a part hereof as Exhibit "B".

Defendant Whitehall is the real owner of the land and improvements subject to the Mortgage. A true and correct copy of the legal description of the Property is attached hereto and made a part hereof as Exhibit "C". The Mortgage was recorded in the Lehigh County Recorder of Deeds office on January 26, 2012 at Instrument No. 2012002759, *et seq.*

00051

### b.  The Assignments of the Loan

The Note was assigned by M&T to the United States Secretary of Housing and Urban Development ("HUD") pursuant to that certain Allonge to Mortgage Note dated November 8, 2022, effective as of November 16, 2022 (the "HUD Allonge").  A true and correct copy of the HUD Allonge is attached hereto and made a part hereof as Exhibit "D".  The Note was then assigned by HUD to Plaintiff Windstream Capital pursuant to that certain Note Endorsement dated September 20, 2023 (the "Windstream Allonge").  A true and correct copy of the Windstream Allonge is attached hereto and made a part hereof as Exhibit "E".  The Note was then assigned by Windstream Capital LLC to Plaintiff LV1 LLC pursuant to that certain Allonge to Mortgage Note dated May 15, 2024 (the "LV1 Allonge"). A true and correct copy of the LV1 Allonge is attached hereto and made a part hereof as Exhibit "F".

The Mortgage was assigned by M&T to HUD pursuant to that certain Assignment of Mortgage dated November 8, 2022, effective as of November 16, 2022 (the "HUD Assignment"), which HUD Assignment was recorded by the Lehigh County Recorder of Deeds office on November 16, 2022 at Instrument No. 2022038363, *et seq*.  A true and correct copy of the HUD Assignment is attached hereto and made a part hereof as Exhibit "G".  The Mortgage was then assigned by HUD to Plaintiff Windstream Capital pursuant to that certain Assignment of Mortgage dated September 20, 2023 (the "Windstream Assignment"), which Windstream Assignment was recorded by the Lehigh County Recorder of Deeds office on October 30, 2023 at Instrument No. 2023025934, *et seq*.  A true and correct copy of the Windstream Assignment is attached hereto and made a part hereof as Exhibit "H".  The Mortgage was then assigned by Windstream Capital to Plaintiff LV1 LLC  pursuant to that certain Assignment of Mortgage dated May 15, 2024 (the "LV1 Assignment"), which Windstream Assignment was recorded by the Lehigh County Recorder

00052

of Deeds office on June 10, 2024 at Instrument No. 2024012857, *et seq.* A true and correct copy

of the LV1 Assignment is attached hereto and made a part hereof as Exhibit "I".

Plaintiff LV1 LLC is the current holder of the Note and Mortgage by virtue of the above

cited allonges and assignments.

### c. Defendant's Default of Its Obligations

The Note and Mortgage required Defendant Whitehall to repay to M&T (now Plaintiff

LV1 LLC by assignment) the principal balance and interest due in accordance with the terms set

forth therein. Specifically, the Note required the Defendant to make the following payments:

> Interest only payable on the first day of February, 2012. Commencing on the first day of
> March, 2012, monthly installments of interest and principal shall be paid in the sum of
> Sixty-Nine Thousand Eight Hundred Forty-Four and 95/100 Dollars ($69,844.95) each,
> such payments to continue monthly thereafter on the first day of each succeeding month
> until the entire indebtedness has been paid in full. In any event, the balance of the principal
> (if any) remaining unpaid, plus accrued interest, shall be due and payable on February 1,
> 2042. The installments of interest and principal shall be applied first to interest at the rate
> of three and thirty-eight hundredths per centum (3.38%) per annum upon the principal sum
> or so much thereof as shall from time to time remain unpaid and the balance thereof shall
> be applied on account of principal.

[Note, Exh. "A" at p. 1].

Further, the Note states that: "If default be made in the payment of any installment under

this Note, and if such default is not made good prior to the due date of the next such installment,

the entire principal sum and accrued interest shall at once become due and payable without notice,

at the option of the holder of this Note." [*id.,* at p. 2].

Additionally, the Mortgage provides that:

> It is also expressly agreed that if the Mortgagor should fail to pay any installment of
> principal and interest or payment due pursuant to covenant one above within thirty (30)
> days after the due date of such installment or payment, or if the Mortgagor should fail to
> perform any of the terms, conditions or covenants of the mortgage, the note, the building
> loan agreement, or the regulatory agreement, such failure shall constitute a default and in
> every such case, the whole principal debt shall, at the option of the Mortgagee, become due
> and payable immediately, and it shall and may be lawful for said Mortgagee forthwith to

bring an Action of Mortgage Foreclosure, to sue out of a Writ of Scire Facias, or to institute other foreclosure proceedings upon this mortgage, and to proceed to judgment and execution for recovery of said principal debt, all interest thereon, all sums advanced for payment of any ground rent, taxes, water rents, charges, claims or insurance premiums as aforesaid, and all other recoverable sums, together with an attorney's commission for collection, without further stay of execution or other process, any law, usage or custom to the contrary notwithstanding.

[Mortgage, Exh. "B", p. 7].

Additionally, the Mortgage expressly authorizes the appointment of a receiver during a

mortgage foreclosure action:

It is further agreed that the holder of this mortgage, **in any action to foreclose, shall be entitled to the appointment of a Receiver of the rents and profits of the mortgaged premises as a matter of right and without notice, with power to collect the rents, issues, and profits of said mortgaged premises,** due and becoming due during the pendency of such foreclosure suit, such rents and profits being hereby expressly assigned and pledged as additional security for the payment of the indebtedness secured by this mortgage, without regard to the value of the mortgaged premises or the solvency of any person or persons liable for the payment of the mortgage indebtedness. **The Mortgagor for itself and any subsequent owner hereby waives any and all defenses to the application for a Receiver and hereby specifically consents to such appointment** without notice, but nothing herein contained is to be construed to deprive the holder of the mortgage of any other right, remedy, or privilege it may now have under the law to have a Receiver appointed. The provision for the appointment of a Receiver of the rents and profits, and the assignment of such rents and profits, is made an express condition upon which the loan hereby secured is made. The rights and remedies herein provided for shall be deemed to be cumulative and in addition to, and not in limitation of, those provided by law. (emphasis added).

[Mortgage, Exh. "B" at page 6].

Defendant Whitehall is in default of the Note and the Mortgage due to its failure to make

the required payments of principal and interest as and when due thereon.  In fact, Defendant has

failed and refused to make any payments on account of the Loan since at least February 2021.

Accordingly, Plaintiff LV1 LLC brings this underlying action to foreclose the Mortgage,

and herein seeks the appointment of a receiver as specifically authorized by the Mortgage.

**d. Demand For Financial Records, Insurance And Turnover Of Rents**

On July 3, 2024, Plaintiff LV1 LLC made a demand on Defendant Whitehall for the turnover of documents and information relating, *inter alia*, to the Property, the collection of rents, existing leases, the financial condition of the Defendant, and evidence of insurance. Plaintiff LV1 LLC also demanded the turnover of rents. A true and correct copy of the July 3, 2024 demand letter is attached hereto and made a part hereof as Exhibit "J". As of the date of this Petition, there has been no response from the Defendant, no relevant financial documents have been provided by the Defendant, none of the requested insurance information has been provided by the Defendant, and no rent funds (or any funds) have been received from the Defendant.

