# United States Court of Appeals
## FOR THE THIRD CIRCUIT

---

### No. 25-1899

---

## WHITEHALL FIDUCIARY LLC, AS TRUSTEE OF WHITEHALL TRUST U/T/A DATED AUGUST 1, 2007, AND SAUCON VALLEY TRUST U/T/A DATED AUGUST 1, 2007,
### *Appellants,*
### v.
## LEHIGH VALLEY 1 LLC, SUCCESSOR BY ASSIGNMENT TO WINDSTREAM CAPITAL LLC, SUCCESSOR BY ASSIGNMENT TO THE UNITED STATES SECRETARY OF HOUSING AND URBAN DEVELOPMENT, SUCCESSOR BY ASSIGNMENT TO M&T REALTY CAPITAL CORPORATION,

---

### BRIEF OF APPELLEE

---

**On Appeal from the United States District Court for the Eastern District of Pennsylvania Civil Action Nos. 24-2627 & 24-2709 (Consolidated)**
**The Honorable Catherine Henry**

---

Phillip D. Berger, Esq.
I.D. No. 58942
Matthew R. Kaufmann, Esq.
I.D. No. 206991
Berger Law Group, P.C.
919 Conestoga Avenue
Building 3, Suite 114
Rosemont, PA 19010
Phone: (610) 668-0800
*Attorneys for Plaintiff/Appellee*

## Table of Contents

TABLE OF AUTHORITIES ..............................................................................2

I.     STATEMENT OF JURISDICTION ...................................................5

II.    COUNTERSTATEMENT OF THE ISSUES ....................................5

III.   COUNTERSTATEMENT OF RELATED CASES AND
PROCEEDINGS.......................................................................6

IV.   COUNTERSTATEMENT OF THE CASE ......................................7

     A.   Nature of the Case ................................................................7

     B.   Course of Proceedings..........................................................7

     C.   Statement of Facts ................................................................8

     D.   The District Court's Decision .............................................12

V.     SUMMARY OF ARGUMENT......................................................13

VI.   STANDARD OF REVIEW ...........................................................17

VII.   ARGUMENT ..................................................................................18

     A.   THE DISTRICT COURT PROPERLY EXERCISED ITS
DISCRETION IN APPOINTING A RECEIVER BASED ON
THE TOTALITY OF CIRCUMSTANCES...................................18

     B.   THE DISTRICT COURT WAS NOT REQUIRED TO HOLD AN
EVIDENTIARY HEARING WHERE THE MATERIAL FACTS
WERE UNDISPUTED..................................................................34

     C.   THE SCOPE OF THE RECEIVERSHIP IS BOTH
APPROPRIATE AND NECESSARY TO PRESERVE THE
PROPERTIES ...............................................................................37

VIII.   CONCLUSION...............................................................................40

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION
.................................................................................................42

CERTIFICATE OF BAR MEMBERSHIP...................................................42

CERTIFICATION OF COMPLIANCE – PUBLIC ACCESS ......................43

SUPPLEMENTAL APPENDIX…………………………………………44

# TABLE OF AUTHORITIES

**Cases**

*Branch Banking & Trust Co. v. Bleiler,* 2021 Pa.Dist.&Cnty.Dec. LEXIS 2413 ... 23

*Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86 (3d Cir. 1992) ...................... 37

*Checker Cab of Phila. Inc. v. Uber., Inc.*, 643 F. App'x 229 (3d Cir. 2016).... 16, 30

*Deutsche Bank Tr. Co. Ams. v. Greenfield of Perkiomen Valley, LLC*, No. 23-1439, 2024 U.S. Dist. LEXIS 746 (E.D. Pa. Jan. 3, 2024) ......................... 17, 33, 39

*Deutsche Bank Tr. Co. Ams. v. Royersford Hotel Grp. LLC*, No. 24-5769, 2024 U.S. Dist. LEXIS 219041, at *5 (E.D. Pa. Dec. 4, 2024) ......................... 14, 16, 21

*Ecosave Automation, Inc. v. Delaware Valley Automation, LLC*, 540 F. Supp. 3d 491, 499-500 (E.D. Pa. 2021) ...................................................... 24

*FTE Networks, Inc. v. Szkaradek*, No. CV 22-785-WCB, 2023 WL 8650002, at *7 (D. Del. Dec. 14, 2023) ........................................................... 35

*Hohe v. Casey*, 868 F.2d 69 (3d Cir. 1989) .................................................... 37

*ICON PSG 1 FL, LLC v. Jenkins Court Realty Co., L.P.*, No. 25-0044, 2025 U.S. Dist. LEXIS 30906 (E.D. Pa. Feb. 21, 2025) ........................................ 21, 36

*KeyBank Nat'l Ass'n v. Fleetway Leasing Co.*, 781 F. App'x 119, 121 (3d Cir. 2019) ................................................................................................ 17

*Leone Industries v. Associated Packaging, Inc.*, 795 F. Supp. 117, 120 n.6 (D.N.J. 1992)........................................................................................ 16, 31, 34

*LVL Co., LLC v. Abraham Atiyeh*, 469 F. Supp. 3d 390 (E.D. Pa. 2020) ....... 10, 25

*Meyer v. CUNA Mut. Ins. Soc.*, 648 F.3d 154, 169 (3d Cir. 2011)....................... 17

*Midwest Bank v. Goldsmith*, 467 F. Supp. 3d 242, 248 (M.D. Pa. 2020) ............. 18

*Morgan Stanley Smith Barney LLC v. Johnson*, 952 F.3d 978, 980 (8th Cir. 2020) ........................................................................................................................ 18

*MSCI 2006-IQ11 Logan Boulevard Ltd. P'ship v. Greater Lewistown Shopping Plaza, Ltd. P'ship,* No. 4:16-CV-2090, 2017 U.S. Dist. LEXIS 16457 (M.D. Pa. Feb. 6, 2017) ...................................................................................... 20, 34

*SEC v. Black*, 163 F.3d 188, 195 (3d Cir. 1998) ................................................. 17

*Tanzer v. Huffines*, 315 F. Supp. 1140 (D. Del. 1970) ........................................ 37

*United States v. Berk & Berk*, 767 F. Supp. 593, 597 (D.N.J. 1991) ....... 20, 26, 34