## III.    ARGUMENT

### A.    Federal Law Governs the Appointment of a Receiver for the Property.

#### 1.    The Legal Standard For Appointment of a Receiver

Rule 66 of the Federal Rules of Civil Procedure governs the appointment of a receiver in diversity jurisdiction cases. Thus, the federal courts have applied federal common law in determining whether the appointment of a receiver in a foreclosure action is appropriate. *See Wells Fargo Bank, N.A. v. CCC Atlantic, LLC*, 905 F. Supp. 2d 604, 610 (D.N.J. 2012), *citing Maxwell vv. Enterprise Wall Paper Mfg. Co.*, 131 F.2d 400, 402 (3d Cir. 1942) ("In diversity suits, federal law governs the issue of whether a receiver should be appointed."); *Canada Life Assur. Co. v. LaPeter*, 563 F.3d 837, 843 (9th Cir. 2009) (same); *National Partnership Inv. Corp. v. National Housing Dev. Corp.*, 153 F.3d 1289, 1291 (11th Cir. 1998) (same).

The Court may also consider Pennsylvania law in deciding whether to appoint a receiver. *See, e.g., Canada Life*, 563 F.3d at 845 (holding that "the district court has broad discretion in

appointing a receiver"); 12 Charles Alan Wright et al., Federal Practice and Procedure § 2983 (2d. ed. 2013) (observing that "federal courts are likely to look to state law for guidance" in the absence of substantial federal precedent under Rule 66).

Moreover, the Mortgage expressly provides that "the holder of this mortgage, in any action to foreclose, <u>shall be entitled to the appointment of a Receiver of the rents and profits of the</u> <u>mortgaged premises as a matter of right and without notice</u>, with power to collect the rents, issues, and profits of said mortgaged premises, due and becoming due during the pendency of such foreclosure suit." (emphasis added) Courts have recognized the validity of such provisions and have granted the appointment of a receiver based on similar language set forth in a mortgage. *See, e.g., Metro. Life Ins. Co. v. Liberty Ctr. Venture*, 650 A.2d 887, 889 (Pa. Super. Ct. 1994) (affirming appointment of receiver where mortgage contained provision entitling mortgagee to appoint receiver in foreclosure action).

"The importance of these contractual provisions cannot be underestimated because they set apart this commercial foreclosure case from the traditional scenario in which a receiver is sought at equity and no such contractual provisions exist." *Wells Fargo Bank, N.A. v. CCC Atlantic, LLC*, 905 F. Supp. 2d 604, 610 (D.N.J. 2012); accord *MSCI 2006-IQ11 Logan Blvd. Ltd. Partnership v. Greater Lewistown Shopping Plaza, L.P.*, No. 4:16-CV-2090, 2017 U.S. Dist. LEXIS 16457, at *4 (M.D. Pa. Feb. 6, 2017) (appointing receiver over borrower's opposition where "[i]t is evident . . . that by the plain language of the mortgage contract, the parties have agreed to a receivership of the subject property").

Pennsylvania law is equally clear that a receiver may properly be appointed where, as here, "the terms of the mortgage clearly provide for the appointment of a receiver in the event of a default." *Metropolitan Life Ins. Co. v. Liberty Ctr. Venture*, 650 A.2d 887, 891 (Pa. Super. Ct.

1994). While the contractual provision may not be binding on the Court, this contractual provision is accorded considerable weight to support the appointment of a receiver to operate and manage the Property. *Deutsche Bank Trust Co. Ams. v. Greenfield of Perkiomen Valley, LLC*, 2024 U.S. Dist. LEXIS 746 *; 2024 WL 38040 (E.D. Pa. Jan. 3, 2024) (*citing CCC Atlantic* 905 F. Supp. 2d at 615.

Furthermore, "[n]o hearing is necessary where the facts support the appointment of a receiver." *MSCI 2006-IQ11 Logan Blvd. Ltd. Partnership v. Greater Lewistown Shopping Plaza, L.P.*, No.  4:16-CV-2090, 2017 U.S. Dist. LEXIS 16457, at *2 (M.D. Pa. Feb. 6, 2017), *citing United States v. Berk & Berk*, 767 F. Supp. 593, 597 (D.N.J. 1991)).  As demonstrated below, the facts clearly support the appointment of a receiver in this case.

## 2. The Exigencies of this Case Require the Appointment of a Receiver

It has oft been observed in the context of federal mortgage foreclosure actions that "there is 'no precise formula for determining when a receiver may be appointed.'" *Canada Life*, 563 F.3d at 844, *quoting Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc*., 999 F.2d 314, 316 (8th Cir. 1993). Rather, "federal courts consider a variety of factors in making this determination." *Canada Life*, 563 F.3d at 844 (listing seven factors) (citations omitted); *see also Berk & Berk*, 767 F. Supp. at 597 (listing additional and/or alternative factors).

For present purposes, as a number of Pennsylvania federal judges have observed, "the proper analysis is that employed [in *CCC Atlantic*] by the late Honorable Joseph E. Irenas, writing for the District of New Jersey." *MSCI Greater Lewistown*, 2017 U.S. Dist. LEXIS 16457, at *2; *accord Wilmington Trust, N.A. v. 1800 16th St., LLC*, 2020 U.S. Dist. LEXIS 23860, at *5-6 (E.D. Pa. Feb. 11, 2020) (McHugh, J.). Judge Irenas recognized a number of potentially relevant considerations, including, inter alia, the danger of waste, the loan documents' provision for the

appointment of a receiver upon default, the continued default of the Borrower, Borrower's doubtful financial standing, and the borrower's diversion of income to pay fees to its affiliated management company. *CCC Atlantic*, 905 F. Supp. 2d at 614-616.

Moreover, Judge Timothy J. Savage of the Eastern District of Pennsylvania recently appointed a receiver in a similar case also involving a senior living facility in Pennsylvania. Judge Savage reviewed additional relevant considerations when he determined to appoint the receiver in the 2024 case *Deutsche Bank Trust Co. Ams. v. Greenfield of Perkiomen Valley, LLC*, 2024 U.S. Dist. LEXIS 746 *; 2024 WL 38040 (E.D. Pa. Jan. 3, 2024), including the existence of a contractual right to appoint a receiver; the likelihood of success; the financial health/status of Defendant; the potential diminution of value to the property; the inadequacy of a legal remedy; and the balance of interests of the parties.

Applying the factors cited by Judge Irenas and Judge Savage to the present case establishes the need to appoint a receiver in this matter and for this Property. Specifically:

### 3. **Danger of Waste to the Property**.

Judge Irenas identified "the danger of waste" first and foremost among the factors warranting the appointment of a receiver to manage a property pending foreclosure. *CCC Atlantic*, 905 F. Supp.2d at 614, *quoting Canada Life*, 563 F.3d at 845. Pennsylvania law likewise provides for the appointment of a receiver for real properties in cases of potential waste or mismanagement. *See, e.g., Lehigh National Bank v. Piscanio*, 379 A.2d 870, 872 (Pa. 1977) (citations omitted) (the appointment of a receiver is warranted where it is "necessary to save the property from injury or threatened loss or dissipation").