*Wells Fargo Bank, N.A. for Morgan Stanley Cap. I Inc., Com. Mortg. Pass-through Certificates, Series 2006-IQ12 v. Lichter Gateway IV, LLC,* 2017 U.S. Dist. LEXIS 198162, 2017 WL 5957072, at *6 (D.N.J. Dec. 1, 2017)........ 14, 19, 20

*Wells Fargo Bank, N.A. v. CCC Atlantic, LLC,* 905 F. Supp. 2d 604 (D.N.J. 2012) ............................................................................................................. passim

*Wilmington Trust, National Association v. Cedar Crest Professional Park VII LP*,

   No. 5:24-cv-04627 (E.D. Pa. Jun. 6, 2025)....................................................21

*Zinke-Smith, Inc. v. Marlowe*, 323 F. Supp. 1151 (D.V.I. 1971) .........................36

**Statutes**

28 U.S.C. § 1292(a)(2)..................................................................................................5

## I. STATEMENT OF JURISDICTION

Appellee concurs in Appellants' jurisdictional statement. This Court has jurisdiction under 28 U.S.C. § 1292(a)(2) to review the district court's May 2, 2025 order appointing a receiver.

## II. COUNTERSTATEMENT OF THE ISSUES

1. Whether the District Court properly exercised its discretion in appointing a receiver where: (a) the parties' mortgage agreements expressly provide for receivership "as a matter of right and without notice" upon default; (b) the parties' mortgage agreements expressly provide that Appellants "waive[d] any and all defenses to the application for a Receiver and hereby consent[ed] to such appointment"; (c) Appellants admit to over four years of their continuous default by failing and refusing to make any mortgage payments since February, 2021 (note that HUD set off funds from the Appellants' reserve accounts to pay the March, April and May, 2021 mortgage payments); (d) the record demonstrates substantial risk to the collateral including a scheduled tax sale due to Appellants' failure and refusal to pay real estate or school taxes for the collateral properties for the years 2023-current date; (e) Appellants operate senior living facilities housing elderly residents; (f) Appellants have failed and continue to refuse to provide

evidence of their current financial condition; and (g) Appellants have failed and continue to refuse to provide evidence of proper insurance coverage for the collateral properties despite repeated requests.

2. Whether the District Court was required to hold an evidentiary hearing before appointing a receiver where the material facts were undisputed and established by documentary evidence, and where Appellants controlled but chose not to provide relevant financial information ( and continue to refuse to provide said information).

3. Whether the scope of the receivership order appropriately tracks the contractual provisions and the equitable needs of preserving the collateral properties that house elderly residents in the regulated healthcare facilities.

## III.   COUNTERSTATEMENT OF RELATED CASES AND PROCEEDINGS

There are no state court cases pending.  The two previously filed confessions of judgment cases were stricken due to an unrelated issue regarding the enforceability of the warrant of attorney provisions in the promissory notes.  The dockets in those matters reflect that those cases are "Closed".

## IV.  COUNTERSTATEMENT OF THE CASE

### A. Nature of the Case

This appeal arises from the District Court's appointment of a Receiver

to manage and preserve two senior living properties during the pendency of the

mortgage foreclosure proceedings. The properties house elderly residents.

### B. Course of Proceedings

On June 14, 2024, Lehigh Valley 1 LLC filed complaints for mortgage

foreclosure against Whitehall Fiduciary LLC and Saucon Valley Trust. The cases

were consolidated given their virtually identical nature. On July 31, 2024, Lehigh

moved for appointment of a receiver for both properties. After full briefing and

oral argument, the District Court granted the motions on May 2, 2025, issuing a

detailed eleven-page opinion. Appellants filed this appeal the same day.

After Appellants sought a stay pending appeal, the District Court denied the

Appellants' stay motion on June 9, 2025, providing yet additional analysis

supporting the receivership appointment. Appellants then sought a stay of the

receivership from this Court, which Appellee opposed in its August 15, 2025 filing.

This Court denied Appellants' requested Stay by Order dated August 19, 2025.

## C. Statement of Facts

The undisputed facts establish a compelling case for receivership:

### 1. The Mortgage Agreements and Defaults

In 2012, M&T Realty Capital Corporation provided HUD-insured loans to Appellants totaling over $35 million, secured by mortgages on senior living facility properties in Whitehall, Pennsylvania and in Hellertown, Pennsylvania. (Appx. 24). Both mortgages contain identical provisions stating that upon default, the mortgagee "shall be entitled to the appointment of a Receiver of the rents and profits of the mortgaged premises as a matter of right and without notice." (Appx. 27). Appellants further "waive[] any and all defenses to the application for a Receiver and hereby specifically consent[] to such appointment." (*Id.*).

Appellants have not voluntarily made a single mortgage payment on either loan since February 2021—over four years of continuous default. (Appx. 24, 28, 29). Appellants' four-plus year payment default is not disputed. Due to these defaults, the loans were accelerated, and demand for immediate payment of all amounts due was made on October 5, 2023. (Appx. 24-25).

## 2. The Properties And Their Residents

Both properties house senior living facilities providing services to elderly residents. (Appx. 24). These facilities are regulated at federal, state, and local levels, requiring compliance with health and safety standards. The continued operation and proper maintenance of these facilities is critical to the welfare of their elderly residents.

## 3. Critical Tax Delinquency And Imminent Tax Sale

Critically, one property located at 1050 Main Street, Hellertown, Pennsylvania was scheduled for tax sale on August 8, 2025. (Supp. Appx. Exh. "1", p. 1). This imminent threat, created by Appellants' failure to pay any real estate taxes from 2023 to the present, would have resulted in the complete loss of LV1's collateral on the Saucon Valley Trust ("Saucon") loan, and the extinguishment of Plaintiff's mortgage lien on that property. Only a last-minute stay (with the Tenant – NOT Appellant Saucon as the property owner) paying two monthly $20,000.00 payments to date (in July and August, 2025) for the partial repayment of the school district's tax lien judgment of $129,846.00 for past due 2023 taxes, prevented this catastrophic loss. Note that 2024 taxes on both properties are due and owing, and that no current 2025 tax payments are being made by either Appellant nor by their Tenant(s).