Here, the notes to the Defendant's 2021 audited financials include an Additional Note regarding the entity's going concern, with the main reason for a qualified opinion by the

accountant: "At December 31, 2021, the Trust was in default with its mortgage note. In addition, Whitehall Valley Manor (the Operating Entity) continues to report operating losses. These conditions raise substantial doubt about the Trust's ability to continue as a going concern within one year after the issuance date of the financial statements. The Trust is working with its lender to restructure the terms of the note. However, there can be no assurance that the Trust will be successful in achieving its objectives. The accompanying financial statements have been prepared assuming that the Trust will continue as a going concern; however, the above condition raises substantial doubt about the Trust's ability to do so. The financial statements do not include any adjustment to reflect the possible future effects on the recoverability and classification of assets or the amounts and classifications of liabilities that may result should the Trust be unable to continue as a going concern."

Moreover, the Defendant's 2021 audited financial statement indicates a significant net loss, and a blatant admission that "As a result of declining cash flows, the Trust was unable to pay for a financial statement audit earlier in the year".[1] Defendant's admissions concerning its financial condition, which did not even allow Defendant to pay for a financial statement audit, together with the other preceding points, is compelling evidence that since 2021 the Defendant is unable to fully meet obligations, such as its tax and mortgage payments.

Defendant's "inability" to make payments when due reveals its poor financial condition, suggesting a need to preserve the property. *Deutsche Bank Trust Co. Ams. v. Greenfield of Perkiomen Valley, LLC*, 2024 U.S. Dist. LEXIS 746 *; 2024 WL 38040 (E.D. Pa. Jan. 3, 2024) citing *Fed. Nat'l Mortg. Ass'n v. Maple Creek Gardens*, LLC, 09-14703, 2010 U.S. Dist. LEXIS

---

1 Plaintiff LV1 LLC will produce a true and correct copy of the Defendant's 2021 audited financial statements at a hearing of this matter.

5342, 2010 WL 374033, *3 (E.D. Mich. Jan 26, 2010); *see also, CCC Atlantic*, 905 F. Supp. 2d at 616.

Defendant's financial instability risks adversely impacting the staffing and maintenance of the Property, could jeopardize the well-being of its residents, and could cause the condition of Lender's collateral to deteriorate and not be properly maintained.

### 4. **The Loan Documents Specifically Grant Lender the Right to Have a Receiver Appointed**.

As previously noted, the Mortgage expressly provides that "the holder of this mortgage, in any action to foreclose, <u>shall be entitled to the appointment of a Receiver of the rents and profits of the mortgaged premises as a matter of right and without notice, with power to collect the rents, issues, and profits of said mortgaged premises, due and becoming due during the pendency of such foreclosure suit</u>." (emphasis added). Courts have recognized the validity of such provisions and have expressly granted the appointment of a receiver based on similar language in a mortgage. *See, e.g., Metro. Life Ins. Co. v. Liberty Ctr. Venture*, 650 A.2d 887, 889 (Pa. Super. Ct. 1994) (affirming appointment of receiver where mortgage contained provision entitling mortgagee to appointment of receiver in foreclosure action).

As Judge Irenas held, "[t]he importance of these contractual provisions cannot be underestimated because they set apart this commercial foreclosure case from the traditional scenario in which a receiver is sought at equity and no such contractual provisions exist." *CCC Atlantic*, 905 F. Supp.2d at 615 (emphasis added); accord *Greater Lewistown*, 2017 WL 485958, at *4 (appointing receiver over borrower's opposition where "[i]t is evident . . . that by the plain language of the mortgage contract, the parties have agreed to a receivership of the subject property").

Pennsylvania law is equally clear that a receiver may properly be appointed where, as here,

"the terms of the mortgage clearly provide for the appointment of a receiver in the event of a default." *Metropolitan Life Ins. Co. v. Liberty Ctr. Venture*, 650 A.2d 887, 891 (Pa. Super. Ct. 1994); *accord City Nat'l Bank v. 728 Market Street*, No. 4490, 2012 Phila. Ct. Com. Pl. LEXIS 73, at *13 (Phila. Ct. Com. Pl. Feb. 21, 2012) (appointing receiver where loan documents contained receivership provision because "[b]ased on the loan agreement, Defendant's default under the loan entitles [Plaintiff] to the appointment of a receiver"). Accordingly, if not totally dispositive, this factor and contractually agreed upon provision strongly supports the appointment of a receiver to operate and to manage the Property, to pay its bills, to properly maintain the Property, to act in the best interest of the residents, and to protect the collateral.

### 5. The Defendant's Continuing Defaults/Plaintiff's Likelihood of Success.

Defendant has failed and refused to make monthly payments on account of the Loan, which default started in February 2021 (3 ½ years ago!). In fact, even the Defendant's reserve account was fully depleted by July 2023, when $813,690.94 was applied to pay the delinquent March, April and May 2021 monthly payments, and to pay delinquent real estate taxes. The Defendant has not replenished the reserve account, nor made any further monthly payment on the Mortgage. Accordingly, the Loan was $1,727,249.73 past due as of July 2023, which was when the Loan was sold by HUD.

Due to Defendant's defaults, this Loan was accelerated and demand was made for the immediate payment of all amounts due and owing in full. Notwithstanding the demand, Defendant has continued to fail and refuse to make a single monthly contractual payment of $69,844.95 due since July 2023, when the Loan was sold (whereby another $907,984.35 is due and unpaid from August 1, 2023 through August 1, 2024). In fact, Defendant owes over $2.6 million in past due monthly payments. Due to Defendant's prior failure to pay, and Defendant's continued failure to

00061

pay the monthly amounts due on the loan, which is secured by the Mortgage, Plaintiff LV1 LLC is likely to succeed in the mortgage foreclosure action. *Deutsche Bank Trust Co. Ams. v. Greenfield of Perkiomen Valley, LLC*, 2024 U.S. Dist. LEXIS 746 *; 2024 WL 38040 (E.D. Pa. Jan. 3, 2024) citing *Wilmington Trust, N.A. v. Pavilion Apts. Penn LLC*, 2023 U.S. Dist. LEXIS 7137, 2023 WL 187568 *5-6 (E.D. Pa. Jan 13, 2023).