The tax situation reveals Appellants' severe financial distress. It must be noted that it was HUD that previously made tax payments for 2021 and 2022 from the Saucon reserve accounts to prevent tax sales from occurring for unpaid 2021 and 2022 school and real estate taxes. However, Appellants then failed and refused to pay school and real estate taxes for 2023-2025. Recently, Appellants arranged for their "affiliated" tenants to make monthly 2023 tax payments in exchange for rent offsets—meaning that Appellants are currently receiving little to no rental income. (Supp. Appx. Exh. "2", p. 9). Both properties remain severely tax delinquent and face the threat of new tax sales at any time.

### 4. Self-Dealing And Conflicts Of Interest

The record reveals concerning self-dealing arrangements between the owners of the properties and the tenants allegedly managing the facilities located at the properties. Abraham Atiyeh, manager of both Appellant entities owning the properties, had entered in to lease amendments with his wife (who allegedly operates the facilities at the properties) that totally eliminated all rents for 2024, and then dramatically reduced rental rates below market levels for 2025-2028—a reduction of over $1 million per property annually. (Supp. Appx. Exh. "3", p. 12). These conflicts of interest, documented in *LVL Co., LLC v. Abraham Atiyeh*, 469 F. Supp. 3d 390 (E.D. Pa. 2020), create inherent risks requiring receiver oversight.

Now, with Appellants having their "affiliated" tenants making monthly payments due for the 2023 real estate and school taxes (which Appellants did not pay), Appellants have further engaged in self-dealing and have prevented any monies from being paid to Appellants. The letters reflecting this new rental payment setoff are attached hereto as Supp. Appx. Exh. "2", at p. 9. Thus, Appellants by improperly reducing each Tenants' rent by $1 million per year, and then requiring Tenants to pay past due taxes, Appellants are not receiving any monies to pay mortgage payments, 2025 taxes, or even the Receiver's fees.

### 5. Appellants' Lack of Financial Transparency

Despite repeated requests from both LV1 and the district court, Appellants have failed to provide:

- Current financial statements (the most recent are from 2021, showing defaults and operating losses);

- Unredacted evidence of insurance coverage on the properties (c.f., Supp. Appx. Exh. "4", p. 100);

- Proof of current tax payments (none being made);

- Information about lease status or rent collection;

- Any plan or timeline for curing their defaults (no cure possible due to Appellants' self-dealing – see above paragraph).

(Appx. 31).

The 2021 financial statements that were provided show both entities in default with continuing losses. (Supp. Appx. Exh. "5", p. 117).

### 6. Assignment History

The mortgages were originally assigned by M&T to HUD in November 2022. HUD subsequently sold them to Windstream Capital in September 2023, which then assigned them to Lehigh Valley 1 LLC on May 15, 2024. (Supp. Appx. Exh. "6", p. 184; Supp. Appx. Exh. "7", p. 208).

The Security Agreements, and the Lessee Security Agreements have similarly been assigned to Lehigh Valley 1 LLC on May 15, 2024 per the Assignments of Lessee Security Agreement (Supp. Appx. Exh. "8" at pgs. 245, 271), and the recorded assignments of mortgage, which also specifically assigned all security agreements to Lehigh Valley 1 LLC (Supp. Appx. Exh. "6", p. 184; Supp. Appx. Exh. "7", p. 208).

## D. The District Court's Decision

After careful consideration of the relevant factors under Third Circuit precedent, the District Court appointed a receiver. The District Court found that the combination of the express contractual provisions appointing the receiver, the Appellants' admitted and continuing defaults, the Appellants' failure to provide

financial information, and the risk to both the collateral properties, and to the vulnerable residents warranted receivership. (Appx. 22-33).

## V.    SUMMARY OF ARGUMENT

The District Court properly exercised its broad discretion in appointing a receiver to protect and preserve the mortgaged properties pending foreclosure. This case presents the paradigmatic circumstances warranting receivership: express contractual provisions authorizing the appointment of the Receiver, undisputed and prolonged default (4+ years of no mortgage payments, 3 years of no real estate/school tax payments), demonstrated financial instability through tax delinquency and self-dealing, imminent risk to valuable collateral through tax sale, and—critically—the presence of vulnerable elderly residents whose welfare depends on proper property management.

First, the mortgage agreements unequivocally provide for receivership "as a matter of right and without notice" upon default, with Appellants expressly waiv[ing] any and all defenses". While not dispositive, such provisions carry "considerable weight" and distinguish this commercial foreclosure from cases where receivership is sought purely in equity. *See Wells Fargo Bank, N.A. for Morgan Stanley Cap. I Inc., Com. Mortg. Pass-through Certificates, Series 2006-*

*IQ12 v. Lichter Gateway IV, LLC,* 2017 U.S. Dist. LEXIS 198162, 2017 WL 5957072, at *6 (D.N.J. Dec. 1, 2017) ("The presence of a contractual stipulation to the appointment of a receiver 'is given <u>considerable weight</u> in the court's evaluation of whether a rent receiver should be appointed.'") (emphasis added); *see also See Wells Fargo Bank, N.A. v. CCC Atlantic, LLC,* 905 F. Supp. 2d 604 (D.N.J. 2012). Courts may apply the factors "in a less stringent manner if a loan agreement expressly allows for the lender to apply for a receiver in the event of a default". *Deutsche Bank Tr. Co. Ams. v. Royersford Hotel Grp. LLC*, No. 24-5769, 2024 U.S. Dist. LEXIS 219041, at *5 (E.D. Pa. Dec. 4, 2024). The four-and-a-half-year default triggering these provisions is admitted and ongoing.

Second, the District Court properly found that Appellee demonstrated its likelihood of success on the merits, given the undisputed default and the properly documented mortgage obligations due from the Appellants. Appellants' financial instability is manifest from multiple sources: their prolonged inability to make any mortgage payments for over four years, their failure to pay taxes resulting in a scheduled tax sale, their 2021 financial statements showing financial distress, their self-dealing arrangements that has eliminated rental income, their self-dealing arrangement that requires the tenants to make monthly payments on the entered 2023 school tax lien and judgment of $129,846.00 (which arrangement sets off any

of the reduced rental payments due Appellants), and their refusal to provide current financial information despite contractual requirements and the pending court proceedings.