### 6. <u>**Defendant's Financial Standing and Financial Condition Is Doubtful**</u>.

It is equally clear that Defendant and its principal are of dubious financial standing, having not made a voluntary payment on the Loan for over 3 years. Defendant's continuing failure to make monthly payments is a sufficient basis for the Court to appoint a receiver for the Property. *See e.g., Wells Fargo Bank, N.A. v. CCC Atlantic, LLC*, 905 F. Supp. 2d 604, 616 (D.N.J. 2012) ("*CCC Atlantic's* . . . continued failure to cure the default demonstrates its doubtful financial standing."); *Federal Nat'l Mortgage Ass'n v. Maple Creek Gardens, LLC*, 09-14703, 2010 U.S. Dist. LEXIS 5342 (E.D. Mich. Jan. 25, 2010) (appointing a receiver because borrower's "failures to surrender to [lender] the monthly rents and to pay its monthly installments under the Note demonstrate that [borrower] itself is in a poor financial condition.").

Additionally, this Property was until very recently subject to significant tax and municipal liens that threatened its loss to tax sale. The amount of 2023 Delinquent School Taxes was $117,349.78, and only after numerous demands were made, was the past due tax recently paid. Note, however, that no voluntary mortgage payment has been made by the Defendant since July 2021, and no monthly mortgage payment at all since August 2023.

Further, Defendant Whitehall has failed to provide current financial reporting. This reporting is critical to the Plaintiff's ability to determine the condition of its collateral, and is a

requirement of the Loan Documents.  Specifically, the Security Agreement [page 4, para. 2(f)]

requires that the Defendant produce the following to Plaintiff:

> The Debtor will, upon request of Secured Party, deliver to Secured Party copies of all
> reports, financial statements and other information which the Debtor is obligated to provide
> to HUD in connection with the Project and/or Collateral not later than the earlier of (i) the
> delivery of such reports, financial statements and other information to HUD or (ii) ten (10)
> days after Secured Party makes such request.

A true and correct copy of the Security Agreement is attached hereto, and made a part hereof as

Exhibit "K".

Additionally, as part of the Loan, Defendant executed that certain document titled

Regulatory Agreement dated January 19, 2012 (the "Regulatory Agreement"), by which Defendant

made numerous representations and agreements regarding its duties and obligations related to the

Loan.  Pursuant to the Regulatory Agreement[2], Defendant agreed to the following financial

reporting requirements:

### H. **Financial Statements; Reporting Requirements**...

(a) Within ninety (90) days following the end of each fiscal year, the lessee shall furnish
to the Commissioner a complete annual financial report based upon an examination of
the books and records of the operations of the property and of the project prepared in
accordance with the requirements of the Commissioner, prepared and certified by a
responsible officer of the lessee under the provisions of 18 U.S.C. Section 1001, 1010,
and 1012. If lessee (or any direct or indirect parent of lessee) is required to provide an
audited financial statement to any lender, lessee shall simultaneously provide copies of
such audited financial statements to the Commissioner and mortgagee.

(b) Lessee shall submit to the Commissioner and mortgagee, on a monthly or quarterly
basis (as specified by the Commissioner) such financial reports (including, but not
limited to, financial statements, accounts receivable aging reports and occupancy
reports) in the formats and at such times as may be required by the Commissioner.

---

2 While the Regulatory Agreement was rescinded, the Defendant had repeatedly failed and refused to provide the
financial documents and reports required by the Regulatory Agreement.  The Security Agreement, and its
requirements for the turnover of financial statements and reports remains in full force and effect.

(c) At request of the Commissioner, the lessee shall give specific answers to questions upon which information is desired from time to time relative to income, assets, liabilities, contracts, operation, and condition of the project.

Despite these express reporting requirements, for the past three (3) years, Defendant Whitehall has failed to provide financial reporting regarding the Property and Defendant's business, further endangering Plaintiff's security interest in the Property. Further, there has been no response from the Defendant regarding its financial condition with the turnover of its current financial statements, despite demand for said turnover made by Plaintiff. *See,* Exh. "J".

The 2021 audited financial statements (the last financial statements provided by the Defendant) reflect a significant net loss. Additionally, on Page 10 of the Notes to Financial Statements, it states "As a result of declining cash flows, the Defendant was unable to pay for a financial statement audit earlier in the year". This note indicates that the Defendant was unable to fully meet its mortgage obligations during the 2021 period.

Plaintiff has no information as to the current financial status of Defendant Whitehall other than the dire 2021 financial picture as outlined above. Defendant's failure and refusal to provide the audited financial information and documents are a clear breach of Defendant's obligations under the Regulatory Agreement. Moreover, no financial statements, required per section 2(f) of the Security Agreement has been provided by Defendant Whitehall.

As Defendant's prior failure to pay the real estate taxes and other municipal obligations are a breach of the Mortgage, Defendant's failure to provide evidence of insurance is a breach of the Mortgage, Defendant's failure to pay the required monthly payments are a breach of the Note, Defendant's failure to turnover rents received is a breach of the Assignment of Leases Rider to the Mortgage, and as Defendant's failure and refusal to provide Defendant's audited financial documents and its financial information are a breach of the Loan Documents, the appointment of

a receiver is necessary. A receiver, as specifically authorized in the Mortgage executed by the Defendant, must be appointed in order to collect the rents, issues, and profits of the Property, to ensure that the tax and municipal obligations are satisfied to prevent the loss of the Property to tax sale, to maintain the condition of the Property, and to meet the resident's needs. The receiver will also be tasked with making monthly payments due on the Note, to ensure the Property is properly insured with Plaintiff named as a loss payee, and to provide the necessary and required audited financial reporting to allow Plaintiff LV1 LLC to assess the condition of its collateral in a timely matter.

### 7. **Diminution of Value**

As recently found by Judge Savage in *Deutsche Bank Trust Co. Ams. v. Greenfield of Perkiomen Valley, LLC*, 2024 U.S. Dist. LEXIS 746 *; 2024 WL 38040 (E.D. Pa. Jan. 3, 2024), the diminution of value of a collateral property is a basis for the appointment of a receiver.

In this matter, Defendant's current inability to either collect all rents or to manage the Property and facility in a way so that the bills of the Property are paid also threatens to diminish the value of the Property.

The 2021 audited financial statements, the most recent provided by the Defendant, reveal that Whitehall Valley Manor (the tenant) entered into a lease with Whitehall (the landlord). However, there was over $1.2 million of rents that were not received or collected. Moreover, the lease was also set to expire in August 2023, and Plaintiff has no information as to whether a new lease has been executed, nor the terms of said new lease (if one even exists).

If Defendant is not collecting all of the rents, or operating the Property profitably (over the past 3 1/2 years), then it will not be able to pay for the significant expenses required to operate this type of facility. Unpaid bills will lead to the Defendant being unable to provide all

00065

required services to its residents, which will lead to a lower quality of care for residents, fewer residents, and a loss of goodwill. Moreover, these unpaid bills will cause judgments and additional liens to be entered against the Property. All of these issues will diminish the value of Plaintiff's Collateral, the Property, and demonstrate the real possibility of harm to Plaintiff's interest. *See, Deutsche Bank Trust Co. Ams. v. Greenfield of Perkiomen Valley, LLC*, 2024 U.S. Dist. LEXIS 746 *; 2024 WL 38040 (E.D. Pa. Jan. 3, 2024).

Accordingly, a receiver must be appointed to manage the Property, to collect the rents, to pay the payroll, to pay the lease (if any), to pay the mortgage, to pay the taxes, to pay all vendor bills, and to maintain the physical buildings and property, in order to prevent the diminishment of value to the Property.