Third, the risk of harm to the properties is not speculative but immediate and catastrophic. One property was scheduled for tax sale on August 8, 2025—a sale that would have extinguished LV1's entire mortgage lien on collateral securing the millions of dollars of debt owed to LV1. This is not a theoretical risk, but documented reality which required the urgent intervention of the assigned Receiver.

Further, properties housing healthcare facilities require constant maintenance, insurance, and regulatory compliance. The Appellants' demonstrated tax delinquency, self-dealing arrangements reducing rental income by millions of dollars annually (and then setting off any rental payments due from the Tenants to pay the past due 2023 school taxes), and Appellants' failure to provide evidence of insurance or proper maintenance creates precisely the "imminent danger" that receivership is designed to prevent.

Fourth, the inadequacy of legal remedies is manifest. Foreclosure alone cannot prevent the immediate threat of tax sale, the deterioration to the properties

that may occur during litigation (especially due to the Appellants' failure to now receive any rent payments needed for property maintenance and other occurring expenses), or the protection of the elderly residents who depend on these facilities. As stated in *Checker Cab of Phila. Inc. v. Uber Techs., Inc.*, 643 F. App'x 229 (3d Cir. 2016), irreparable harm exists where monetary damages cannot adequately compensate for the threatened injury; see also *Deutsche Bank Trust Co. Americas v. Royersford Hotel Group LLC*, No. 2:24-cv-05769 (E.D. Pa. Dec. 4, 2024).

Fifth, no evidentiary hearing was required where, as here, the material facts are undisputed and documented. Appellants do not dispute their default, the terms and requirements of the mortgages, their continued tax payment delinquency, or their failure to provide the requested financial information. "An evidentiary hearing need not be held beforehand when the record discloses sufficient facts to warrant appointment of a receiver." *Leone Industries v. Associated Packaging, Inc.*, 795 F. Supp. 117, 120 n.6 (D.N.J. 1992). The Defendants'/Appellants simply control all of the relevant financial information, yet they chose not to provide it to LV1 as the secured creditor, nor to the appointed receiver.

Finally, the scope of the receivership appropriately matches both the contractual authorization, and the equitable needs of this situation. A receiver must

have authority to properly manage and preserve properties housing healthcare facilities, not merely collect rents while the properties face tax sale and potential deterioration. The precedent from *Deutsche Bank Tr. Co. Ams. v. Greenfield of Perkiomen Valley, LLC*, No. 23-1439, 2024 U.S. Dist. LEXIS 746 (E.D. Pa. Jan. 3, 2024), involving another senior living facility, demonstrates that receivers routinely exercise broad authority to ensure proper operations.

The District Court's order should be affirmed.

## VI. STANDARD OF REVIEW

This Court "review[s] the District Court's application of law with regard to the equitable receivership de novo, and its decisions relating to procedures it will follow in connection with the receivership proceedings for abuse of discretion." *KeyBank Nat'l Ass'n v. Fleetway Leasing Co.*, 781 F. App'x 119, 121 (3d Cir. 2019) (quoting *SEC v. Black*, 163 F.3d 188, 195 (3d Cir. 1998)).

An abuse of discretion exists only where "the District Court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." *See, e.g., Meyer v. CUNA Mut. Ins. Soc.*, 648 F.3d 154, 169 (3d Cir. 2011).

## VII. ARGUMENT

### A. THE DISTRICT COURT PROPERLY EXERCISED ITS DISCRETION IN APPOINTING A RECEIVER BASED ON THE TOTALITY OF CIRCUMSTANCES

Receivership is an equitable remedy within the district court's broad discretion. *Morgan Stanley Smith Barney LLC v. Johnson*, 952 F.3d 978, 980 (8th Cir. 2020); *Wells Fargo Bank, N.A. v. CCC Atlantic, LLC*, 905 F. Supp. 2d 604 (D.N.J. 2012). While it is "an extraordinary equitable remedy" that is not routinely granted, the appointment of the Receiver is appropriate where, as here, multiple factors converge to demonstrate both the right to, and the need for a receiver. *Id.*

Under Federal Rule of Civil Procedure 66, federal courts follow historical federal practice in administering receiverships. *Midwest Bank v. Goldsmith*, 467 F. Supp. 3d 242, 248 (M.D. Pa. 2020). In this Circuit, courts consider multiple factors when evaluating receivership motions, with no single factor being dispositive. *Wells Fargo Bank, N.A. v. CCC Atlantic, LLC*, 905 F. Supp. 2d 604, 614 (D.N.J. 2012).

The relevant factors include: (1) the existence of a contractual provision for receivership; (2) the plaintiff's likelihood of success on the merits; (3) the defendant's financial condition; (4) the risk of waste or diminution in value; (5) the

inadequacy of legal remedies; (6) the balance of interests; and (7) other equitable considerations such as fraudulent conduct or misuse of funds. *Id.* at 614-15.

Contrary to Appellants' assertion, the District Court did not "collapse" this analysis into a single factor. Rather, the District Court Judge methodically examined each factor, and properly found that the overwhelming weight of evidence supported the appointment of the Receiver. The District Court Judge's analysis was sound, and should be affirmed.

### 1. The Undisputed Contractual Right To A Receiver Upon Default Strongly Favors Appointment

The mortgage agreements provide that upon default, the mortgagee "shall be entitled to the appointment of a Receiver of the rents and profits of the mortgaged premises as a matter of right and without notice." (Appx. 27). Appellants further "waive[d] any and all defenses to the application for a Receiver and hereby specifically consent[ed] to such appointment." (*Id.*).

Such provisions carry "considerable weight" in the receivership analysis. *See Wells Fargo Bank, N.A. for Morgan Stanley Cap. I Inc., Com. Mortg. Pass-through Certificates, Series 2006-IQ12 v. Lichter Gateway IV, LLC,* 2017 U.S. Dist. LEXIS 198162, 2017 WL 5957072, at *6 (D.N.J. Dec. 1, 2017) ("The presence of a contractual stipulation to the appointment of a receiver 'is given considerable

weight in the court's evaluation of whether a rent receiver should be appointed.'");
see also *Wells Fargo Bank, N.A. v. CCC Atl., LLC,* 905 F. Supp. 2d 604 (D.N.J.
2012). Courts in this Circuit give these provisions substantial deference,
recognizing they "set apart this commercial foreclosure case from the traditional
scenario in which a receiver is sought at equity and no such contractual provisions
exist." *Wells Fargo Bank, N.A. v. CCC Atl., LLC,* 905 F. Supp. 2d 604 (D.N.J.
2012); see also *Wells Fargo Bank, N.A. v. Lichter Gateway IV, LLC*, 2017 WL
5957072, at *6 (D.N.J. Dec. 1, 2017).