### 8. **Inadequate Legal Remedy**

As also found by Judge Savage in *Deutsche Bank Trust Co. Ams. v. Greenfield of Perkiomen Valley, LLC*, 2024 U.S. Dist. LEXIS 746 *; 2024 WL 38040 (E.D. Pa. Jan. 3, 2024) (receiver appointed in senior living facility), where normal remedies are frustrated, and/or where the property is being devalued, a court may be more likely to appoint a receiver. *Id.* citing *Mintzer v. Arthur L. Wright & Co.*, 263 F.2d 823, 826 (3d Cir. 1959) (citing 45 Am. Jur. §§ 26, 30); *see also Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 317 (8th Cir. 1993).

In this matter, Plaintiff LV1 LLC has shown above that the Defendant's management, and its continuing defaults, will decrease the value of the Property. If Defendant continues managing the Property, while not paying its bills, not providing any information of its maintenance of the Property, not providing current financials to evidence its financial condition, and not providing evidence of insurance, it is likely that the value of the collateral will continue to decrease. Foreclosure will not prevent the damage that will be done to Plaintiff's collateral asset in the

interim. Thus, a more drastic and immediate remedy than foreclosure is necessary. *See, Deutsche Bank Trust Co. Ams. v. Greenfield of Perkiomen Valley, LLC*, 2024 U.S. Dist. LEXIS 746 *; 2024 WL 38040 (E.D. Pa. Jan. 3, 2024).

### 9. **Balance of Interests**

Finally, the Court should appoint a receiver in cases where more harm will be caused by the denial of the Motion than by the Court's appointing of a receiver. *Deutsche Bank Trust Co. Ams. v. Greenfield of Perkiomen Valley, LLC*, 2024 U.S. Dist. LEXIS 746 *; 2024 WL 38040 (E.D. Pa. Jan. 3, 2024) (receiver appointed in senior living facility).

In this matter, no harm will result to the Defendant in this matter from the appointment of a receiver who will properly manage the Property, collect rents, pay bills, ensure proper insurance is in place, and maintain the physical structure. Further, appointment of a receiver would be in the best interest of the residents at Defendant's assisted living facility. A receiver will ensure that there is sufficient cash flow to pay all expenses and to prevent the possibilities of services being cut off from providers due to non-payment by the Defendant, and that the facility is properly insured. Additionally, the appointment of a receiver will ultimately benefit the Defendant, as the receiver will be able to prevent the diminution of the value of the collateral, which should lead to a reduced (if any) deficiency amount ultimately due from the Defendant.

If Defendant continues to operate the facility, the collateral may be harmed, and the resident's welfare may be endangered. Accordingly, the harm that would result from denial of Plaintiff's Motion would be greater than the harm to the Defendant. *See, Deutsche Bank Trust Co. Ams. v. Greenfield of Perkiomen Valley, LLC*, 2024 U.S. Dist. LEXIS 746 *; 2024 WL 38040 (E.D. Pa. Jan. 3, 2024) (receiver appointed in senior living facility).

00067

## IV.   <u>PROPOSED RECEIVER</u>

Plaintiff LV1 LLC respectfully proposes that the Court appoint Ryan Stumphauzer of Stumphauzer Kolaya Nadler & Sloman, PLLC as the receiver for the Property.  Mr. Stumphauzer is an attorney with many years of experience, has worked on numerous cases involving skilled nursing facilities and assisted living facilities, and has been appointed as a receiver in multiple cases involving assisted living facilities such as the Property herein.  Further, in the high profile federal matter involving Par Funding, a Philadelphia lender engaged in a Ponzi scheme, Mr. Stumphauzer was the court-appointed receiver.  See *Securities and Exchange Commission v. Complete Business Solutions Group, Inc. d/b/a PAR Funding, et al.*, No. 20-CIV-81205-RAR (S.D. Fla July 24, 2020).  A true and correct copy of Ryan Stumphauzer's biography is attached hereto and made a part hereof as Exhibit "L".

## V.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff LV1 LLC respectfully requests that this Court grant its Motion and enter an Order appointing a Receiver for the Property to collect the rents, issues, and profits, to satisfy the tax and municipal obligations to prevent the potential loss of Plaintiff LV1 LLC's collateral, and to provide a full accounting of the Property's finances.

Respectfully submitted,
BERGER LAW GROUP, P.C.

Date: 7/31/24            By: _____

PHILLIP D. BERGER, ESQUIRE
919 Conestoga Road, Building 3, Suite 114
Bryn Mawr, PA 19010
(610) 668-0774
Berger@BergerLawPC.com
Counsel for Plaintiff

00068

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **LEHIGH VALLEY 1 LLC, successor by assignment to WINDSTREAM CAPITAL LLC, successor by assignment to the UNITED STATES SECRETARY OF HOUSING AND URBAN DEVELOPMENT, successor by assignment to M&T REALTY CAPITAL CORPORATION** | CIVIL ACTION<br><br>NO.  5:24-cv-02627-JLS |
| Plaintiff, | |
| v. | |
| **WHITEHALL FIDUCIARY LLC, AS TRUSTEE OF WHITEHALL TRUST U/T/A DATED AUGUST 1, 2007** | |
| Defendant. | |

<u>**ORDER APPOINTING RECEIVER OF THE RENTS AND PROFITS OF THE MORTGAGED PREMISES**</u>

NOW, this _____ day of _____, 2024, upon consideration of the Plaintiffs

Motion for Appointment of Receiver, the defendant's response, and the plaintiffs reply, and after

oral argument, it is ORDERED that the motion is GRANTED.

IT IS FURTHER ORDERED as follows:

**I.    APPOINTMENT OF THE RECEIVER**

1.    Ryan Stumphauzer of Stumphauzer Kolaya Nadler & Sloman, PLLC, is appointed

as Receiver with the usual powers and directions for the benefit of the Plaintiff of all the rents and

profits now due and unpaid or to become due during the pendency of this mortgage foreclosure

action, effective immediately for all real and personal, tangible and intangible property (including,

without limitation, all structures, leases, fixtures and moveable personal property, in addition to

all of the property set forth in paragraph 6(a) hereof) owned by Whitehall Fiduciary LLC, as

00069

Trustee of Whitehall Trust U/T/A Dated August 1, 2007 ("Whitehall") at 1177 6th Street, Whitehall, PA 18052 (the "Property"); with respect to income of any kind; and with respect to any and all other property and property interests pledged or assigned to Plaintiff under the Loan Documents, as defined in the Complaint.