The Third Circuit has recognized that contractual receivership provisions
reflect the parties' negotiated allocation of rights and remedies. See *Wells Fargo
Bank, N.A. v. CCC Atl., LLC,* 905 F. Supp. 2d 604 (D.N.J. 2012) ("[W]here the
parties have agreed ex ante that, in the event of a default, the lender has the right to
all rent payments and to the appointment of a receiver... appointment of a receiver
is not such a drastic remedy."). Under federal law, particularly in HUD foreclosure
actions, "no hearing is necessary where the facts support the appointment of a
receiver." *MSCI 2006-IQ11 Logan Boulevard Ltd. P'ship v. Greater Lewistown
Shopping Plaza, Ltd. P'ship,* No. 4:16-CV-2090, 2017 U.S. Dist. LEXIS 16457
(M.D. Pa. Feb. 6, 2017) (citing *United States v. Berk & Berk*, 767 F. Supp. 593,
597 (D.N.J. 1991)).

This Circuit has recently addressed similar provisions in multiple cases within this district, consistently finding they support receivership:

- *Deutsche Bank Trust Company Americas v. Royersford Hotel Group LLC*, No. 24-5769, 2024 U.S. Dist. LEXIS 219041 (E.D. Pa. Dec. 4, 2024) (applying factors "in a less stringent manner" where contractual provisions exist);

- *ICON PSG 1 FL, LLC v. Jenkins Court Realty Co., L.P.*, No. 25-0044, 2025 U.S. Dist. LEXIS 30906 (E.D. Pa. Feb. 21, 2025) (finding prolonged default combined with lack of financial transparency demonstrates financial instability warranting receivership);

- *Wilmington Trust, National Association v. Cedar Crest Professional Park VII LP*, No. 5:24-cv-04627 (E.D. Pa. Jun. 6, 2025) (court retains equitable discretion to fashion receivership orders that effectively preserve the collateral).

Appellants' argument that the receivership exceeds the contractual scope simply misreads both the terms of the contractual agreements, and the law. The mortgages authorize a receiver not just to "collect the rents, issues, and profits" but to take all actions necessary to preserve the properties. Moreover, courts retain

equitable discretion to fashion receivership orders that effectively preserve collateral, particularly where, as here, the properties house vulnerable populations requiring specialized care.

Further, in this matter, the Lessee Security Agreements signed by the (affiliated) tenants allegedly managing the facilities at the properties specifically allows the secured creditor (now Receiver) to terminate the lessee affiliated entities, to take control over all licenses, and to actually operate the facilities. These Lessee Security Agreements further grant the secured party the power of attorney to do all things necessary or required. (Supp. Appx. Exh. "8", ¶ 9(e), p. 229 and 256). These contractual provisions in the Lessee Security Agreements (which were assigned pursuant to the Assignments of Lessee Security Agreements [Supp. Appx. Exh. "8", p. 245, 271], and by the subsequent Assignments [Supp. Appx. Exhs. "6", "7", p. 184 – 220]) further support the broad scope of the receivership authority.

The contractual provisions in this matter are clear, unambiguous, and triggered by Appellants' admitted defaults. The contractual rights factor strongly favors receivership.

### 2. The Appellants' Admitted And Continuing Defaults Establish Both The Likelihood Of Success And Appellants' Financial Instability

#### a. Likelihood Of Success On The Merits

The District Court properly found that "the continuing failure of both Whitehall and Saucon to make monthly mortgage payments shows that Lehigh is likely to succeed on its mortgage foreclosure claims." (Appx. 28). This finding is unassailable.

In a mortgage foreclosure action, the plaintiff makes a prima facie case by showing: (1) the existence of the mortgage; (2) default under the mortgage terms; and (3) the amount due. *See, e.g., Branch Banking & Trust Co. v. Bleiler,* 2021 Pa. Dist. & Cnty. Dec. LEXIS 2413. In this matter, all three elements are established by the undisputed documentary evidence. The mortgages are of record, the default is admitted, and the amounts due are documented.

Appellants argue that the District Court should have considered their potential defenses, but the Appellants have failed to articulate any colorable defense that would defeat LV1's claims. The Appellants' challenges to standing and jurisdiction have already been rejected by the District Court. The Appellants' vague assertions about HUD's handling of reserve accounts do not negate the Appellants' obligation to make mortgage and tax payments, particularly where HUD actually

23

used those reserves to pay the March, April and May 2021 mortgage payments, and the delinquent 2021 and 2022 real estate taxes. See *Ecosave Automation, Inc. v. Delaware Valley Automation, LLC*, 540 F. Supp. 3d 491, 499-500 (E.D. Pa. 2021) (likelihood of success considers "the legal principles controlling the claim and the potential defenses available").

The District Court properly considered the Appellants' admitted (and continuing) defaults when reviewing the likelihood of Plaintiff's success on the merits in this pending mortgage foreclosure matter, and then properly appointed the Receiver.

### b.    Financial Instability

The evidence of Appellants' financial instability is overwhelming and comes from multiple documented sources:

**Tax Delinquency Creating Imminent Risk:** The scheduled August 8, 2025 tax sale of the Hellertown property demonstrates the Appellants' severe financial distress. Appellants have failed to pay any real estate taxes from 2023 to the current date, creating such delinquency that the real property faced immediate tax sale. Only the Receiver's intervention prevented total loss of the collateral.

**Self-Dealing Arrangements:** The record reveals that Abraham Atiyeh and his wife entered into lease amendments totally eliminating all 2024 rent payments (paid from Tenant to property owner), and then reducing the rental rates dramatically below market rates for 2025-2028—over $1 million per property annually. (Supp. Appx. Exh. "3", p. 12). These self-dealing arrangements, as further documented in *LVL Co., LLC v. Abraham Atiyeh*, 469 F. Supp. 3d 390 (E.D. Pa. 2020), demonstrate both financial manipulation and the absence of arms-length management.