## II. TERM OF THE RECEIVER

2.   The Receiver shall serve as the receiver for the Property for a period which shall commence on the date of this Order and shall continue, notwithstanding the entry of judgment in favor of Lehigh Valley 1 LLC (whether by consent or otherwise), subject to the terms of paragraph 3 below, until the earliest to occur of: (i) the termination of such appointment by a subsequent Order of Court; (ii) Lehigh Valley 1 LLC's (or its nominee's, designee's or assignee's) acquisition of title to the Leasehold Estate through the delivery to Lehigh Valley 1 LLC (or its nominee, designee or assignee) of a sheriffs assignment or by assignment in lieu of foreclosure; or (iii) full payment of all of sums due and owing under the "Loan Documents" (as defined in Plaintiff's Complaint),

3. Notwithstanding the terms of paragraph 2, at Lehigh Valley 1 LLC's request, and upon Court approval, following the occurrence of the events described in part (iii) of paragraph 2, the Receiver shall continue the receivership for such reasonable period of time as may be necessary to wind up the receivership.

4. The receivership may be terminated at any time by Lehigh Valley 1 LLC filing with the Court and serving upon the Receiver and Whitehall a Notice of Request to Terminate Appointment of the Receiver (a "Termination Request").

5. Within 30 days after the termination of the receivership, the Receiver shall file with the Court and serve upon Lehigh Valley 1 LLC and Whitehall its final report and accounting for the

00070

receivership, and the Receiver or Lehigh Valley 1 LLC may request that the Court enter an Order approving such final report and accounting and discharging the Receiver from its duties under this Order.

## III. POWERS AND DUTIES OF THE RECEIVER

6.   The Receiver shall have all necessary powers to manage the rents and profits of the Property, including the following powers:

(a) To enter and take immediate possession of the Property, and to demand, collect and receive the rents, income, revenues, proceeds and profits derived from tenants at the Property, their sublessees or any occupants in possession, including maintenance fees, management fees, special assessments and/or other charges relating to the Property, which are now due and unpaid or which may become due hereafter (collectively, the "Rents"), and all personal property owned or utilized by Lehigh Valley 1 LLC that relates to the management or operation of the Property, including all books, records, bank accounts, reserve accounts, cash on hand, keys, and combinations for locks or other access information in the possession of or reasonably available to Whitehall or its property manager (collectively, the "Receivership Property");

(b) To access and use office equipment at the Property used by Whitehall or its property manager, including computer equipment, software programs and passwords;

(c) To take all actions necessary to preserve, maintain, operate and manage the Property. The Receiver must obtain Lehigh Valley 1 LLC's prior written consent before any such expenditures are made;

(d) To employ counsel and, with the consent of Lehigh Valley 1 LLC, accountants or other professionals, contractors and support personnel and other persons necessary in order to carry out its duties as the Receiver and to preserve, maintain and operate the Property, and to

compensate such persons at competitive rates, without further Order of this Court, at their respective hourly rates, plus reimbursement of all reasonable and necessary out-of- pocket expenses;

(e) To commence, prosecute, continue or defend actions at law or in equity (in its own name or in the name of Whitehall) that the Receiver deems necessary to protect or preserve the Property, to recover possession of the Property, to collect the rents, or to evict of eject any tenants or occupants;

(f) To continue in effect, modify or terminate (if and to the extent terminable without penalty or premium unless such termination penalty or premium shall be paid by the Receiver) agreements, contracts, understandings or commitments entered into by Whitehall with respect to the Property, to the extent permitted by applicable law, and to make additional agreements and contracts reasonably necessary for the operation and preservation of the Property;

(g) To retain a reputable management company (including, but not limited to, an affiliate of the Receiver), maintenance personnel, broker, leasing agent and/or marketing agent to operate and manage the Property, and to market the Property for rent, without further order of this Court, but with the consent of Lehigh Valley 1 LLC, and at competitive rates plus reimbursement of its reasonable and necessary out-of-pocket expenses;

(h) To pay all past-due and current insurance premiums, taxes, assessments, sewer and utility charges levied against the Property, and (with the consent of Lehigh Valley 1 LLC) to purchase merchandise, construction and other materials, supplies and services as the Receiver deems necessary and advisable to assist the Receiver in performing its duties and to pay the ordinary and usual rates and prices;

00072

(i)    To open and utilize any new bank accounts as the Receiver deems necessary or desirable in connection, and the Receiver is authorized, empowered and directed to use Whitehall's tax identification number in connection with the revenue and expenses with respect to the Property;

(j)    To make, enter into, enforce, terminate, modify or accept a surrender of any of the Leases (as defined in the Mortgage); to obtain and evict occupants (subject to applicable laws and regulations); to bring or defend any suits in connection with the Leases or Rents in its own name or in the name of Whitehall; to compromise any Rents or other payments, income or proceeds that may become due; and to sue for or otherwise collect and receive all Rents, including those past due and unpaid. Rents and Leases shall be turned over to Receiver and the Defendant shall be enjoined and restrained from collecting the Rents and Leases of the Property or interfering with Receiver's ability to collect said Rents and Leases. Tenants, occupants, and licensees of the Property are enjoined from paying any rent or lease payment to the Defendant, its agents, servants or attorneys, and if they do so, they may be held liable to Receiver and Plaintiff for these sums;

(k)    To present for payment any checks, money orders or other forms of payment made payable to Whitehall, its property manager, or any other agent, assignee or nominee of Whitehall, which constitute Rents, endorse and collect the proceeds, to be used and maintained as elsewhere provided;

(l)    To keep the Property insured (whether by the existing insurance coverages or new coverages), each of which insurance policy shall name the Receiver and Lehigh Valley 1 LLC as additional insureds and shall comply, at a minimum, with the terms of the Loan Documents;

(m)    As Receiver, to use for any such purpose any funds of Whitehall, including the Rents;

(n)    To notify all local, state and federal governmental agencies, all vendors and suppliers, and any and all others who provide goods or services to the Property of its appointment as the Receiver;

(o)    Receiver is authorized to apply income from the Property, subject to the lien rights of Lehigh Valley 1 LLC, as follows and in the following order to the extent funds are available: first, to pay Receiver's approved fees and expenses which include the Receiver's attorneys' fees related to the receivership; second, to pay all operating expenses with respect to the Property (other than the obligations owed to Plaintiff under the Loan Documents); and third, to pay the obligations owed to Plaintiff under the Loan Documents;

(p)    To take any and all steps necessary to receive, collect and review all mail or other parcels relating to the Property addressed to Whitehall or its property manager, including, but not limited to, mail or other parcels addressed to any post office boxes held in the name of Whitehall, its property manager, or any other agent, assignee or nominee of Whitehall, and to instruct the U.S. Postmaster and any other mail or parcel carrier or service to re-route, hold, and/or release said mail or other parcels to the Receiver; provided that any mail and other parcels addressed to Whitehall that do not relate to the Property and reviewed by the Receiver in the performance of its duties will be forwarded to Whitehall or its property manager by the Receiver after its review;

(q)    With prior written consent and authorization from Lehigh Valley 1 LLC, to delegate or assign any and all rights and powers of the Receiver set forth herein, in the reasonable discretion of the Receiver;

00074

(r)    To apply to this Court for further direction and for such further powers as may be necessary to enable the Receiver to fulfill its duties;

(s)  To keep a true and accurate account of any and all receipts and expenditures for the Property;