**Four and a Half Years of Default:** "A borrower's inability to make payments when due reveals its poor financial condition, suggests a need to preserve the property." (Appx. 29). The Appellants' prolonged defaults—not a temporary setback but years of no mortgage and no tax payments being made—establishes the Appellants' chronic financial instability.

**Tenant Payment of Owner Obligations:** The arrangement where the tenants are now paying Appellants' past due 2023 taxes, in exchange for rent offsets, means Appellants now receive little to no monthly rental income. (Supp. Appx. Exh. "2", p. 9). This arrangement demonstrates the Appellants' inability to meet basic property obligations (like paying past due – or current taxes) from its

operations.  This arrangement also reflects that the Appellants are now receiving almost no rent whatsoever, and will remain unable to pay mortgage payments, current tax payments, or to pay basic bills being accrued in owning and maintaining the properties.

**2021 Financial Statements:** The most recent financial statements provided (2021) show defaults and operating losses. (Supp. Appx. Exh. "5", p. 117). Appellants' refusal (and continued refusal) to provide updated financials, despite the requirements for turnover of the financials in the loan documents, and the Appellee's demands for said financial information suggests that Appellants' financial situation has not improved.

**Lack of Financial Transparency:** Appellants' strategic decision to withhold current financial information, insurance documentation, and tax records while opposing receivership speaks louder than their protests. Courts routinely find that prolonged default combined with lack of financial transparency demonstrates the financial instability warranting receivership. *Wells Fargo Bank, N.A. v. CCC Atl., LLC,* 905 F. Supp. 2d 604, 614 (D.N.J. 2012) (citing *United States v. Berk & Berk,* 767 F. Supp. 593, 597 (D.N.J. 1991)).

For all of the above reasons, the District Court Judge properly reviewed the Appellants' financial instability and properly ordered the receivership.

### 3. The Record Demonstrates Imminent Risk of Harm To The Properties And Inadequacy Of Legal Remedies

### a. Risk Of Diminution In Value

The district court correctly found "no question that Lehigh has grounds to be concerned about a possible diminution in the value of its collateral." (Appx. 31). Appellants mischaracterize this finding as requiring proof of actual, ongoing harm. The standard is "imminent danger that property will be lost, concealed, injured, diminished in value, or squandered." *Wells Fargo Bank, N.A. v. CCC Atlantic, LLC*, 905 F. Supp. 2d at 614 (emphasis added).

The imminent danger here is documented and catastrophic:

**Immediate Tax Sale Threat:** The August 8, 2025 scheduled tax sale would have resulted in total loss of LV1's collateral, and the extinguishment of LV1's mortgage lien on one of the commercial collateral properties. (Supp. Appx. Exh. "1", p. 1). This is not speculation—it was scheduled and required the emergency intervention by the appointed receiver. Both properties remain severely tax delinquent, with no current taxes being paid, meaning new tax sales could be scheduled at any time. (Supp. Appx. Exh. "9", p. 279).

27

**Insurance Coverage Uncertainty:** Appellants have repeatedly failed and refused to provide unredacted evidence of insurance coverage. For instance, the Appellants blacked out the provision settling forth the "Limits of Insurance" for buildings and personal property. (Supp. Appx. Exh. "4", p. 100). One only can wonder why the Appellants have continually failed and refused to provide the Limits of Insurance to the Appellee, the secured creditor needing said information to determine whether its collateral is properly insured. Given the Appellants' demonstrated inability to pay taxes, the risk of not enough insurance is substantial, and a fire, a personal injury, or some other loss would be catastrophic for the healthcare facilities, and for the collateral properties.

**Regulatory Compliance Risk:** Properties housing healthcare facilities face strict regulatory requirements. Financial distress threatens compliance, potentially resulting in penalties, closure, or forced resident relocation. The public interest in protecting vulnerable elderly residents strongly supports receivership. *See, e.g.*, *Wilmington Tr., N.A. v. Pavilion Apartments PENN LLC,* No. 22-3985, 2023 U.S. Dist. LEXIS 7137 (E.D. Pa. Jan. 13, 2023).

**Self-Dealing and Mismanagement:** The documented self-dealing arrangements reducing rental income by millions of dollars annually, and now

setting off all tenant rents to pay Appellants' past due 2023 school taxes, demonstrate active mismanagement threatening collateral value. (Supp. Appx. Exh. "2", p. 9). These are not market-driven difficulties but deliberate choices prioritizing insider interests over secured creditor rights.

**Deferred Maintenance Risk:** Four and one-half years of financial distress, with funds diverted from debt service, suggests maintenance has been deferred. Healthcare facilities require continuous upkeep to maintain licenses and resident safety. Now, with the offset for all rents from the Tenants, Appellants have no funds being received to apply to necessary building maintenance.

These are not speculative concerns but documented red flags that any prudent lender would recognize as threatening collateral value. The standard requires imminent danger, not actual loss—waiting for actual harm would defeat the prophylactic purpose of receivership.

The District Court Judge properly found that there was imminent risk of harm, and the Receiver was properly appointed.

### b. Inadequacy Of Legal Remedies

Mortgage Foreclosure alone cannot prevent the deterioration that may occur during the pendency of litigation. This is particularly true for properties housing

healthcare facilities, where deterioration could force regulatory intervention or resident relocation. Legal remedies are inadequate where immediate irreparable harm is threatened. *Checker Cab of Phila. Inc. v. Uber Techs., Inc.*, 643 F. App'x 229 (3d Cir. 2016); *CCC Atlantic*, 905 F. Supp. 2d 604 (D.N.J. 2012).

The inadequacy of legal remedies is manifest in multiple ways:

**Tax Sale Prevention:** Mortgage Foreclosure cannot prevent the immediate threat of tax sale that would extinguish LV1's entire mortgage lien on the property. Only a receiver with authority to address tax obligations can prevent this catastrophic loss.

**Interim Deterioration:** "Foreclosure will not serve to prevent the damage that may be done to the Properties while the case is running its course through the legal system." (Appx. 31). Given the specialized nature of these healthcare properties and their vulnerable residents, deterioration could force regulatory intervention or resident relocation—harms that money damages could never adequately remedy.

**Regulatory Compliance:** Healthcare facilities face potential closure for non-compliance. Post-foreclosure damages cannot compensate for loss of licenses, forced resident relocations, or reputational damage from regulatory violations.