(t)    Receiver shall, within 30 days of qualification and appointment, provide Lehigh Valley 1 LLC and Whitehall with an inventory of all property of which Receiver has taken possession. If Receiver subsequently comes into possession of additional property, Receiver will provide Lehigh Valley 1 LLC and Whitehall with a supplemental inventory;

(u)    In addition to any financial, operating, and other reports and information required to be delivered pursuant to the Loan Documents, Receiver shall provide the following documents for the immediate preceding calendar month, which documents are believed by the Receiver as being true, correct, and complete as of the reporting date;

(i) a balance sheet, statement of income and expenses, statement of cash flows for the Property and on a consolidated basis for all Property;

(ii)  a detailed rent roll for the Property showing the occupancy of the respective Property, name of each tenant, occupant, or customer and, for each tenant, occupant, or customer, the space occupied, the lease or occupancy commencement and expiration dates, the rent or fee payable, the rent or fee paid to date and the security deposit being held for such tenant, if any, and a leasing or rental activity report for the Property each in detail reasonably satisfactory to Petitioner;

(iii) an aged payables report and an aged receivables report for the Property;

(iv)  a capital expenditure report for the Property;

(v) all bank statements with monthly reconciliations; and

(vi) each of the above will be provided to Plaintiff on a monthly basis.

(v)     To pay all ordinary and reasonable costs associated with the Property arising on or after the date of the Complaint, that were not invoiced by the vendor or provider prior to the date of this Order;

(w)    To open any new customer accounts necessary to effectively manage the Property and/or to require Whitehall to identify the Receiver as an authorized account user for any existing accounts;

(x)     To pay any pre-receivership obligations of Whitehall authorized by Lehigh Valley 1 LLC;

(y)     To execute a W-9 as an attorney-in-fact for Whitehall;

(z)     To notify tenants and other persons now or hereafter in possession of all or any portion of the Property to pay all Rents directly to the Receiver;

(aa)    To exercise commercially reasonable discretion in determining whether to refund security deposit to a tenant, in whole or in part, in accordance with the applicable leases or agreements, and to pay any such funds from security deposits turned over from Whitehall or (for tenancies arising after the date of this Order) security deposits paid by or on behalf of a tenant first, and then from cash flow generated from Rents, issues, profits, and income from the Property.

(bb)   Receiver and Lehigh Valley 1 LLC are authorized to enter transactions by which Lehigh Valley 1 LLC may lend monies to Receiver (on a nonrecourse basis as to Receiver) to enable Receiver to perform its duties, which shall be secured by a first and prior lien and security interest on the Property and on all other collateral of Lehigh Valley 1 LLC, in favor of Lehigh Valley 1 LLC as security for such on the same terms and conditions set forth in the Mortgage, subject, however, to the terms of paragraph (cc) below.

00076

(cc)    Whitehall shall hold in trust for Receiver (and not sell, transfer, assign, lend, pledge, hypothecate, return, reject, revoke or in any other way actually or constructively dispose of, without Court approval or the written consent of Plaintiff), any certificate, deposit, fund, account, trademark, benefit, liquor or food license or permit, or other right or interest owned by it and used in connection with the Property, and shall assign any of the same to Receiver upon Receiver's written request.

(dd)    Notwithstanding anything contained in this Order, (1) any obligation or liability incurred by the Receiver during the receivership shall not be a personal obligation or liability of Whitehall, but shall be collectible only out of the Property, and the Receiver shall include the foregoing in each agreement, purchase order and other contract it enters into pursuant hereto, and (2) neither Whitehall nor any of its affiliates shall be liable for any action or inaction of the Receiver. Receiver covenants not to sue or bring any claim, demand action or suit against Whitehall directly or indirectly that is inconsistent with the foregoing and the nonrecourse nature of the obligations of Whitehall pursuant to the terms and provisions of the Loan Agreement and other similar provisions contained In the Loan Documents.

7. Neither the Receiver nor any person or entity employed by the Receiver (collectively, the "Receiver Parties") shall be liable to Whitehall or to any third party for any act or omission which he, she, It or they have undertaken In good faith; provided, however, nothing contained herein shall release or limit the liability of the Receiver Parties arising from the gross negligence or willful misconduct of the Receiver Parties. The Receiver shall be entitled to all defenses and immunities provided under applicable law, including under *Barton v. Barbour*, 104 U.S. 126 (1881) and Its progeny, for acts or omissions within the scope of the Receiver's appointment.

00077

8. Except as provided in this Order, the Receiver shall not be responsible for the payment of any services commissioned or incurred, or goods purchased, prior to the date of this Order, including utility invoices (being electricity, gas, water, sewer, garbage, phone/internet, etc.), payroll and property vendors, all of which shall remain Whitehall's responsibility.

9. No utility may terminate service to the Property as a result of non-payment of pre-receivership obligations without prior order of this Court, nor may the continuation of any utility be conditioned upon the Receiver's payment of any pre-receivership consumption, charges or fees.

10. No insurance company may cancel its existing current-paid policy without prior order of this Court.

## IV. TURNOVER BY WHITEHALL

11. Whitehall and all persons acting under its direction are ordered to immediately deliver to Receiver possession of the Property and each of the following, to the extent owned by Whitehall, in Whitehall's possession or control, and relating to the Property without any right of offset or recoupment:

      (a) Property-related information and other property management database files,

      (b) All cash collateral for the indebtedness owed by Whitehall to Plaintiff (whether consisting of cash on hand, cash in any and all bank accounts or other accounts, all rights to security deposits, if any, including but not limited to amounts that Whitehall may have deposited with utility companies, and all other cash and cash equivalents);

      (c) All keys to the Property;

      (d) All security deposits, rent, prepaid rent and other sums relating to the use, enjoyment, possession, improvement or occupancy of all or any part of the Property, in each case, to the extent received by Whitehall and any accounts in which any of the foregoing are deposited;

00078

(e)    A current list of the occupants of the Property;

(f)    Any and all current Property accounts receivable and accounts payable reports;

(g)    Any and all contracts in effect with respect to the Property, and any material related correspondence;

(h)    Any and all payroll records and other materials reasonably requested by Receiver and related to persons employed by Whitehall or its property manager at the Property;

(i)  Certificates evidencing the insurance policies covering the Property;

(j) Records showing any insured losses to the Property in the past five years;

(k)    Any and all bank statements relating to any accounts maintained by Whitehall with respect to the Property;

(l)  The tax identification numbers of Whitehall; and

(m)    Any and all other records pertaining to the management of the Property to the extent such records are maintained.

12. From and after the date Whitehall delivers possession of the Property to Receiver, Whitehall shall continue to perform ·or cause to be performed at Whitehall's sole cost and expense all actions necessary for Whitehall to keep its organizational status in good standing with its state of organization and the state where the Property is located, if different, including, without limitation, the timely filing of all required annual reports, tax returns and other similar state and local filings and paying any required fees and charges.