**Self-Dealing Prevention:** Only a receiver can immediately halt the self-dealing arrangements that are draining millions of dollars in rental income from being received by the Appellants annually. Mortgage foreclosure, which may take years to complete cannot recoup these diverted funds.

The precedent is clear that receivership is appropriate where, as here, the secured creditor faces immediate threats that legal remedies cannot prevent. *See, e.g., Leone Indus. v. Associated Packaging, Inc.*, 795 F. Supp. 117, 120 (D.N.J. 1992).

Appellants argue that because the properties may have value exceeding the debt, legal remedies must be sufficient. However, Appellants conflate two distinct concepts. (1) The adequacy of security relates to whether the property value exceeds the debt. (2) The adequacy of legal remedies concerns whether post-foreclosure remedies can prevent interim harm.

In this matter, while the properties may have sufficient value if properly maintained, that value is at immediate risk from tax sale, from regulatory violations, and from deterioration without proper management (especially as no funds are now being received from the Tenants to pay for property maintenance) during this litigation.

The District Judge acted properly in appointing the Receiver.

### 4. The Balance Of Interests Favors Protecting Elderly Residents And Preserving Collateral Value

The district court appropriately recognized that receivership would benefit not just LV1, but also the elderly residents who depend on these facilities for their care and housing. (Appx. 31-32). Appellants characterize this review as improper speculation, but the risks to vulnerable senior living residents from the financial instability of their facilities are well-documented and serious.

Healthcare facilities operate under strict regulatory requirements. Financial distress can lead to:

- Inadequate staffing affecting resident care

- Deferred maintenance affecting health and safety

- Lapses in insurance coverage exposing residents to risk

- Regulatory violations resulting in penalties or closure

- Forced relocation of residents, which studies show increases mortality risk in elderly populations

These are not hypothetical concerns, but recognized risks that state and federal regulators actively monitor. The appointment of a receiver ensures

professional management and financial stability during the mortgage foreclosure process, protecting both the senior residents and the collateral values.

The public interest strongly favors receivership. As the district court recognized in denying Appellants' stay motion: "These Properties house healthcare facilities that provide medical and memory care services to elderly patients... The Properties require responsible property management for the sake of these senior citizens, and Defendants' inability to do so could result in harm to this vulnerable population, including possible displacement from their residences." (Appx. 53).

Against these substantial benefits, Appellants claim only interference with their "control" of the properties. But Appellants have already lost effective control through their own mortgage defaults, tax delinquencies, and self-dealing arrangements. Appellants cannot pay their mortgages, cannot pay their taxes, and have arranged for tenants to pay obligations in exchange for rent offsets. A receiver merely formalizes what the circumstances have already dictated—that professional management is needed to preserve these critical healthcare facilities.

The precedent from *Deutsche Bank Trust Company Americas v. Greenfield of Perkiomen Valley, LLC*, No. 2:23-cv-01439-TJS (E.D. Pa. 2023), is directly on point. In that case, involving another senior living facility, the receiver properly

took control and replaced the third-party management company to ensure proper operations. This demonstrates that receivers routinely exercise broad authority over healthcare properties to protect vulnerable residents.

## B. THE DISTRICT COURT WAS NOT REQUIRED TO HOLD AN EVIDENTIARY HEARING WHERE THE MATERIAL FACTS WERE UNDISPUTED

Appellants' claim that they were denied due process simply lacks merit. The law is clear: "An evidentiary hearing need not be held beforehand when the record discloses sufficient facts to warrant appointment of a receiver." *Leone Industries v. Associated Packaging, Inc.*, 795 F. Supp. 117, 120 n.6 (D.N.J. 1992); see also *United States v. Berk & Berk*, 767 F. Supp. 593, 597 (D.N.J. 1991) ("no hearing is necessary where the facts support the appointment of a receiver"); *MSCI 2006-IQ11 Logan Boulevard Ltd. P'ship v. Greater Lewistown Shopping Plaza, Ltd. P'ship*, No. 4:16-CV-2090, 2017 U.S. Dist. LEXIS 16457 (M.D. Pa. Feb. 6, 2017) ("No hearing is necessary where the facts support the appointment of a receiver").

The material facts here are undisputed:

- The mortgage terms are documented;
- The Appellants' defaults are admitted—over four and a half years of no payment on either mortgage;
- The duration of default is established;

- The acceleration of the loans is documented;

- The tax delinquencies and the scheduled tax sale are matters of public record;

- Appellants' failure to provide financial information is admitted;

- The nature of the properties as healthcare facilities is undisputed; and

- The self-dealing lease arrangements are documented.

What Appellants seek is not a hearing to resolve factual disputes, but to maintain control of the facilities while continuing to elongate all court proceedings for their own self-benefit. This is not the purpose of an evidentiary hearing. *FTE Networks, Inc. v. Szkaradek*, No. CV 22-785-WCB, 2023 WL 8650002, at *7 (D. Del. Dec. 14, 2023) (hearing necessary only where "briefing does not permit a confident conclusion as to whether the requirements for appointment of a receiver have been met").

Moreover, Appellants had ample opportunity to present evidence opposing receivership. Appellants controlled and could have provided:

- Current financial statements showing their actual and current financial condition;

- Proof of insurance demonstrating adequate insurance coverage on the collateral properties;

- Evidence of tax payments showing their tax obligations are current;

- Documentation of arms-length lease arrangements; and/or

- Plans to cure defaults with specific timelines and funding sources.

Appellants chose not to provide any of this readily available information (as it would document the Appellants' dire financial condition, and Appellants' continued self-dealing). Having made that strategic choice, Appellants cannot now claim denial of due process. *See ICON PSG 1 FL, LLC v. Jenkins Court Realty Co., L.P.*, No. 25-0044, 2025 U.S. Dist. LEXIS 30906 (E.D. Pa. Feb. 21, 2025) (unsworn factual arguments "are not entitled to any weight" and do not create a need for a hearing).

Moreover, the cases Appellants cite allegedly in support of their request for an evidentiary hearing are readily distinguishable:

*Zinke-Smith, Inc. v. Marlowe*, 323 F. Supp. 1151 (D.V.I. 1971), involved insufficient evidence where the court could not determine the corporation's actual financial condition. In the current matter, the evidence of Appellants' financial distress is overwhelming—from the Appellants' admitted defaults to the scheduled tax sale of the Appellants' real estate. Further, it is the Appellants who have continually failed and refused to provide any current financial information.