13. Whitehall and all persons acting under its direction are ordered to cooperate and use their best efforts to ensure a smooth transition of the management and operation of the Property to

the Receiver, including, but not limited to, requests for information or documents that pertain to the maintenance, operation or leasing of the Property or any efforts to collect any sums due;

14.  Within three (3) days from the date of this Order, provide the Receiver with the name, title, address, telephone number and email address of a designated representative of Whitehall with whom the Receiver shall communicate about the obligations expressed in this Order, and promptly notify the Receiver of any changes.

## V. NON-INTERFERENCE BY WHITEHALL

15.  Whitehall and its officers, directors, general partners, limited partners, agents, property managers, architects, contractors, subcontractors and employees, and all other persons with actual or constructive knowledge of this Order and their agents and employees, are enjoined from:

(a)  Interfering with the Receiver, directly or indirectly, in the management and operation of the Property or in the collection of Rents;

(b)  Extending, dispersing, transferring, assigning, selling, conveying, devising, pledging, mortgaging, creating a security interest in or disposing of the whole or any part of the Property (including the Rents) without the prior written consent of the Receiver;

(c)  Doing any act which will, or will tend to, impair, defeat, divert, prevent or prejudice the preservation of the Property (including the Rents) or the interest of Lehigh Valley 1 LLC in the Property or the Rents;

(d)  Undertaking any efforts to cancel, terminate or modify the coverage provided by any existing insurance policies relating to the Property before their respective expiration dates; or

(e)  Transferring, selling, assigning, revoking, returning, terminating or canceling, or taking or failing to take any action that would compromise, without the consent of

00080

the Receiver, any contract, permit, approval, license, privilege, or right necessary for the operation of business at or use and occupancy of the Property.

16. In the event Whitehall fails to comply with the terms of this Order, the Receiver may seek assistance from the U.S. Marshal to enforce the same.

## VI. RECEIVER'S COMPENSATION

17. The Receiver shall be compensated at its standard hourly rates. The Receiver's fee will be $_____ per hour, and said monthly fee shall be deducted directly from the rents, income and revenue received by Receiver.

18. In addition to the Receiver's fees, the Receiver shall be reimbursed for its reasonable costs, including legal fees, travel expenses, and other business expenses associated with the Receivership. The Receiver may pay itself from Rents, the Receivership Property, and from the sale of the Property, if any.

19. The Receiver shall file monthly reports with the Court and it shall disclose its compensation and reimbursement in said reports.

## VII. BANKRUPTCY OF WHITEHALL

20. If Whitehall files a bankruptcy case during the receivership, Lehigh Valley 1 LLC shall give notice of the bankruptcy case to the Court and the Receiver. If the Receiver receives notice that the bankruptcy has been filed and that part of the bankruptcy estate includes the Property (or any part of it) that is the subject of this Order, the Receiver shall have the following duties:

(a) The Receiver shall give prompt notice of the bankruptcy case to Lehigh Valley 1 LLC.

(b) The Receiver shall immediately contact Lehigh Valley 1 LLC and determine whether Lehigh Valley 1 LLC intends to move in the bankruptcy court for an order for: (i) relief

from the automatic stay; and (ii) relief from the Receiver's obligation to turn over the Property (11 U.S.C. § 543). If Lehigh Valley 1 LLC disclaims in writing any intention to make such a motion or fails to file such motion within ten court days following its receipt of notice of the bankruptcy filing, the Receiver shall immediately turn over the Property (or applicable portion thereof) to the appropriate entity (either to the trustee in bankruptcy if one has been appointed or, if not, to the debtor in possession) and otherwise comply with 11 U.S.C. § 543.

If Lehigh Valley 1 LLC intends to seek relief immediately from both the automatic stay and the Receiver's obligation to turn over the Property, the Receiver may remain in possession and preserve the Property pending the ruling on those motions unless otherwise ordered by the Bankruptcy Court. (11 U.S.C. § 543(a).) The Receiver's authority to preserve the Property shall be limited as follows: (i) the Receiver may continue to collect Rents and other income; (ii) the Receiver may make only those disbursements necessary to preserve and protect the Property; (iii) the Receiver shall not execute any new leases or other long-term contracts without the approval of this Court and the Bankruptcy Court; and (iv) the Receiver shall do nothing that would effect a material change in the circumstances of the Property.

## VIII. MISCELLANEOUS

21. Without limiting any of the general or specific powers granted herein, Receiver is vested with all of the powers, rights, and duties provided to receivers under applicable law, and may act in the name of Whitehall without the approval or consent of the members, managers, directors, officers, partners, or other persons that would be legally required in the absence of the Receiver's appointment to approve or consent to such action.

22. The Receiver shall notify all known creditors of Whitehall of the entry of this Order by sending a copy of the Order to the creditor at its last known mailing address.

00082

23. Entry of this Order shall operate as a stay applicable to all persons and entities of:

      (a)     Any act, including without limitation the commencement or continuation of a judicial, administrative, or other action or proceeding including the issuance of process to obtain possession of Receivership Property or to interfere with or exercise control over Receivership Property, other than the commencement or continuation of a judicial, administrative, or other action or proceeding to enforce any lien having priority over the rights of the Receiver In the Receivership Property;

      (b)     Any act to create or perfect any lien against Receivership Property to the extent that the lien secures a claim that arose before the date of this Order.

24.  Without first obtaining leave of this Court, all creditors, directors, equity owners, employees, unions, and other persons, and all others acting on behalf of such person, including sheriffs, Marshalls , other officers, deputies, servants, agents, are enjoined from:

      (a) Terminating any service, whether utility or otherwise, to or for the Property without first obtaining express authorization from this Court;

      (b)     Attempting to modify, cancel, terminate, call, extinguish, revoke or accelerate the due date of any lease, loan, mortgage, indebtedness, security agreement or otherwise affecting the Receivership Property;

      (c)     Doing any act to interfere with the Receiver taking control, possession, or management of the Receivership Property, or to interfere in any manner with the exclusive jurisdiction of this Court over the Receivership Property;

      (d)     Engaging in any act to collect, assess, or recover Receivership Property for a claim against Whitehall that arose before the appointment of the Receiver;

00083

(e)    Exercising a right of set off against Receivership Property for a debt owing to Whitehall that arose before the appointment of the Receiver.

(f)    Plaintiff reserves the right to terminate the Receiver at any time.

(g)    This receivership will continue in effect until further order of the Court.

BY THE COURT:

_____

Honorable Jeffrey L. Schmehl

00084

## CERTIFICATE OF SERVICE

I, Raymond G. Lahoud, Esquire, hereby certify that on the date set forth below, I served a true and correct copy of Appellants' Appendix, Volume I of I with the Clerk of the Court for the United States Court of Appeals for the Third Circuit through the Court's CM/ECF system.

I further certify that Counsel for Appellee is a registered CM/ECF user, and that service will be accomplished on the date set forth herein <u>via</u> the Court's CM/ECF system.

Respectfully Submitted,

**LAHOUD LAW GROUP, P.C.**

Date: August 1, 2025

/s/ Raymond G. Lahoud
Raymond G. Lahoud, Esquire
600 Hamilton Street, Suite 330
Allentown, PA 18101
P:      (484) 544-0022
F:      (484) 750-2540
E:      rgl@raylahoud.com