*Tanzer v. Huffines*, 315 F. Supp. 1140 (D. Del. 1970), addressed the timing of assessing receivership costs, not the substantive standards for appointment. That court's discussion of an "extensive hearing" related to the receiver's cost allocation, not to actual the appointment of the receiver.

Moreover, the cases cited regarding preliminary injunctions, such as *Hohe v. Casey*, 868 F.2d 69 (3d Cir. 1989), and *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86 (3d Cir. 1992), address different standards and procedures. Receivership in commercial foreclosure, with express contractual provisions, operates under different principles than general injunctive relief.

### C. THE SCOPE OF THE RECEIVERSHIP IS BOTH APPROPRIATE AND NECESSARY TO PRESERVE THE PROPERTIES

Appellants argue the receivership exceeds the contractual authorization, but the Appellants' argument fails on multiple grounds.

First, the mortgage agreements and related security documents authorize the Receiver to take actions necessary to "preserve" and "protect" the properties, not merely to collect rents.

In fact, the Lessee Security Agreements explicitly grant broad powers to the secured creditor (now receiver) including the right to terminate lessees, control

licenses, and operate the facilities with full power of attorney. (Supp. Appx. Exh. "8", ¶ 9(e), p. 229, 256).

Courts recognize that effective preservation of commercial properties, particularly those with specialized uses like healthcare facilities, requires broad management authority. *See, e.g., Wilmington Tr., N.A. v. Pavilion Apartments PENN LLC,* No. 22-3985, 2023 U.S. Dist. LEXIS 7137 (E.D. Pa. Jan. 13, 2023); *Wells Fargo Bank, N.A. v. CCC Atlantic, LLC*, 905 F. Supp. 2d at 615.

Second, the District Court retains equitable discretion to fashion receivership orders that effectively achieve their preservation purpose. The District Court's discretion is particularly important where, as here, the properties face immediate threats (tax sale) and house senior living facilities with vulnerable residents. Limiting the Receiver to collecting rents (which the Appellants have basically reduced to $0.00 through their self-dealing agreements) while the properties face tax sale would be ineffective, and potentially catastrophic.

Third, the Appellants' complaint about the Receiver's authority over tenant operators misunderstands both the contractual framework and the practical necessities. The Receiver manages the properties and the landlord's interests, including oversight of lease compliance and property use.

The Lessee Security Agreements specifically contemplated this authority, and the Lessee/Tenant authorized the secured creditor (now Receiver) to take broad actions, including operating the facilities. (Supp. Appx. Exh. "8", p. 221). Moreover, given the documented self-dealing between Appellants and their related-party tenants, oversight of these relationships is essential to preserve value.

The Receivership Order appropriately empowers the Receiver to:

- Pay delinquent taxes to prevent tax sale;

- Maintain insurance coverage to protect against catastrophic loss;

- Ensure regulatory compliance to prevent closure;

- Manage tenant relationships to maximize value and prevent self-dealing;

- Preserve property value through necessary maintenance; and

- Protect resident welfare to avoid regulatory intervention.

These powers are essential to preserving properties that house healthcare facilities facing immediate threats. The precedent from *Deutsche Bank Trust Company Americas v. Greenfield of Perkiomen Valley, LLC* demonstrates this is standard practice for healthcare facility receiverships.

A more limited receivership would risk:

39

- Tax sale resulting in total loss of collateral;

- Insurance lapse exposing properties to uninsured losses;

- Regulatory violations forcing closure or penalties;

- Continued self-dealing draining millions of dollars which would otherwise be available to maintain the properties, pay taxes, pay the mortgages, and pay the Receiver;

- Allow harm to residents triggering liability and regulatory action; and

- Deterioration destroying collateral value.

The scope of the receivership must match the scope of the threat. In this matter, with the scheduled sale already requiring the Receiver's intervention, with non-payment of 2024 or 2025 taxes, with the self-dealing documented, and with vulnerable residents at risk, broad authority is not just appropriate but necessary.

## VIII. CONCLUSION

The District Court confronted a straightforward case warranting receivership, including: express contractual provisions authorizing it, admitted and prolonged defaults spanning over four years, demonstrated financial instability through tax delinquency so severe it resulted in a scheduled tax sale, documented self-dealing arrangements draining millions of dollars in rental income, and the

risk to both valuable collateral and to the vulnerable senior residents living at the properties.

The District Court properly exercised its discretion in appointing a receiver based on this compelling record. The District Court was not required to hold an evidentiary hearing where the material facts were undisputed and documented, and where Appellants controlled but chose not to provide any exculpatory evidence. The scope of the receivership appropriately matches both the contractual authorization and the equitable needs of preserving the senior living facilities, which are facing immediate and continuing threats due to the Appellants' defaults and self-dealing.

For all these reasons, the district court's order should be AFFIRMED.

Respectfully submitted,
**BERGER LAW GROUP, P.C.**

By: *Phillip D. Berger*
Phillip D. Berger, Esq.
Attorney I.D. No. 58942
Matthew R. Kaufmann, Esq.
Attorney I.D. No. 206991
919 Conestoga Road
Building 3, Suite 100
Bryn Mawr, PA 19010
(610) 668-0774
DATED:     August 21, 2025          Attorneys for Plaintiff/Appellee

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION**

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 7,915 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

By: *Phillip D. Berger*
_____
Phillip D. Berger, Esquire

**CERTIFICATE OF BAR MEMBERSHIP**

I hereby certify that I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

By: *Phillip D. Berger*
_____
Phillip D. Berger, Esquire

**CERTIFICATION OF COMPLIANCE – PUBLIC ACCESS**

I certify that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Dated: August 21, 2025

Phillip D. Berger

Phillip D. Berger, Esquire
Attorney I.D. No. 58942
Matthew R. Kaufmann, Esq.
Attorney I.D. No. 206991
BERGER LAW GROUP, P.C.
919 Conestoga Road
Building 3, Suite 100
Bryn Mawr, PA 19010
(610) 668-0774
(610) 668-2800
Attorneys for Plaintiff/Appellee